# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | Geraldine Soat Brown |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2934 | **DATE** | 5/25/2004 |
| **CASE TITLE** | Murata Manufacturing Co. vs. Bel Fuse Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set out in the Memorandum Opinion and Order, Plaintiff's Renewed Motion to Compel Bel Fuse Inc to Produce Documents Identifying Customers [56-1] is DENIED and Defendants' Motion for Protective Order that Defendant not be required to identify its customers and to preclude plaintiff from discussing this litigation with defendant's customers [79-1] is GRANTED. Status remains set for 5/27/04 at 9:30 a.m.
(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 2 6 2004 | |
| | Notified counsel by telephone. | | date docketed | 102 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 5/25/2004 | |
| | | | date mailed notice | |
| GR | courtroom deputy's initials | Date/time received in central Clerk's Office | GR mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


MAY 2 6 2004

| | |
|---|---|
| MURATA MANUFACTURING CO., LTD.,<br>Plaintiff,<br><br>v.<br><br>BEL FUSE INC. and BEL FUSE LTD.,<br>Defendants. | Case No. 03 C 2934<br><br>Judge Joan B. Gottschall<br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court are Plaintiff's Renewed Motion to Compel Bel Fuse Inc. to Produce Documents Identifying Customers [dkt 56] and Defendants' Motion For Protective Order that Defendant Not Be Required to Identify its Customers and to Preclude Plaintiff from Discussing this Litigation with Defendant's Customers [dkt 79]. The parties also have submitted supplemental briefs on the issues contained in their motions. [Dkt 85, 86.] For the reasons set forth below, Plaintiff's Motion is DENIED and Defendants' Motion is GRANTED.

### Background

This case concerns Murata's Patent No. 5,069,641 ("the '641 patent"). (Am. Compl. ¶ 7.) According to Murata, the patent claims a "modular jack," within which is a "printed board" containing an "electronic element for suppressing noise." (Murata's Br. Supp. Renewed Mot. Compel ("Pl.'s Br.") at 3). Murata has accused the defendants (collectively, "Bel Fuse") of infringing its '641 patent. (*Id.* at 4.) Murata defines the term "accused products" to mean Bel Fuse's

modular jacks, including the "belMag" modular jack, although it is not clear whether all of Bel Fuse's modular jacks contain a noise suppression element. (Murata's Br. Supp. Second Mot. Compel: Financial Information, Ex. A, Murata's First Set Requests Prod. Bel Fuse, Definitions 5 and 6.) [Dkt 35.] Bel Fuse describes the item at issue as an integrated connector module or "ICM." (Bel Fuse Br. Supp. Mot. Protective Order ("Defs.' Br."), Decl. Dennis Ackerman ¶ 3). [Dkt 79.] The ICM or modular jack is useful in a variety of devices, such as computers, modems, routers, data network switches and telephones. (Pl.'s Br. at 3.) Bel Fuse sells ICMs on an active basis to between 50 and 100 U.S. customers. (Ackerman Decl. ¶ 7.) Murata states that it does not sell any product made according to the '641 patent. (Pl.'s Br. at 4.) However, Bel Fuse asserts that Murata licenses its patent to at least one company that markets items containing the patented feature. (Bel Fuse Suppl. Br. Supp. Mot. Protective Order at 1-2.) [Dkt 85.] Bel Fuse has filed affirmative defenses and counterclaims alleging, *inter alia*, that the claims of the '641 patent are invalid as obvious.

Murata sought in discovery "[d]ocuments. . . showing all [Bel Fuse's] sales, by volume (in units and dollars), by price, by model, by date, and by customer of Modular Jacks to date." (Murata's First Set Requests Prod. Bel Fuse, Request 4.) In its present motion, Murata seeks the identity of Bel Fuse's ICM customers and the relative sizes of their purchases of ICMs. (Pl.'s Br. at 1-2.) Murata knows some of Bel Fuse's customers because they are listed on Bel Fuse's website, and some of those customers are apparently also customers of Murata. But Murata does not know all of Bel Fuse's customers and does not know if the common customers purchase ICMs from Bel Fuse or the quantity of such purchases. Murata asserts that such information is relevant to commercial success and long-felt need, two of the "secondary considerations" of nonobviousness upon which Murata

intends to rely to counter Bel Fuse's obviousness defense. (Pl.'s Br. at 2, 4.)[1] Bel Fuse has moved for a protective order requesting that it not be required to disclose the identity of its customers and that Murata be precluded from discussing any aspect of this litigation with any entity known to Murata to be an ICM customer of Bel Fuse. (Defs.' Mot. at 1.)

**Legal Background**

In order to determine obviousness, factual inquires must be made concerning: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) secondary considerations of nonobviousness. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). If the alleged infringer succeeds in establishing a prima facie case of obviousness based on the first three factors, the burden of production shifts to the patent holder to offer objective indicia of nonobviousness, such as evidence of the commercial success of the invention (or alleged infringing product) or satisfaction of a long-felt need. *Winner Intl. Royalty Corp. v. Wang*, 202 F.3d 1340, 1350 (Fed. Cir. 2000); *Pro-Mold & Tool Co., Inc. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1572 (Fed. Cir. 1996).

When a patent holder asserts that commercial success supports its contention of nonobviousness, there must be a sufficient relationship between the commercial success and the

---

[1] In its Second Motion to Compel, Murata argued that it needed the names of Bel Fuse's customers because Bel Fuse had provided inconsistent financial information relating to damages. Bel Fuse was subsequently ordered to supplement its discovery responses to provide Murata with information relating to damages. (Order, Feb. 20, 2004.) [Dkt 66.] Thus, the only remaining purpose for which Murata seeks the identity of Bel Fuse's customers is to respond to the obviousness defense.

patented invention. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988). "The term 'nexus' is often used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness." *Id.* The burden of proof as to the nexus resides with the patent holder, and, as such, the patent holder must come forward with evidence sufficient to constitute a prima facie case of nexus. *Id.* A prima facie case of nexus is generally established when the patent holder "shows both that there is commercial success, and that the thing (product or method) that is commercially successful is the invention disclosed and claimed in the patent." *Id.*[2] The analysis becomes more complex when the patented invention is only a component of the commercially successful product. *Id.*

However, if the marketed product embodies the claimed features, and is coextensive with them, a nexus is presumed and the burden shifts to the party asserting obviousness (the alleged infringer) to present evidence to rebut the presumed nexus. *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000). The alleged infringer may rebut the presumed nexus by showing that the product's commercial success was attributable to factors unrelated to the technology claimed in the patent, such as advertising, packaging, or superior

---

[2] *See also In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) ("Even assuming that [the patent holder] had sufficiently demonstrated commercial success, that success is relevant in the obviousness context only if there is proof that the sales were a direct result of the unique characteristics of the claimed invention – as opposed to other economic and commercial factors unrelated to the quality of the patented subject matter. In other words, a nexus is required between the sales and the merits of the claimed invention." (internal citation omitted)); *Rogers v. Desa Intl., Inc.*, 166 F. Supp. 2d 1202, 1211 (E.D. Mich. 2001) ("In order for commercial success to rebut the compelling evidence of obviousness, plaintiff must establish a factual nexus between the features of the claimed invention and its commercial success. 'Such a nexus is required to prove that the commercial success is not ascribable to other irrelevant commercial and economic factors.'" (internal quotation omitted)).

workmanship. *Id. See also J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997).

The effect of all of this is that secondary considerations of nonobviousness may become relevant if Murata shows that Bel Fuse's product infringes Murata's patent, Bel Fuse asserts the defense of obviousness, and there is a question as to the nexus between the commercial success of Bel Fuse's product and the infringing features of the product.

**Parties' Arguments**

The heart of the controversy is that Murata does not simply want the names of Bel Fuse's customers, Murata wants to contact those customers and depose them for this litigation.[3] Murata argues that testimony of customers' reasons for purchasing the claimed invention is highly relevant to commercial success or whether the invention satisfied a long-felt need, and that, indeed, it is reversible error for a district court to fail to consider customer testimony on the issue of obviousness. (Pl.'s Br. at 2, 4-6.) Murata suggests that sales and market share evidence may not be sufficient to establish the required nexus between the commercial success of Bel Fuse's product and the patented features of the product, and that it would be unfairly prejudiced if Bel Fuse were permitted to "hide" evidence of commercial success and long-felt need since it was Bel Fuse's decision to raise the obviousness defense. (Pl.'s Br. at 2, 6.)

---

[3] Bel Fuse has stated that it has no objection to disclosing the identities of its ICM customers to Murata under the terms of the court's Confidentiality Order "so long as Murata cannot subpoena, or otherwise contact, those customers in connection with this law suit [sic]." (Defs.' Reply at 1.) However, Murata will not agree to that condition; thus, Murata is incorrect in claiming that Bel Fuse's statement means that Murata's motion is "unopposed." (Murata Suppl. Submission at 4.)

Balanced against those arguments is Bel Fuse's concern, supported by the declaration of Bel Fuse's Vice President of Operations, Dennis Ackerman, that any contact by Murata with Bel Fuse's ICM customers will have a "catastrophic" effect on Bel Fuse in the marketplace. (Ackerman Decl. ¶ 9.) Bel Fuse asserts that, given the market for ICMs, it would be easy for its customers to stop buying ICMs from Bel Fuse if the customer is served with a subpoena requiring it to appear for deposition or produce documents concerning its purchases from Bel Fuse. (Defs.' Br. at 9-10.)[4] Mr. Ackerman asserts that ICMs have become fungible commodities in the connector industry, and that there are several connector suppliers who offer ICMs very similar to those sold by Bel Fuse and at competitive prices. (Ackerman Decl. ¶ 5.) Bel Fuse further argues that "[i]t has taken considerable effort, time and money for [Bel Fuse] to have acquired these customers, and if the list of [Bel Fuse's] ICM customers were publicized to [Bel Fuse's] competitors, it would seriously harm [Bel Fuse] from a competitive standpoint." (Defs.' Br. at 8) (citing Ackerman Decl. ¶ 3.)

Murata responds that Bel Fuse's customers are "sophisticated companies" who will not engage in a "mass customer flight" upon learning that Bel Fuse has been sued for patent infringement. (Pl.'s Br. at 10-11.) It argues that customers such as Cisco, which is identified on Bel Fuse's website, "receive Rule 45 subpoenas on a regular basis" and "will know that the resolution of this litigation . . . will protect them from suit by Murata." (Murata's Opp'n Bel Fuse's Mot. and Reply Supp. Renewed Mot. Compel ("Pl.'s Reply") at 7.) [Dkt 75.] Murata claims that, in any event, Bel Fuse's customers already know (or will know) of the lawsuit based on a disclosure in Bel Fuse's annual report, and they are already "involved" in the litigation as they are potential witnesses with

---

[4] In further support of why its customers will want to stop purchasing ICMs from Bel Fuse, Bel Fuse argues that its customers "would also be considered by Murata to be infringers." (Defs.' Br. at 12.)

discoverable information. (Pl.'s Br. at 11; Pl.'s Reply at 8.) Murata further argues that Bel Fuse should not be concerned that it will steal Bel Fuse's sales or try to gain a competitive advantage because it does not compete in the relevant market. (Pl.'s Br. at 11; Pl's Reply at 5.) Lastly, Murata argues that Bel Fuse's concerns should be alleviated by the Confidentiality Order already in place. (Pl.'s Reply at 2.)

Bel Fuse replies that the Confidentiality Order does not preclude Murata from serving subpoenas on Bel Fuse's customers, which is one of its main concerns. (Defs.' Reply at 7.) It further argues that, although some of Bel Fuse's customers may know of the lawsuit, they are not "actively involved," and will only be so if Murata succeeds in pursuing its "subpoena-serving campaign." (*Id.* at 6-7.) Bel Fuse also argues that the fact that Murata is not a competitor is irrelevant to its concerns regarding its loss of customers, who are free to take their business to the other competitors in the market should they see reason to do so. (*Id.* at 6-7.) Bel Fuse hints that Murata's intention to subpoena Bel Fuse's customers is an attempt to create leverage in settlement discussions. (*Id.* at 2.)

In addition to its arguments regarding the harm that it will suffer if required to turn over its customer lists, Bel Fuse argues that Murata's request should be denied because "there are many other ways of establishing nexus that are available to Murata." (Defs.' Mot. ¶ 6; Defs.' Br. at 10-11.) Bel Fuse argues that nexus can be shown through testimony by experts in the field; testimony by the patentee, Murata; evidence that other third parties, such as independent industry testing organizations, recognize the advantages of the patented features; evidence from Bel Fuse itself, such as whether Bel Fuse advertises the patented features or discusses the patented features with its customers; and evidence from Murata's purported licensee under the patent-in-suit, as well as its

licensee's customers. (Defs.' Br. at 11; Defs.' Reply at 12-14; Defs' Suppl. Submission at 1-2.)

Murata argues that it is entitled to all relevant evidence of commercial success, regardless of the existence of other sources of evidence on that issue. (Pl.'s Reply at 12-13.) Murata also argues that experts will not be very helpful if they cannot examine the customers' motivations for purchasing the ICMs and that it is not aware of any independent organization that has commented on the advantages of the patented features. (Pl.'s Reply at 11-12.)

## Analysis

Courts have considered the following as relevant to and probative of commercial success: volume of sales, evidence of share in the market place, growth in market share, replacing earlier units sold by others, dollar amounts, nexus between sales and the merits of the invention, evidence that the applicant has been able to license the invention, and evidence that licensees have been able to sell the product. *Chubb Integrated Sys. Ltd. v. Natl. Bank of Washington*, 103 F.R.D. 52, 57 (D.D.C. 1984) (citing *Kansas Jack Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983)). Commercial success can sometimes be established by sales evidence alone. *See, e.g., Tec Air, Inc. v. Denso Mfg. Michigan Inc.*, 192 F.3d 1353, 1360-61 (Fed. Cir. 1999) (stating that "[b]ased on [plaintiff's] sales evidence, the jury reasonably could have found that the invention enjoyed commercial success. . . . Although sales figures couple with market data provide stronger evidence of commercial success, sales figures alone are also evidence of commercial success."); *Rogers*, 166 F. Supp. 2d at 1211-12 (stating that, in case where patent holder had not marketed his invention, the alleged infringer's sales were "two and a half times their projected sales undeniably indicating the commercial success of the accused product"); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir.

1997); *cf. Minnesota Mining & Mfg. Co. v. Smith & Nephew*, No. 3-91 CIV 274, 1992 WL 464352 at *2 (D. Minn. July 27, 1992) (Alsop, J.) (requiring defendant to provide data summarizing its sales of alleged infringing product based on its relevance to commercial success).

Murata has cited cases in which commercial success was established by sales and market share information, including the sales and market share information of the alleged infringer. *See, e.g., Brown & Williamson*, 229 F.3d at 1130 (relying on the market share of the alleged infringer as evidence of commercial success); *Gambro Lundia*, 110 F.3d at 1579 (relying on the sales of the alleged infringer as evidence of commercial success). Murata also has cited cases in which commercial success was established by customer testimony. *See, e.g., Ruiz*, 234 F.3d at 668; *Winner*, 202 F.3d at 1350-51; *Pro-Mold & Tool*, 75 F.3d at 1574; *Tate Access Floors Inc. v. Interface Architectural Resources*, 185 F. Supp. 2d 588, 604 (D. Md. 2002). Murata has not, however, cited any cases in which the *customers of the alleged infringer* provided the testimony, or where the alleged infringer, as opposed to the patent owner, was required to turn over the names of its customers to assist the patent owner in proving commercial success.[5] Nor has this court's research disclosed any such cases. The same is true with respect to the secondary consideration of long-felt need; specifically, the cases cited by Murata involved testimony from the *patent holder's customers* about their long-felt need, not the alleged infringer's customers. *See, e.g., Ashland Oil Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 307 (Fed. Cir. 1985).

---

[5] In *J.T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, No. CV-84-4438 (EHN), 1987 WL 17084 at *5 (E.D. N.Y. Aug. 31, 1987) (Caden, M.J.), a case not cited by Murata, the court held that before the *patent holder* (not the alleged infringer) would be required to produce its customer lists pursuant to an interrogatory requesting information pertaining to commercial success, the parties must agree to a protective order that would safeguard the patent holder's interest in preserving the confidentiality of its customer lists.

Conversely, Bel Fuse has cited cases wherein courts have denied motions to compel or granted protective orders to prevent the disclosure of a party's customers or to preclude a party from contacting customers of the other party, on the basis that the potential harm to the party from whom discovery is sought outweighs the importance of the information to the party seeking that information. *See* Defs.' Br. at 13-14. Several of those cases involved facts similar to those present here. For example, in *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991), the defendant in a patent infringement suit was granted a protective order precluding the plaintiff from seeking discovery from the defendant's customers. The court observed that the parties were "fierce competitors" and that plaintiff had not demonstrated that it could not obtain the same information from the defendant itself. *Id. See also Chubb Integrated Sys.*, 103 F.R.D. at 57 (denying defendant's request for customer identity information but granting request for sales information as relevant to commercial success in patent infringement case and stating, "to the extent that [the request] seeks the number of customers, but not the names, it is an appropriate inquiry"); *Volkswagenwerk Aktiengesellsschaft v. Westburg*, 260 F. Supp. 636, 637 (E.D. Pa. 1966) (granting a protective order directing plaintiff to refrain from initiating any contact with customers of defendant regarding subject matter of litigation or dealings between defendant and its customers in trademark infringement case); *May Coating Tech., Inc. v. Illinois Tool Works*, 157 F.R.D. 55, 57 (D. Minn. 1994) (ordering patent holder to refrain from directly contacting alleged infringer's customers for any purpose relating to litigation). *See also Funai Elec. Co., Ltd. v. Orion Elec. Co., Ltd.*, No. 02 Civ. 2605 (AGS) (JCF), 2002 WL 1808419 at *3 (S.D. N.Y. Aug. 7, 2002) (Francis, M.J.) (denying defendant's request for information such as individual customer complaints and customer returns as it "is not directly linked to commercial success").

The issue on the present motions is whether Murata's interest in contacting Bel Fuse's customers to obtain evidence to respond to Bel Fuse's obviousness defense outweighs Bel Fuse's concern about the effect on its sales of Murata's interrogating and subpoenaing those customers. Particularly significant is the fact that Murata is unable to cite a single case in which testimony from a customer of the alleged infringer was used to show commercial success or long-felt need. In contrast, Bel Fuse has demonstrated a legitimate concern that its business could suffer substantial harm if its customers are dragged into this case as witnesses. Further tilting the scale in favor of Bel Fuse is the fact that there are other sources of evidence that Murata may use to prove commercial success and long-felt need, including the possibility of obtaining testimony from the customers of Murata's licensee and investigating the information available from Bel Fuse about how it markets its ICMs. Murata has not demonstrated that it has exhausted those options. Moreover, future decisions by the district judge could lead to summary judgment on the issue of infringement or invalidity which could eliminate the need for the discovery of Bel Fuse's customers altogether. Balancing the demonstrated potential harm to Bel Fuse against Murata's claimed need, Plaintiff's Renewed Motion to Compel is denied.[6]

---

[6] Murata suggested that before deciding to grant Bel Fuse's Motion for Protective Order, the court consider limiting the number of customers Murata may contact to common customers only. (Pl.'s Reply at 14.) The court was hopeful that the parties could agree on a few common customers that could be jointly contacted and surveyed. However, Bel Fuse would not agree to such a procedure, arguing that it would not "even the playing field," as the customers who would be contacted only purchase the product at issue from Bel Fuse. (Defs.' Suppl. Submission at 3.) Murata likewise would only agree to this procedure if "a meaningful percentage" of the customers of Bel Fuse were also common customers, and further submitted that only document and deposition discovery would likely be possible, and not a survey. (Pl.'s Suppl. Submission at 3-4.) Thus, this suggestion does not appear to be a workable solution for the parties at this time.

Additionally, Defendants' Motion For Protective Order is granted. Murata asserts that precluding it from contacting Bel Fuse's customers that Murata knows about to obtain evidence in this litigation is somehow a violation of Murata's First Amendment rights. (Pl.'s Reply at 2.) However, as Murata acknowledges, it is not a competitor of Bel Fuse, and there is no commercial reason for it to know about or contact Bel Fuse's customers. The only reason that Murata has advanced for learning the identity of Bel Fuse's customers or contacting those customers is for discovery in this lawsuit. Federal Rule of Civil Procedure 26(c) provides the court with authority to regulate discovery in order to avoid "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). That authority has from time to time been exercised by federal courts to prohibit one party from contacting the customers of its adversary, as demonstrated by the cases discussed above. Even giving Murata the benefit of assuming that its purpose in contacting Bel Fuse's customers would be to conduct discovery leading to evidence and not for an improper purpose such as settlement leverage, Bel Fuse has come forward with a factual basis demonstrating that there is a significant risk that it customer relationships would, in fact, be disrupted. In light of the alternatives available to Murata, and the absence of any precedent for the evidence Murata seeks, at this point there is no justifiable reason for requiring Bel Fuse to incur that risk. Murata is hereby ordered not to contact any customers of Bel Fuse Inc. or Bel Fuse, Ltd for the purpose of discussing this lawsuit, seeking information relating to the issues in this lawsuit or taking discovery in this lawsuit until further order of the court.

## Conclusion

While it is conceivable that at a later stage of this litigation Murata may be able to show a valid reason for being permitted some limited discovery from Bel Fuse's customers, no need has been shown on the present state of the record, and the risk of injury to Bel Fuse is demonstrated and potentially irreparable. Thus, for the foregoing reasons, Plaintiff's Renewed Motion to Compel is denied, and Defendants' Motion For Protective Order is granted.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

May 25, 2004