Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2934 | **DATE** | 9/30/2004 |
| **CASE TITLE** | Murata Manufacturing Co. vs. Bel Fuse Inc. and Bel Fuse Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER ORDER. BFL's motion to dismiss is denied [38-1]. In view of this resolution of the motion to dismiss, the court need not reach the merits of Murata's Motion to Strike Improperly-Submitted Materials [96-1]. The Motion to Strike is accordingly denied as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 130 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RJ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



SEP 3 0 2004

| | |
|---|---|
| Murata Manufacturing Co., Ltd., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Bel Fuse Inc., and Bel Fuse Ltd., ) <br> ) <br> Defendants. ) | Case No. 03 C 2934 <br><br> Honorable Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Bel Fuse Ltd. ("BFL") has moved to dismiss Murata Manufacturing Co., Ltd.'s (Murata's) Amended Complaint on two grounds: first, that the court lacks personal jurisdiction over BFL and second, that service was ineffective because made upon a person not authorized to accept service, Daniel Bernstein.

The relevant facts as to jurisdiction, as they are described by BFL, are in brief as follows. BFL is a Private Limited Company existing under the laws of Hong Kong. BFL has offices in Hong Kong, as well as in Macao (like Hong Kong, a Special Administrative Unit, "SAR," of the People's Republic of China). BFL manufactures and sells a variety of electronic products and components throughout the world. One of BFL's customers is its parent company, defendant Bel Fuse Inc. ("BFI"), a New Jersey corporation, which distributes BFL's products in the United States including in Illinois. BFL is a wholly-owned subsidiary of BFI. BFL asserts that BFL and BFI are separate corporations, and that BFL makes no direct sales in Illinois and has no presence here.

130

With respect to the issue of service, BFL describes Mr. Bernstein as a "non-executive" director of BFL (as well as a director of BFI).[1] According to BFL, Mr. Bernstein resides in New York, does not generally attend BFL corporate meetings, does not visit customers or vendors on behalf of BFL, does not have authority to represent BFL as its agent or exercise judgment or discretion on behalf of BFL, plays no role in the conduct of BFL's business affairs, spends only a few days a year in Hong Kong, and is not authorized to accept service on behalf of BFL. Rather, BFL asserts that Mr. Bernstein's only role on the BFL board is to monitor BFL's activities on behalf of BFI.

The parties agree that Rule 4(e)(1) authorizes service according to the rules for either the district in which the court is located (Illinois) or in which service is effectuated (New York). Under New York law, service may be effected "upon any domestic or foreign corporation" by delivering the process "to an officer, director, managing or general agent, cashier or assistant cashier or any other agent authorized by appointment or by law to receive service." N.Y.C.P.L.R. §311. At the time of service, Mr. Bernstein was a director of BFL, albeit a "non-executive" one. The New York statute makes no distinction between executive and non-executive directors, and BFL has suggested no reason why the statute should not be interpreted to mean what it plainly says. BFL's contention that somehow Mr. Bernstein's "non-executive"

---

[1] During discovery, BFL produced a page from a book called "Hong Kong Company Law" which defines the term "non-executive" director as follows: "If a director does no more than the tasks primarily associated with the office of director–ie attending board meetings–he is not an employee of the company and is described as a non-executive director." (Murata Appx. Ex. 13.) This excerpt makes clear that a non-executive director is a director who is not an employee, analogous to a typical outside director for a U.S. corporation. It says that a non-executive director is a director who is not an employee, not that a non-executive director is some sort of diminished director.

2

status was inconsistent with "fair notice" to BFL makes little sense to this court. He was a director for that corporation, and there is nothing in the New York statute, or in any case law to which the court's attention has been directed, which suggests that when it serves a director of a corporation, a plaintiff must try to ascertain the degree of that director's attentiveness to the corporation's affairs. Given that New York law authorizes service upon a foreign corporation by delivering the process to a director of the corporation and Mr. Bernstein was a director of BFL, the motion to dismiss for insufficiency of process on this ground is denied.[2] Further, the Declaration of Jeremy Walsh (Murata Appx. Ex. 4), not to speak of Mr. Bernstein's deposition (Murata Appx. Ex. 15, pp. 15-17), sufficiently demonstrates evasion of service, so the motion to dismiss on this ground is denied as well. *See Roth v. Cowan*, 97 F.Supp. 675, 676-77 (E.D.N.Y. 1951); *Estate of Turecamo*, 408 N.Y.S.2d 930, 931 (N.Y.Surr.Ct. 1978).

Relying on *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed.Cir. 1994), Murata argues that under the stream-of-commerce theory of personal jurisdiction employed by the Federal Circuit, specific jurisdiction over BFL exists. *Beverly Hills* was a patent infringement action brought by plaintiff Beverly Hills in the Eastern District of Virginia alleging infringement of its patent for a ceiling fan design. The defendants were Ultec, the manufacturer of the alleged infringing fan, which was incorporated in the People's Republic of China and manufactured the fan in Taiwan, and Royal, located in New Jersey, which imported the accused fan and distributed it throughout the United States, including in Virginia. The accused fan, when found for sale at a Builder's Square store in Alexandria, Virginia, was

---

[2]Evidence submitted by Murata in opposition to BFL's motion seriously undermines BFL's contention that Mr. Bernstein was uninvolved with BFL. *See, e.g.,* Murata Appx. Exs. 8, 11. The court finds it unnecessary to attempt to resolve this factual dispute.

accompanied by a manual which identified Royal as the source of the fan and the party which would respond to warranty claims. Reversing a decision by the district court dismissing the complaint for lack of personal jurisdiction, the Federal Circuit held that there is no due process bar to the exercise of personal jurisdiction over an alleged foreign infringer where the alleged foreign infringer's sole contact with the forum resulted from selling its goods into distribution channels, the termination point of which the defendant knew, or reasonably could have foreseen, included the forum state.[3] By placing its goods into the stream of commerce by way of an established distribution channel, through which those goods predictably reached the forum state, the foreign alleged infringer has adequate contact with the forum to subject itself to jurisdiction there.

BFL notes that given the facts in *Beverly Hills,* the Federal Circuit did not find it necessary to resolve an issue left unresolved by the Supreme Court, whether it is sufficient merely to place the goods into the stream of commerce or whether something more is necessary. *See Asahi Metal Industry Co. Ltd. v. Superior Court of California,* 480 U.S. 102 (1987). The facts in *Beverly Hills,* BFL argues, involved "something more" and make clear that simply selling goods into the stream of commerce is insufficient. This court agrees, as long as the concept of "simply selling goods into the stream of commerce" means what it says and does not, standing alone, mean something considerably more than it says. This court reads *Beverly Hills* to hold that when the foreign defendant intentionally uses an established distribution channel to sell

---

[3]The Federal Circuit court held that, although in some sense procedural, the due process personal jurisdiction issue "is a critical determinant of whether and in what forum a patentee can seek redress for infringement of its rights," and is best served by a nationally uniform approach. For this reason, the Federal Circuit held that it owes no special deference to regional circuit law on this issue.

4

its goods on an ongoing basis into the United States, in circumstances where the defendant expected or should have expected that some of its products would end up in the forum, there is adequate contact to satisfy due process. "The presence of an established distribution channel," in contrast to an isolated occurrence, was found by the *Beverly Hills* court to be a "significant factor." 21 F.3d at 1566 n. 15.

Like the court in *Beverly Hills,* this court finds it unnecessary to resolve the unresolved *Asahi* issue because BFL did more than simply release its goods into the stream of commerce from which, in an isolated occurrence, some ended up in Illinois. BFL had an ongoing relationship with its American distributor for the purpose of distributing its goods in the United States and elsewhere. The American distributor to which BFL sold its goods was a closely related company, in fact, its parent; BFL is BFI's wholly-owned subsidiary. Thus, BFL's distribution channel was not merely "established." It was intrinsic to the organization of those two closely-related companies. Nor can BFL reasonably claim ignorance of BFI's United States distribution network. Daniel Bernstein, the President and CEO of BFI, is a director of BFL, as well as a director of BFI; in responses to Requests to Admit, it was admitted by both defendants that Bernstein knows that products manufactured by BFL are sold in Illinois by BFI and other distributors (Murata Appx. 18, No. 59; Ex. 15, p. 75).[4] Because Bernstein is a director of BFL, the court's research indicates that under the law of most if not all states, his knowledge would be imputed to the corporation, and the court has no reason to believe that for a Hong Kong limited

---

[4]Bernstein subsequently qualified his answer to state that he does not know whether any of the allegedly infringing products were sold in Illinois. (April 23 Declaration of Daniel Bernstein.) For present purposes, the court views the relevant issue as not whether Bernstein knows that infringing products are sold in Illinois but whether he knows that BFI's distribution network encompasses Illinois, which he indisputably does.

5

liability company such as BFL, the law of Hong Kong is different. Moreover, Bernstein's involvement in both companies is not all the two companies share. BFI's 2002 Annual Report listed, as one of its offices, Bel Fuse Ltd. in Hong Kong. Colin Dunn, Vice President-Finance for BFI, is a member of the Board of Directors of BFL. (Murata Appx. Ex. 18, Nos. 15, 17.) Joseph Meccariello, the Managing Director of BFL, is BFI's Vice President of Manufacturing.[5] The court need not reach the issue of whether there is any basis for ignoring these two corporations' separate identities to conclude that they are closely related, and the knowledge of one concerning their distribution network, at least in general terms, can be imputed to the other. This being the case, BFL's suggestion that it merely sells its product into the stream of commerce and is not responsible for the distribution channel that results in BFI's distribution of BFL's products in Illinois is unconvincing. BFL hardly released its products into the general stream of commerce, from which, serendipitously, some made their way to Illinois. Rather, it sold them into an established and ongoing distribution network, developed and managed by its corporate parent, of which BFL, through interlocking officers and directors, at the very least had imputed knowledge. Given the closeness of these companies, and the continuity of their distribution relationship, it would be unreasonable to allow BFL to escape responsibility for the termination of its products in this state. Nor can this court ascertain any basis for believing that it would be unreasonable for Illinois to assert jurisdiction under these the facts and circumstances, in view of the evidence that many of the allegedly infringing products manufactured by BFL were ultimately sold in Illinois (Murata Appx. Ex. 18, No. 67 *et seq.*).

---

[5]Plaintiff argues that the two companies share a website, but this was not clear to the court from the cited materials.

BFL's motion to dismiss is denied. In view of this resolution of the motion to dismiss, the court need not reach the merits of Murata's Motion to Strike Improperly-Submitted Materials. The Motion to Strike is accordingly denied as moot.

ENTER ORDER:

Joan B. Gottschall
United States District Judge

DATED: September 30, 2004