# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MURATA MANUFACTURING CO., LTD., <br>     Plaintiff, <br><br> v. <br><br> BEL FUSE INC. and BEL FUSE LTD., et al., <br>     Defendants. | Case No. 03 C 2934 <br><br> Judge Joan B. Gottschall <br> Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION

Geraldine Soat Brown, United States Magistrate Judge

Defendants Bel Fuse Inc., Bel Fuse Ltd., Bel Stewart Ltd., and Bel Connector Inc. (collectively referred to herein as "Bel Fuse") have brought Defendants' Motion to Compel: Items Listed on Murata's Privilege Logs [dkt 141] seeking an order compelling the production of more than eight hundred documents, falling into a number of different categories, that are listed on the privilege logs served by plaintiff Murata manufacturing Co. Ltd. ("Murata"). This opinion deals with a threshold issue of law affecting Murata's assertion of attorney-client privilege for many of the documents.

The factual background of this case is set out more fully in this court's Memorandum Opinion and Order dated May 25, 2004. [Dkt 102.] *See Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*, No. 03 C 2934, 2004 WL 1194740 at *1 (N.D. Ill. May 26, 2004) (Brown, M.J.). In the present motion to compel, Bel Fuse seeks the following items listed on Murata's Revised First and Second Privilege Logs: (1) communications involving Murata's Japanese patent agents or attorneys; (2) materials prepared by Murata's expert, David W. Hughes; and (3) items described on Murata's privilege logs

as "attorney notes." (Defs.' Mot. ¶¶ 2-4; Defs.' Br. at 2-3.) Murata objects to producing those documents on the basis that they are protected by either the attorney-client privilege or work product doctrine.

Within its first category, Bel Fuse seeks documents on Murata's privilege logs reflecting communications between: (a) Murata's Japanese patent agent and a non-attorney employee of Murata, (b) Murata's Japanese patent agent and the agent's U.S. or German associate, and (c) Murata's Japanese attorney and a non-attorney employee of Murata (documents 1-774, 776-87, 789-94, 796-802, 804-31, 907, 909-10, 916, 926, and 929-30).[1] (Defs.' Br. at 3.) Murata argues that those communications are protected by the attorney-client privilege. (Pl.'s Opp'n at 3-10.) [Dkt 147.] Bel Fuse contends that, under Japanese law, communications involving Japanese attorneys and patent agents are not protected. (Defs.' Br. at 4.) Thus, the threshold issue presented by the first group of documents is whether there is a privilege protecting communications with Japanese attorneys and Japanese patent agents.

Both parties tell the court that, when evaluating claims of privilege for documents involving communications with foreign patent agents or attorneys, the court must "look to the foreign nation's law to determine the extent to which the privilege may attach." (*Id.* at 3; Pl.'s Opp'n at 2) (citations omitted.) Although that may be a rather simplistic view of the choice of law issue (*see, e.g., VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 14-16 (D. Mass. 2000)), because the parties agree on this point, the court will adopt it for this dispute. The parties further agree that Japanese law will determine the extent to which those communications are privileged in this case. (Defs.' Br. at 3-4;

---

[1] Because the entries in Murata's privilege logs were not numbered, Bel Fuse's attorneys manually numbered each item for reference purposes. (Defs.' Br. at 2.) The court has relied on those numbers here.

Pl.'s Opp'n at 3.) However, the parties disagree as to the outcome of applying Japanese law to this dispute. Bel Fuse initially argued that "[u]nder Japanese law, communications involving Japanese attorneys and patent agents are not privileged" (Defs.' Br. at 4), whereas Murata argues that "Japan does recognize a privilege for communications between the client and either *bengoshi* [attorneys at law] or *benrishi* [patent agents]." (Pl.'s Opp'n at 3.)[2]

As Murata points out in its Opposition, Articles 197 and 220 of the Japanese Code of Civil Procedure, which became effective January 1, 1998, treat as privileged certain information learned by Japanese attorneys and patent agents from their clients. Article 197 provides that "a witness may refuse to testify . . . [w]here a witness who is or was a . . . lawyer (including a . . . [b]engoshi), [or a] patent attorney [benrishi], . . . is questioned with regard to [a] fact which he has obtained knowledge in the exercise of his professional duties and he should keep secret . . . ." (*Id.*, Ex. 1, Code of Civil Procedure of Japan.) Article 220 of the Japanese Code of Civil Procedure treats as privileged documents containing information provided under Article 197:

> A holder of a document may not refuse the production thereof in the following cases:
> (1) When the party himself is in possession of the document to which he has referred in the litigation;
> (2) When the person going to prove is entitled to demand from the holder of the document the delivery or the perusal thereof;
> (3) When the document has been drawn up for the benefit of the person going to prove or for the legal relations between the person and the holder thereof.
> (4) *In addition to the cases mentioned in the preceding three paragraphs, when the document . . . does not come under any of the followings [sic]; . . .*
> b. *A document stating therein the fact provided for in Article 197 paragraph 1 item (2) . . . which is not exempted from the duty to keep secret. . . .*

---

[2] Murata defines "bengoshi" as "attorneys-at-law, comparable to an English barrister," and "benrishi" as persons who are "not attorneys-at-law, although the English translation is that of 'patent attorney'" and are sometimes referred to as "patent agents." (Pl.'s Opp'n at 3) (citations omitted.) Bel Fuse does not dispute that definition.

(*Id.*) (emphasis added.) Several courts have interpreted Article 220, and specifically its application to patent agents, since the 1998 Amendments went into effect. In *VLT*, the court stated:

> [P]rior to January 1, 1998, documents held by parties in litigation were not generally subject to mandatory production under Article 312 of the Japanese Code . . . . Effective January 1, 1998, the code was amended to allow for liberal American-style discovery. Specifically, Article 312, renumbered 220, created a catch-all category of documents that a party could not refuse to produce. However, even under the new discovery rules, documents reflecting communications between clients and benrishi are exempt from production.

194 F.R.D. at 17 (internal citations omitted). The *VLT* court also noted that patent agents in Japan function similarly to attorneys, stating that they "appear before the Japanese patent office, offer legal advice concerning infringement and validity issues under Japanese patent law, send warning letters to potential infringers, and appear on behalf of clients in certain court proceedings relating to patents." *Id.* See also *Knoll Pharm. Co., Inc. v. Teva Pharm. USA, Inc.*, No. 01 C 1646, 2004 WL 2966964 at *3 (N.D. Ill. Nov. 22, 2004) (Darrah, J.) (relying on *VLT* and stating that "[u]nder Japanese law, documents reflecting communications between patent agents and clients are exempt from production").[3]

---

[3] Although Article 220 expanded the scope of document production in Japan, it appears that Article 197 had provided a privilege before the 1998 Amendments went into effect. *See* Pl.'s Opp'n, Ex. 2, Christopher E. Chalsen & Michael H. Jacobs, *Now It's Easier to Tell No Tales from Japan*, LEGAL TIMES at 28 (April 2, 1999) ("Even before the 1998 amendments, Article 197-1-2 of the [Japanese Code of Civil Procedure] had provided that benrishi and bengoshi could refuse to testify as to the matters they learned in connection with their work.") (emphasis omitted); *see also VLT*, 194 F.R.D. at 17 (stating that former provisions of the Japanese Code of Civil Procedure provided "substantially the same privilege").

With respect to the documents containing communications involving a Japanese attorney, Bel Fuse never really explains why it believes those documents would not be covered by the attorney-client privilege. Consequently, Murata, in response, and Bel Fuse, in reply, focus their arguments on whether the privilege applies to communications with Japanese patent agents, not attorneys. In any case, it appears that some form of an attorney-client privilege between Japanese attorneys and their clients existed even prior to the 1998 Amendments. *See* Chalsen & Jacobs, *supra*, at 26 (stating that "U.S. courts have routinely recognized that Japanese courts consider

It seems clear that Japanese law extends the attorney-client privilege to confidential communications involving patent agents or attorneys. Article 197(2) specifically refers to lawyers and patent attorneys [agents] as among those who may refuse to testify "with regard to [a] fact which he has obtained knowledge in the exercise of his professional duties and he should keep secret." Article 220(4)(b) provides that documents containing facts provided under Article 197 are exempt from production. Moreover, the cases that have addressed this issue since the 1998 Amendments went into effect agree that documents reflecting confidential communications between Japanese attorneys or patent agents and their clients are exempt from disclosure. *See, e.g,. Knoll*, 2004 WL 2966964 at *3-4; *VLT*, 194 F.R.D. at 17.

Interestingly, in its Reply, Bel Fuse does not even really dispute this conclusion (or at least it provides no persuasive authority to dispute it). Bel Fuse appears to concede that Article 220 governs the production of documents (and tacitly admits that there is a privilege), but raises the new argument that Article 220 does not exempt from production those documents in the possession of *the client*. (Defs.' Reply at 3-5.) [Dkt 149.] Bel Fuse argues that Article 220 only exempts those documents in the possession of the patent agent (and, presumably, others specifically listed in Article 197), and therefore, the documents at issue, which are held by Murata (the client), are not exempt from production under Article 220. (*Id.* at 3, 6.) In support of its position, Bel Fuse points out that Article 197, which is referred to in Article 220, addresses only the right of the patent agent to refuse to testify, not the right of the client to refuse to testify, and "it therefore follows that Article 220 exempts from automatic production only documents in the possession of a patent agent." (*Id.* at 4)

---

communications between Japanese attorneys at law, *i.e.*, bengoshi, and their clients to be privileged").

(emphasis omitted.) Bel Fuse further argues that *VLT* and *Knoll*, which held that documents reflecting confidential communications between patent agents and clients were exempt from production, were wrongly decided and should not be followed. (*Id.* at 5.) Significantly, Bel Fuse cites no decision that has adopted its argument.[4]

To begin with, Bel Fuse waived that argument, having waited until its reply brief to raise it. *See Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990) (stating that the Seventh Circuit has consistently refused to consider arguments withheld until the reply brief). However, even if the argument is considered, this court sees no reason to depart from the reasoning of the courts in *VLT* and *Knoll*. In neither case did the court view the identity of the document holder as having any bearing on whether those documents were privileged in Japan. *See VLT*, 194 F.R.D. at 10, 12, 17-18; *Knoll*, 2004 WL 2966964 at *3-4. In fact, in *Knoll*, the disputed documents were held by a Dr. John D. Arnold, who appears to have been a principal of one of the parties in the case, the John and Lois Arnold Family LLP. 2004 WL 2966964 at *1, 4. Neither Article 220 nor the relevant case law make any distinction between documents in the hands of patent agents or attorneys and their clients. Article 220 states simply that a "holder of a document" may not refuse production in certain circumstances, and then exempts certain categories of documents. The phrase "holder of a

---

[4] The principal cases cited by Murata to support its position, *Alpex Computer Corp. v. Nintendo Co., Ltd.*, No. 86 CIV. 1749, 1992 WL 51534 (S.D.N.Y. March 10, 1992) (Wood, J.) and *Santrade, Ltd. v. General Elec. Co.*, 150 F.R.D. 539 (E.D.N.C. 1993), were decided prior to the 1998 Amendments. (Defs.' Br. at 4; Defs.' Reply at 3, 5.) Other than those cases, Bel Fuse relies heavily on articles and notes from law journals and other periodicals, all of which either fail to support Bel Fuse's position or do not appear to have taken the 1998 Amendments into account. Specifically, the court's review of the articles and notes attached to Bel Fuse's reply brief demonstrates that the authorities upon which those publications rely are in turn relying on authorities which pre-date the Amendments. *See* Defs.' Reply at 3-4; *id.*, Exs. B, C (and authorities cited therein).

document" does not appear to exclude or intend to exclude clients from the exemption. Although Article 197 refers to the right of a patent attorney [agent] and lawyer, but not the client, to refuse to testify, that right arises out the protection accorded to confidential knowledge. Grafting on to Article 220 a distinction based on whether the documents containing that confidential knowledge are in the hands of the attorney or patent agent or client makes no more sense under Japanese law than it would under American law.[5]

Although it is not Bel Fuse's burden to establish that the documents are not protected, Murata has established the threshold proposition that there is a privilege in Japan which not only protects patent agents and attorneys from having to testify as to certain confidential communications, but protects documents containing those communications from being disclosed, even if it is the client, rather than the attorney or agent, who holds the documents. The next step in the analysis, whether the documents sought by Bel Fuse should be protected from disclosure, remains for further proceedings.

/Geraldine Soat Brown
United States Magistrate Judge

February 3, 2005

---

[5] After briefing had concluded, Bel Fuse filed a motion to file a supplemental reply consisting of a declaration by a Japanese patent attorney, Minoru Senda. [Dkt 151.] Bel Fuse's motion was denied, for a number of reasons. First, not only was the effort untimely, but the substance of the declaration (which admits that a Japanese patent agent can refuse to produce documents) is contrary to the legal position asserted by Bel Fuse in its opening brief. In addition, the court did not find the declaration helpful, because Mr. Senda provided no basis for his opinion (that documents in the hands of clients are not protected) other than the text of Articles 197 and 220 and his own opinion, effectively *ipse dixit*.