IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURATA MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 2934 |
| | ) | |
| vs. | ) | Judge Joan B. Gottschall |
| | ) | |
| BEL FUSE, INC., *et al.*, | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.
### BACKGROUND

Murata Manufacturing Co., Ltd., moves to compel the defendants to produce documents

identifying their non-U.S. sales of modular jacks, which Murata claims infringe its patent. The patent-in-

suit, Murata's '641 patent, is directed to a modular jack of the kind used in computers and similar electronic

devices. The jack has an integrated noise suppression feature designed to reduce the adverse effects of

an extraneous electromagnetic field or signal. Murata alleges that Bel Fuse: (1) is making, using, selling,

importing and/or offering for sale infringing modular jacks in the United States in violation of 35 U.S.C. §

271(a); and (2) has induced and continues to induce infringement by others in violation of 35 U.S.C. §

271(b). (*Second Amended Complaint*, ¶¶ 10, 11). When Murata served document requests on Bel Fuse

that sought information regarding Bel Fuse's sales of and profits from its accused modular jacks worldwide,

Bel Fuse objected as to non-U.S. sales information, claiming it was irrelevant. Attempts to resolve the

discovery dispute as required by Local Rule 37.2 were unsuccessful. This motion followed.

According to Murata, it is entitled to the documents covering non-U.S. sales for two reasons: During the Rule 37.2 conference Bel Fuse made a binding promise to produce the materials, and the information relating to foreign sales is relevant to Murata's claim that Bel Fuse sold infringing jacks to overseas producers, which incorporated them into products that they then sold in the United States. Murata also submits that foreign sales are relevant to damages insofar as they can be employed to arrive at a reasonable royalty rate. Finally, Murata maintains that the foreign sales are relevant to Bel Fuse's defense of obviousness, inasmuch as those figures can potentially demonstrate that the infringing products enjoyed "commercial success."[1]

Bel Fuse, of course, denies that it made any binding promises to produce the sales information, and stands by its original objection that the data is irrelevant to obviousness. As for Murata's inducement claim, Bel Fuse contends that it cannot provide support for the discovery sought because Murata cannot prove Bel Fuse is liable for inducement. Finally, Bel Fuse contends that the doctrine of judicial estoppel precludes Murata from arguing that foreign sales information is relevant to its inducement of infringement claim.

---

[1] Commercial success is a "secondary consideration" that is relevant to the obviousness or non-obviousness of the patent. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966). This is because the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art. *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1376 (Fed.Cir. 2005). As the court explained in *Pacific Technica Corp. v. United States*, 2 Cl.Ct. 170, 172-73 (1983):

> The theory underlying the doctrine is that an invention enjoys commercial success because a need for the invention existed. From the existence of this need and the readily available rewards, courts have been urged to conclude that a plaintiff's invention must be patentable, since the need would have been filled by others, at a much earlier date, if the solution was obvious. Put another way, courts are urged to conclude that an invention which enjoys commercial success is nonobvious for, if the invention were obvious to make, it would have been discovered and exploited in the marketplace, long before plaintiff came along.

## A.
## Murata's Previous Discovery Motion

This is not the first time discovery regarding non-U.S. sales has been an issue in this case. When Murata filed this case on May 1, 2003, it alleged only that Bel Fuse directly infringed the patent-in-suit by "making, using, selling, importing and offering for sale *in this judicial district and elsewhere in the United States . . .* [the accused products]." (*Complaint*, ¶ 7) (Emphasis added). On November 14, 2003, Murata served its first request for non-U.S. sales information on Bel Fuse Inc. While awaiting Bel Fuse's response, Murata amended its complaint by adding Bel Fuse Inc.'s parent company, Bel Fuse Ltd. – a Hong Kong company having its principal place of business in Kowloon, Hong Kong – as a defendant. The Hong Kong company manufactures accused products in Asia and sells and ships the products to Bel Fuse in the United States, as well as to non-U.S. customers. The Amended Complaint again alleged direct infringement "within this judicial district and elsewhere in the United States of America." (*Amended Complaint*, ¶ 8). On December 17, 2003, Bel Fuse objected to production of foreign sales information on the grounds that it was not relevant to any issue in the case.

On January 9, 2004, Murata filed its "Second Motion to Compel: Financial Information," ("*Second Motion to Compel*"), which sought an order requiring Bel Fuse to produce its non-U.S. sales information. Murata argued that those sales were relevant to the issue of non-obviousness because they bore on the patented invention's commercial success and to the calculation of a reasonable royalty. (*Second Motion to Compel*, at 9-10). Bel Fuse opposed the motion, contending that Murata had to establish actual infringement on the part of Bel Fuse *before* foreign sales figures could possibly be found relevant to commercial success. (*Bel Fuse's Brief in Opposition to Murata's Second Motion to Compel:*

3

*Financial Information*; at 10-12)("*Brief in Opposition*"). In support of its position, Bel Fuse relied

exclusively on the dissent in *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.*, 813 F.2d 1207,

1215 (Fed.Cir. 1987).[2]

On February 13, 2004, Magistrate Judge Brown, at a hearing on Murata's motion, confirmed that

Murata sought sales information in connection with Bel Fuse 's defense of obviousness:

> THE COURT: Because foreign sales as sales are not relevant to damages because the
> foreign sales would not be recoverable in a United States court. Right?
>
> MURATA'S COUNSEL: The only way they might be relevant on an infringement theory,
> your Honor, is if they were alleged to have induced infringement by the customer abroad
> who ultimately imports it into the United States.
>
> *            *            *
>
> But as of right now what we're talking about is obviousness.

(*Hearing Transcript*, at 4).

---

[2] In *Truswal*, the majority vacated the district court's quashing of a patent holder's subpoena of a nonparty's sales information. It found the information relevant to the issue of commercial success and thus satisfied Rule 26(b)(1)'s requirement that the information be "'reasonably calculated to lead to the discovery of admissible evidence.'" 813 F.2d at 1212. The majority rejected the nonparty's argument that the information was probative only if the patent holder first established that the nonparty's accused product actually infringed the patent. *Id*.:

> No useful purpose would be served in converting every hearing on a motion to quash a
> subpoena for sales information into a full-fledged trial on infringement and bases of sales,
> issues that will be decided by the Florida court if the sales information is offered in evidence
> at the trial. One may not, and is unlikely to, demand such information on products totally and
> clearly remote from the claimed invention. Here, [the nonparty's] product has been charged
> as an infringement and [the nonparty] has protested the issuance of the . . . patent.

The dissent, however, felt more should be required of the patent-holder before discovery of sales information should be allowed. It concluded that "it is necessary to establish that the alleged copies are actual infringements of the patent in suit before they can possibly be relevant and counted as successes of the patented invention. So far in this case, not one infringement has been proved." *Id*. at 1215.

Magistrate Judge Brown went on to indicate that she was not satisfied by Murata's cited authorities in support of its argument that foreign sales information had to be produced because of its relevance to the issue of obviousness. (*Hearing Transcript*, at 8). Instead, she relied on *Speller v. United States*, 14 Cl.Ct. 170 (Cl.Ct. 1988), which held that the patent-holder must "show some relationship between the claimed invention and the information sought"in order to obtain sales data from a non-party. (*Hearing Transcript*, at 11 (*quoting Speller*, 14 Cl.Ct. at 174)).[3] Magistrate Judge Brown found that Murata had not discussed what type of showing this might be and she felt there needed to be "a lot more discussion" of the issue and "a lot more factual material" to support Murata's position. In the end, she denied Murata's motion without prejudice. (*Hearing Transcript*, at 11, 13-14, 18-19).[4]

Murata's next move, which had been telegraphed at the hearing, was to amend the complaint by adding a claim of inducement: "[Bel Fuse has] infringed and continue[s] to infringe the `641 patent under 35 U.S.C. § 271 by inducing others to infringe the `641 patent." (*Second Amended Complaint*, ¶11).

---

[3] In *Speller*, the patent-holder claimed that inertial guidance devices manufactured for and used by the defendant, United States, infringed on its patent. It issued a subpoena for sales information to the non-party manufacturer-supplier, which sought to quash to subpoena on the grounds, *inter alia*, that sales data was not relevant because the patent-holder had not demonstrated a nexus between his invention and the commercial success of the non-party's device. 14 Cl.Ct. at 171.

[4] As a Federal Circuit opinion, *Truswal* is binding precedent on issues of patent law. *See Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356, 1359 (Fed.Cir. 1999). The question is whether an issue decided by the Federal Circuit, although "not itself a substantive patent law issue," "'pertain[s] to patent law. . . .'" That is, whether the issue "'bears an essential relationship to matters committed to . . . exclusive [Federal Circuit] control by statute,' or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction.'"). *Truswal* concluded that a "determination of relevance implicates the substantive law of patent validity and infringement," and thus, it is appropriate to look to Federal Circuit law. 813 F.2d at 1212. The majority opinion in *Truswal* did caution that a patent-holder may not demand sales information on products "totally and clearly remote from the claimed invention." *Id.* But the court pointed out that the product in question – like Bel Fuse's product here – had been charged as an infringement. Concluding that she was not bound by the majority opinion in *Truswal*, Magistrate Judge Brown relied on the dissent. (*Hearing Transcript*, at 16).

Bel Fuse did not oppose the amendment, and the Second Amended Complaint was filed on November 5, 2004. Murata served new discovery requests on Bel Fuse, seeking several categories of documents, including Bel Fuse's non-U.S. sales data. Bel Fuse objected to most of the categories and once again contended that information regarding sales to customers outside the United States was irrelevant.

## B.
## The Local Rule 37.2 Discovery Conference

On May 2, 2005, counsel for Murata and Bel Fuse conferred by telephone, pursuant to Local Rule 37.2, to discuss the latter's objections to Murata's document requests. The Rule mandates that the parties attempt to amicably resolve discovery disputes before applying to the court for relief. The conference was wide ranging. One of the matters discussed was Bel Fuse's objection to producing information about non-U.S. sales. Murata's three counsel claim that when they explained the relevancy of the requested information and the cases in support of their position, Bel Fuse's counsel agreed to withdraw his objection and to produce the requested information within two weeks of the conference. (*Murata's Brief in Support of Its Fifth Motion to Compel*, Ex. 7-9, Declarations of Patrick J. Kelleher, Peter J. Meyer, and Richard A. Wulff).

On May 9, 2005, Murata's attorney wrote to Bel Fuse's lawyer to "summarize our telephone conference of 2 May, 2005." (Exh. 7(A) at 1). On page two, under the prominent heading, "Sales Outside of the United States," Murata's attorney addressed the topic of foreign sales information.[5] The letter noted

---

[5] The May 9th letter contained eleven headings that were in bold faced type and underlined. The first was "Modular Jacks" and appeared at the bottom of page 1. The second was "Sales Outside of the United States." The other topical headings were: Market Share Information, Comparison of Different Modular Jack Products, Research & Development Costs, Pre-Closing Sales Information For Stewart Products, Projected Sales and Profits, Licensing Information, Per-Product Cost Information, and Sales Information in Electronic
(continued...)

that Bel Fuse's counsel had withdrawn objections to the production of the non-U.S. sales documents, and that he had promised production in two weeks:

> As we discussed, sales outside of the United States are relevant to the issue of commercial success. You stated that defendants were withdrawing their relevancy objections to non-U.S. sales information and you expected that defendants would produce responsive documents within the next two weeks.

(Ex. 7(A), at 3).

On May 13, 2005, Bel Fuse's attorney responded with a brief email, stating that while he had originally estimated that he could "provide additional information within 2 weeks . . . it will take some additional time." (*Id.*, Ex, 7(B)). Significantly, he did not dispute Murata's clear and unambiguous statement that he had agreed to withdraw Bel Fuse's relevancy objection to non-U.S. sales. By May 24th, there had been no production, and Murata's counsel again wrote to inquire about the situation. (*Id.*, Ex, 7(C)). Bel Fuse's attorney's succinct email stated that "getting the info" was taking more time than estimated due to travel schedules. (*Id.*, Ex, 7(D)). But, he promised, "[I am] doing the best I can." A week later, Murata's attorney again wrote complaining about the non-production and threatening to seek court enforcement of "our agreement," if he did not receive the agreed upon production or a firm commitment to a date for production by June 7, 2005. (*Id.*, Ex, 7(E)).

Another week passed in silence. Then, on June 7, 2005, Bel Fuse's counsel finally wrote to Murata's counsel indicating that Bel Fuse was endeavoring to produce many of the requested documents by June 21st. However, on the subject of sales outside the United States, Bel Fuse's counsel said:

---

[5](...continued)
Format. The May 9th letter noted that as to a number of these categories, Bel Fuse's counsel had continued to refuse to produce the documents on relevancy grounds.

While I do recall considering producing the requested information in view of your argument regarding commercial success, on further review, we must stand by the objection to producing such documents on the grounds of relevancy. We feel strongly that no Bel ICM is covered by the patent-in-suit and that therefore such sales outside the United States cannot evidence commercial success. The Court has already denied Murata's motion to compel financial information relating to foreign sales.

(*Id.*, Ex. 7(F)).

Communications on this subject came to a close with Murata's counsel's response on June 13th.

He wrote that Bel Fuse's about-face on the production of non-United States sales information disappointed

and surprised him. He called Bel Fuse's counsel's contention that he had only agreed *to consider*

producing the information wrong, and he noted that three Murata attorneys had heard him *agree to*

*produce* the information. He further stated that not once during the previous month-and-a half had Bel

Fuse's counsel disputed Murata's version of the agreement reached during the Local Rule 37.2 conference.

In closing, he insisted that Bel Fuse comply with its agreement to produce the foreign sales information.

(*Id.*, Ex. 7(G)). Bel Fuse's counsel did not respond. The instant motion followed.

## II.
## ANALYSIS

### A.
### A Selective Response To An Adversary's Letter Purporting To Summarize Agreements Made During A Discovery Conference May Constitute An Admission

#### 1.

The threshold question is whether Bel Fuse's failure to have disputed the statement in Murata's

May 9th letter that Bel Fuse agreed to withdraw objections to the production of the non-U.S. sales

information constitutes an admission. Bel Fuse does not claim that if such an agreement were made, it could

be repudiated, and thus we do not consider that question. [6] Instead, Bel Fuse argues that there was "[a]t most," only a "qualified agreement to produce [non-U.S. sales] information subject to the confirmation of Murata's representations as to the facts and holding in the *Lindemann* [*Maschinenfabrik GmbH v. American Hoist & Derrick Co.,* 730 F.2d 1452 (Fed. Cir. 1984)] and *AMP* [*Inc. v. Molex, Inc.,* 1988 WL 48276 at *1 (N.D.Ill. 1988)] cases." (Bel Fuse's Brief in Opposition at 8). Bel Fuse contends that its counsel's review of those cases persuaded him that Murata's counsel had misstated their holdings, and thus, he decided to persist in the objections that had previously been interposed. He so informed Murata on June 7th. The delay purportedly stemmed from Bel Fuse's counsel's determination that he "did not feel obligated to immediately correct every incomplete and inaccurate statement made in that letter. Nor did [he] expect that Murata would rely on [his] failure to immediately contradict every error contained in that letter." (Raskin Declaration at ¶¶ 5-12).

Proof of the "qualified" nature of the agreement is said to be found in the absence of any motive to have agreed to waive Bel Fuse's prior objections: "why would I agree to produce documents that Bel Fuse had previously insisted were irrelevant?" Since the springs of conduct are subtle and varied, as Justice Cardozo once observed, there may have been a variety of explanations for the claimed change of heart. One answer to the rhetorical question posed by Bel Fuse is that the Second Amended Complaint, which

---

[6] *See Tamari v. Bache & Co.,* 729 F.2d 469, 472 (7th Cir. 1984)(attorney's promise in open court to produce documents can be treated as the equivalent of an order for Rule 37(b) purposes); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331, 341 (N.D.Ill. 2005)(representation that there would be prompt compliance with discovery if motion to dismiss were denied was an enforceable promise); *Southland Corp. v. Haines,* No. 91-3416, 1992 WL 82356 (N.D.Ill. Apr. 20, 1992)(counsel agreed to produce documents in open court); *Metropolitan Life Insurance. Co. v. Cammon,* No. 88-5549, 1989 WL 153558 (N.D.Ill. Nov. 7, 1989)(Kocoras, J.)(party was bound by terms of counsel's agreement during conference to produce documents); *Delsener v. Kenwal Steel Co.,* No. 86-4487, 1987 WL 7309 (N.D.Ill. Feb. 20, 1987)(Shadur, J.)("It is the breach of that agreement [during the Rule 37.2 – then 12(d) – conference] of which Kenwal's lawyers properly complain.")

9

charged Bel Fuse with having induced infringement of its patent, changed the analytical landscape of the case. It may be that other influences were at work. But it is impossible (and unnecessary) to "crawl[ ] into [Bel Fuse's counsel's] mind," Posner, Overcoming Law, 276 (1995), and we need not speculate.

The three lawyers who participated in the Rule 37.2 conference on behalf of Murata insist that, whatever the reason, Bel Fuse's counsel agreed to waive earlier objections and to produce non-U.S. sales data. Although it seems unlikely that three lawyers would have misheard what was said, numerosity alone is not decisive, and Bel Fuse's counsel tells a different story. If this is all there were, there would be no principled way to resolve the clash of memories. But there *is* more: Murata's May 9th letter pointedly and plainly recounted how Bel Fuse's counsel had agreed to withdraw objections to the production of the non-U.S. sales documents, which he promised would be produced in two weeks. Bel Fuse's counsel's response four days later did not take issue with this assertion, although it did respond to the issue of production, promising that production was being delayed but would occur.

### 2.

In many contexts, "inferences from silence are perilous," Posner, Cardozo: A Study In Reputation, 37 (1990), and silence is often so ambiguous that it is of little probative force, inviting a fact finder to speculate as to its meaning. *United States v. Hale*, 422 U.S. 171, 176 (1975). *Compare Kolupa v. Roselle Park District*, _F.3d_, 2006 WL 306955 (7th Cir. Feb. 10, 2006)("silence is not a concession. Silence is just silence...."). Thus, there is a certain persuasiveness to Bel Fuse's contention that its counsel's non-response to the May 9th letter is meaningless. After all, the notion that one can create evidence through the simple expedient of writing a letter has long been rejected. *See, e.g., Dempsey v. Dobson*, 174 Pa. 122, 132, 33 A.459, 461 (1896); *Viele v. McLean*, 200 N.Y. 260, 93 N.E. 468 (1910). Writing for a

10

unanimous Court in *A. B. Leach & Co. v. Peirson*, 275 U.S. 120 (1927), Justice Holmes put it this way:

> A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission. *Id.* at 128.

"But this does not mean that all writings with self-serving propensities are, *ipso facto*, inadmissible."

*Golden West Const. Co. v. United States for Use and Benefit of Bernadot*, 304 F.2d 753, 756 (10th Cir. 1962)(unanswered letter from lawyer of one of parties admissible). Where there are such "further circumstances making an answer requisite or natural," failure to respond can be deemed an admission. *See Field v. Farrington*, 77 U.S. 141 (1869); *Tober v. Graco Children's Products, Inc.*, 431 F.3d 572, 576 (7th Cir. 2005); *Willard Helburn, Inc. v. Spiewak*, 180 F.2d 480, 482 (2nd Cir. 1950)(letter from agent to principal was just what an agent would be expected to write in reporting to his principal and failure to respond constituted an admission); John W. Strong, McCormick on Evidence § 262 at 171 (5th ed. 1999).[7] The question of when such further circumstances exist does not admit of an easy or automatic answer, and any definite rule is impracticable. Each case must stand on its own facts. 1V Wigmore, Evidence §1073 at 133 (Chadbourn Rev. 1972).

The Federal Rules of Evidence also recognize that silence can be an admission. Under Rule 801(d), Federal Rules of Evidence, "[a] statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement of which he has manifested his adoption or belief in its truth." The burden is

---

[7] *Compare Crane v. Logli*, 992 F.2d 136, 139 (7th Cir. 1993)(counsel's silence in briefing can constitute a concession); *Dickerman v. Burgess*, 20 Ill. 266 (1858), 1858 WL 6069 at *8-9 (it was reasonable for plaintiff to conclude that he was "secure in relying on [defendant's] promise. . . . It was a reasonable inference from Burgess's silence.").

on the party seeking to introduce the letter to establish that under the circumstances the failure to respond is so unnatural that it supports the inference that the party acquiesced to the statements contained in the letter. *See Tober*, 431 F.3d at 576; *Weston-Smith v. Cooley Dickinson Hosp., Inc.*, 282 F.3d 60, 67 (1st Cir. 2002). *Ricciardi v. Children's Hosp. Med. Ctr.*, 811 F.2d 18, 24 (1st Cir.1987).

Determining the effect of Bel Fuse's silence in response to the May 9th letter's representation regarding non-U.S. sales necessitates a careful examination of the entire complex of circumstances surrounding the exchange of letters, for "the character of every act depends upon the circumstances in which it is done." *Schenck v. United States*, 249 U.S. 47, 52 (1919)(Holmes, J.). That examination must include: the context within which the letter was sent, the nature of the statement, its importance, its placement in the letter, the clarity of its phrasing, the sophistication of the author and recipient, the overall content of the letter, and any other relevant factor. It is only after such a comprehensive assessment that it can be determined whether the lack of a denial is so unnatural as to support an inference that the undenied statement was true.

By any calculus, the subject matter of the May 2nd letter was significant, and its phrasing was "entirely plain, and [Bel Fuse's counsel] d[oes] not pretend that he did not understand it as it read." *Willard Helburn, Inc. v. Spiewak*, 180 F.2d 480, 483 (2nd Cir. 1950)(L.Hand, C.J., concurring). The author of the letter and its recipient were sophisticated, experienced lawyers, actively engaged in a hotly contested case. The letter must be read as an experienced lawyer would have read and reacted to it. *Compare Beanstalk Group, Inc. v. AM General Corn*, 283 F.3d 856 (7th Cir. 2002)(Posner, J.)("The letters between plaintiff and defendant were from one merchant to another. They are to be read as businessmen would read them. . . ."). Thus, the ultimate question is whether, under the circumstances of

this case, it was "unnatural" for Bel Fuse's lawyer not to correct what was he perceived to be a misstatement about a critical issue, while responding to other points in the letter.

Had there been no response of any kind to Murata's May 9th letter, the argument against finding an admission from silence would have a greater measure of plausibility. Lawyers often refuse to engage in the kind of desultory exchange of letters that has become so much a part of modern litigation. These letters are often lengthy, highly partisan, and filled with charges and counter-charges, with varying degrees of accuracy. Letter swapping becomes an unproductive endeavor that often does little more than multiply expenses and escalate tensions. *Cf. Fenno v. Weston*, 31 Vt. 345, 352 (1858)("[T]he omission to reply to letters may be explained by so many causes – a want of facility in writing, an aversion to corresponding, or habits of dilatoriness. . . .").

However, a different situation is presented when there is a response to part of a letter, but none to a statement which, if not true, would naturally provoke a response. In that context, silence is admissible as evidence tending to show that the unanswered statements are true. *Fenno v. Weston*, 31 Vt. 345, 352 (1858); *Sullivan v. McMillan*, 26 Fla. 543, 8 So. 450 (1890); McCormick, Evidence, §262. The May 9th letter was not irresponsible, insulting, or provocative and thus best ignored. The letter was of a very different kind, and Bel Fuse's counsel responded selectively and in a way that was unnatural given the importance of the agreement the letter conspicuously claimed he had made. It would have taken no time or effort to have included a sentence in the May 13th response that said, "I did not agree to waive the objection regarding non-U.S. sales information." Having answered a portion of the May 9th letter, his silence regarding the claimed misstatement was unnatural. And being unnatural, it is appropriate to

13

conclude that his silence is an admission.[8]

The Declaration of Bel Fuse's lawyer attempts to account for his selective silence by saying that he did not feel it necessary to respond *immediately* to every inaccuracy. That might have been a perfectly satisfactory explanation but for the fact that he responded to other portions of the letter, that the claimed inaccuracy to which he did not respond is the only one he has been able to point to, and this explanation is not wholly consistent with others that have been offered.

The contention that the agreement to produce was dependent upon a review of *Lindemann* and *AMP* is not compelling. *Lindemann* had been cited by Bel Fuse, itself, in the earlier briefing before Magistrate Judge Brown, and thus, did not require further review. The relevant portions of *AMP* consisted of six lines on Westlaw and could have been reviewed in a matter of minutes:

> Plaintiff's motion to compel discovery is granted in part as follows: Defendant concedes that commercial success of the accused product is relevant to the issue of non-obviousness. Commercial success both within and without the United States may be considered in that determination. *Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co.*, 730 F.2d 1452 (Fed. Cir. 1984). In this case, proof of commercial success is crucial to plaintiff's ability to establish validity. *See* Report and Recommendation of April 22, 1988 at p. 6. Plaintiff will, therefore, be allowed discovery of Molex's foreign commercial success. 1988 WL 48276.

It should not have taken from May 2nd to June 7th to conclude – as is now claimed – that Murata's counsel had misrepresented the holdings in *Lindemann* and *AMP*, had they done so. Beyond the fact that even a careful review of those cases would have taken probably no more than a half hour at best, Murata's

---

[8] Bel Fuse's counsel enjoys an AV rating from Martindale-Hubbell, has been involved in patent, trademark and unfair competition litigation since his admission to the New York bar in 1974. This undoubtedly was not the first exchange of correspondence regarding a discovery dispute in which he had engaged, and he could not have been unaware of the significance of the statement in the May 9th letter that he had agreed to produce documents to which objections had previously been raised.

14

counsel did not misrepresent their holdings.

A final point. Lawyers love letters and memoranda – especially their own. Thus, Murata, in support of its version of events, has offered a notation made during the May 2nd telephone conference by one of its lawyers. The "note" consists of the following: there appears at the top of a piece of paper the number 2. Next to it, in blue ink, appears the words, "Sales & Profits outside U.S." Above that appears, in green ink, the words "agree on comm. success," which is encircled in green. Below that line appear two words which are not legible, followed by "at co. ~ 2 wks." The brevity and opacity of the note do not undercut Murata's claim, but they do prevent the notation from speaking with the kind of clarity suggested by Murata's briefing. (*Brief in Support of Motion to Compel*, Ex. 7, Declaration of Patrick J. Kelleher, Ex. J).

Even if it was more pellucid, the notation would do little to advance Murata's case, for it would prove nothing more than that at a point in time prior to the submission of Mr. Kelleher's Declaration, the note-taker made a statement consistent with the Declaration. Rule 801, Federal Rules of Evidence, has retained the common law's timing requirement that a prior consistent statement must antedate a suggested motive to falsify. *See Tome v. United States*, 513 U.S. 150 (1995); *United States v. McPartlin*, 595 F.2d 1321, 1352 (7th Cir. 1979); 5 Weinstein's Evidence §801.22 at 801-29. It has also retained the common law's prohibition of the introduction of prior consistencies on direct examination to bolster the witness's testimony, since the credibility of a tale told on direct examination is not rendered more trustworthy or probable by its earlier repetitions. IV Wigmore, Evidence §1124 (Chadbourne rev. 1972); 5 Weinstein's Evidence §801.22[1][b] at 801-31; *Grisanti v. Cioffi*, 38 Fed. Appx. 653 (2d Cir. 2002) (unreported); *United States v. Simonelli*, 237 F.3d 19, 27 (1st Cir. 2001) ("Prior consistent statements

15

still must meet at least the standard of having 'some rebutting force beyond the mere fact that the witness has repeated on a prior occasion a statement consistent with his trial testimony.'").[9]

In sum, under the unique circumstances of this case, Bel Fuse's counsel's selective silence in response to the May 9th letter is an admission that there was an agreement to waive prior objections and to produce non-U.S. sales information. Production, however, is not dependent on the agreement to produce alone. Quite apart from that agreement, the materials are discoverable.

## B.
## Bel Fuse Must Produce Foreign Sales Information Because It Is Relevant To The Subject Matter In This Case

### 1.
### Relevance Under The Federal Rules Governing Discovery

Apart from any agreement by Bel Fuse to produce information regarding its foreign sales, Murata submits that such information is relevant to its inducement of infringement claim, to the determination of a reasonable royalty rate, and to Bel Fuse's defense of obviousness. A party is entitled as a general matter to discovery of any information sought if it appears "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Federal Rules of Civil Procedure; *Degen v. United States*, 517 U.S. 820, 825-26 (1996). "The key phrase in this definition – 'relevant to the subject matter involved in the pending action' – has been construed broadly to encompass any matter that bears on, or that reasonably

---

[9] While contemporaneously taken notes of meetings and conversations can have evidentiary significance – they can even qualify under certain circumstances as business records under Rule 803(6), Federal Rules of Evidence, *United States v. Kingston*, 971 F.2d 481 (10th Cir. 1992); *United States v. Jacoby*, 955 F.2d 1527 (11th Cir. 1992) – they are not admissible as independent corroboration of the note-take unless the requirements of the doctrine of prior consistent statements are satisfied. *See Phoenix Associates III v. Stone*, 60 F.3d 95, 103 (2nd Cir. 1995); *Mitchell v. American Export Isbrandtsen Lines, Inc.*, 430 F.2d 1023 (2nd Cir. 1970). *See also United States v. Palumbo*, 100 F.3d 942, 1996 WL 19071 (2d Cir. 1996)(Unpublished opinion)(diary). Although I am not bound in deciding this motion by the Federal Rules of Evidence, I need not ignore the basic principle that underlies the doctrine.

could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

The Federal Rules of Civil Procedure authorize the broadest scope of discovery, *Deitchman*, 740 F.2d at 566, and relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial. *Truswal Systems Corp.,* 813 F.2d at 1211; *Speller v. United States*, 14 Cl.Ct. at 172. Indeed, given the minimal notice-pleading system established by the Federal Rules of Civil Procedure, *Kolupa v. Roselle Park District*, _F.3d_, 2006 WL 306955 (7th Cir. Feb. 10, 2006), discovery is not even limited to issues raised by the pleadings, because discovery itself is designed to help define and clarify what the issues are. *Oppenheimer Fund, Inc.*, 437 U.S. at 351. "Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Id. See also* Wright & Miller, Federal Practice and Procedure § 2008 (2002 pocket part). Patent infringement cases are not exceptions to the rule that discovery is liberal and relevancy is broadly construed. *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993).

## 2.
## Bel Fuse Does Not Dispute That Foreign Sales Information Is Relevant To Murata's Inducement Of Infringement Claim

Murata's claim is that Bel Fuse is inducing non-party component manufacturers in the Far East to incorporate Bel Fuse's infringing modular jacks into their products and import or sell them in the United States, thereby making it liable under § 271(b) of the Patent Act, which provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). Such conduct – when proven – has been found to amount to inducement of infringement. *See, e.g., MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp,* 420 F.3d 1369, 1379-1380 (Fed.Cir.

2005)(defendant, an American company, sold product to Japanese subsidiary, which in turn sold them to American subsidiary, to which United States company provided product support); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1351 (Fed.Cir. 2001)(competitor that did not practice patented method in United States, but manufactured computer chips using method in Singapore and sold them to purchaser which in turn sold them in United States, actively induced patent infringement resulting from United States).

In light of its inducement claim, Murata argues that at least a portion of Bel Fuse's non-U.S. sales would be infringing sales for which Murata can recover damages if it is successful in proving its inducement claim. Hence, Murata submits that the requested discovery is reasonably calculated to lead to discovery of admissible evidence. While not disagreeing that the information sought is relevant to an inducement claim, under Bel Fuse's inverted approach, Murata must prove liability before it is entitled to conduct the discovery that the Federal Rules of Civil Procedure assume is required to determine whether liability exists. And even then, Bel Fuse is tentative about Murata's entitlement to proceed with the requested discovery. According to Bel Fuse:

> if Murata is successful in proving that Bel Fuse induced a foreign third party to infringe the `641 patent, then Bel Fuse's sales to that foreign third party might be relevant in this case for infringement purposes. However, Murata cannot prove that Bel Fuse is liable for inducement to infringe and Murata's mere allegation of inducement in its Second Amended Complaint is insufficient to set aside Magistrate [sic] Brown's prior order.

*(Bel Fuse's Brief in Opposition*, at 9).

This hedge is followed by a lengthy argument regarding Murata's burden of proof, and what it must establish to succeed on its inducement claim. It argues that Murata cannot establish knowledge or intent on Bel Fuse's part, and along the way, Bel Fuse relies on the declaration and deposition testimony of its

18

vice president of operations to show that it had no knowledge of Murata's patent before June of 2002, and has no knowledge that accused products are shipped to the United States by its foreign customers. Reduced to its essentials, the argument is an unsupported summary judgment presentation or a kind of closing argument.

What is conspicuous by its absence in Bel Fuse's discussion is any case law that supports Bel Fuse's claim that Murata essentially has to win before it can have discovery of that which is relevant to the question of *whether* Bel Fuse is an infringer. The absence of citation to any such case is because there is no such requirement, and Bel Fuse's contention renders the discovery provisions of the Federal Rules of Civil Procedure superfluous. Every case Bel Fuse cites in support of its resistence to discovery is either a case detailing what must be established in a summary judgment proceeding,[10] or proven at trial.[11] None of the cases supports Bel Fuse's position that it need not produce admittedly relevant discovery materials until after it has effectively proven liability.

It is well to recall that discovery need only be relevant to the subject matter involved in the pending action. *Oppenheimer*, 437 U.S. at 351. Indeed, its scope need not even be confined to "issues raised by the pleadings" or "the merits of a case." *Id.* Murata has pled a claim for inducement of infringement,

---

[10] *R2 Medical Systems, Inc. v. Katecho, Inc.*, 931 F.Supp. 1397 (N.D.Ill. 1996);*Cybiotronics, Ltd. v. Golden Source Electronics, Ltd.*, 2001 U.S. Dist. LEXIS 6191(C.D.Cal. Apr. 24, 2001); *Smithkline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2002 WL 535082, *1 (N.D.Ill. Apr. 10, 2002); *Organon, Inc. v. Teva Pharmaceuticals, Inc.*, 244 F.Supp.2d 370 (D.N.J. 2002); *Agere Systems, Inc. v. Atmel Corp.*, 2004 WL 945162, *1 (E.D.Pa. Apr. 30, 2004); *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*,194 F.3d 1250 (Fed.Cir. 1999); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 2000 WL 1897300 (N.D.Cal. Dec. 22, 2000); *Engate, Inc. v. Esquire Deposition Services, L.L.C.*, 2004 WL 609800, *1 (N.D.Ill. Mar. 26, 2004).

[11] *Manville Sales* WL 609800, *1 (N.D.Ill. Mar. 26, 2004); *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544 (Fed. Cir. 1990); *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408 (Fed.Cir. 1996); *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308 (Fed.Cir. 1999).

and Bel Fuse has made no attempt to question the claim under Rule 12(b)(6). Foreign sales information, as Bel Fuse admits, is relevant to that claim. Consequently, Murata is entitled to the discovery its seeks on foreign sales without what is effectively a showing of liability, *Truswal Systems Corp.*, 813 F.2d at 1212, and Bel Fuse must produce the documents sought.[12]

## C.
### The Doctrine Of Judicial Estoppel Is Not Applicable In This Case

As a final resort, Bel Fuse contends that Murata is judicially estopped from arguing that foreign sales information is relevant to its inducement claim and to demonstrating commercial success. The argument is unpersuasive. The doctrine of judicial estoppel is "an equitable concept providing that a party who prevails on one ground in a lawsuit may not . . . in another lawsuit repudiate that ground." *United States v. Hook*, 195 F.3d 299, 306 (7th Cir.1999). It prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued in an earlier legal proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749-751 (2001); *Urbania v. Central States, Southeast and Southwest Areas Pension Fund*, 421 F.3d 580, 589 (7th Cir. 2005). In order for it to apply, (1) the latter position must be clearly inconsistent with the earlier position; (2) the facts at issue must be the same in both cases; and (3) the party to be estopped must have prevailed upon the first court to adopt the position. *Id. at* 589.

Bel Fuse submits that in *Watson Industries, Inc. v. Murata Manufacturing Co., Ltd et al., No. 02-C-524 C (W.D. Wis.)* Murata successfully advanced an argument that was diametrically opposed to

---

[12] Having determined that Bel Fuse is bound by its agreement to produce the documents at issue and that those documents are relevant to Murata's inducement claim and therefore discoverable, the issue of the relevance of foreign sales to the commercial success and obviousness or non-obviousness of the patented invention need not be revisited and Magistrate Judge Brown's ruling need not be disturbed. Similarly, the issue of the relevance of foreign sales to the determination of a reasonable royalty need not be resolved.

that advanced here, namely that production of *its* foreign sales information was not relevant. Notwithstanding Watson's contention that the information was "necessary to allow [it] to investigate its theory of inducement liability and damages," (*Bel Fuse's Supplemental Opposition*, Ex. 1, at 3), the magistrate judge denied the motion to compel, because, as he read the allegations, Watson had only alleged that Murata had induced its wholly-owned subsidiary – MENA – to infringe, so other sales were not relevant. (*Bel Fuse's Supplemental Opposition*, Ex. 4, at 3; *Appendix to Murata's Reply Brief in Support of Motion to Vacate*, Ex. 40, at 2). In fact, Watson had alleged simply that Murata "supplied MENA with [accused] gyroscopes" and "controlled its business activities." (*Appendix to Murata's Reply Brief in Support of Motion to Vacate*, Ex. 39, ¶¶ 18-19). In sustaining the magistrate judge's ruling, the district court concluded that Watson "*did not allege* infringement by inducement in its amended complaint. Merely mentioning it in passing in its claim for relief is not sufficient, even under the lenient standards of notice pleading." *Watson Indus.*, 2003 WL 23200381.

The doctrine of judicial estoppel is inapplicable under these circumstances. First, the underlying facts in the two cases are not sufficiently similar. Watson's amended complaint alleged infringement but, even as its brief suggested, not *inducement* of infringement. (*Bel Fuse's Supplemental Opposition*, Ex. 1, at 2). Instead of setting forth a claim for inducement, it "prayed that the Court enter judgment that [Murata] infringed, induced infringement and/or contributed to . . . infringement . . . ." (*Id.*). To the extent it did allege inducement, its allegations were limited to the inducement of a single, specific company: MENA. Obviously, sales to other companies would be irrelevant to that claim.

In addition, Watson admitted that it sought the foreign sales information "to investigate its *theory* of inducement . . . ." (*Bel Fuse's Supplemental Opposition*, Ex. 1, at 3 (Emphasis added)). In the

absence of an actual claim of inducement, however, both the magistrate judge and the district court found the information irrelevant. Here, unlike Watson, Murata is not merely investigating some inchoate theory; it has amended its complaint to allege a claim that Bel Fuse has induced others to infringe – a claim that is not limited to a single company. The factual situation, then, is not the same.[13] Thus, at least one of the prerequisites for the application of judicial estoppel is absent.

Second, Murata's earlier position is not clearly inconsistent with its present position. Here, Murata argues that foreign sales are relevant to a claim for inducement of infringement "of others" – the claim in its amended complaint. In the earlier case, there was no such claim. To the extent inducement was alleged, its target was alleged to have been a single company, exclusively, and thus Murata argued that the sales of other companies were not relevant. This is not the type of circumstance where it would be appropriate to apply judicial estoppel.[14]

---

[13] Bel Fuse argues that Murata's inducement of infringement claim is somehow deficient – and therefore similar to Watson's allegations – because it is a "boilerplate allegation" that does not "expressly allege... that Bel Fuse induced any non-U.S. customers to infringe." (*Bel Fuse's Supplemental Opposition*, at 1 n.2, 3 ). This is an odd argument, given the fact that Bel Fuse did not oppose the addition of the claim on futility grounds. *See Foman v. Davis*, 371 U.S. 178, 182 (1962)(futility of amendment is a basis for denying a motion to amend). But Murata's Second Amended Complaint clearly alleges that Bel Fuse infringed – and continues to infringe – the '641 patent by inducing others to infringe. This is a sufficient statement of its claim. As Judge Easterbrook recently reminded both bench and bar:

> It is enough to name the plaintiff and the defendant, state the nature of the grievance, and
> give a few tidbits (such as the date) that will let the defendant investigate. A full narrative
> is unnecessary. Details come later, usually after discovery.....

*Kolupa v. Roselle Park Dist.*, 2006 WL 306955, *1 (7th Cir. Feb. 10, 2006)(citations omitted). Patent infringement cases are governed by the same liberal, notice pleading standard. *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed.Cir. 2000).

[14] Notably, Watson Industries later sought worldwide sales information on the basis of its relevance to commercial success and non-obviousness. Over Murata's objections – including, that the relevance of the "information was marginal" – the magistrate judge granted Watson Industries' motion to compel. *Watson*

(continued...)

## CONCLUSION

For the foregoing reasons, the plaintiff's Fifth Motion to Compel [#19A] is GRANTED.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 3|14|06

---

[14](...continued)

*Industries, Inc. v. Murata Manufacturing Co.,Ltd., et al.,* No. 02-C-524C, 2003 WL 23162874 (W.D. Wis. July 21, 2003). Although Murata arguably took a position inconsistent with that it now espouses – that foreign sales are relevant to commercial success – it was unsuccessful, thereby precluding application of the doctrine.