# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| MURATA MANUFACTURING CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 2934 |
| | ) | |
| vs. | ) | Judge Joan B. Gottschall |
| | ) | |
| BEL FUSE, INC., *et al.*, | ) | |
| | ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

### I.
### BACKGROUND

This is a patent infringement case. The patent-in-suit, Murata's '641 patent, is directed to a modular jack of the kind used in computers and similar electronic devices. The jack has an integrated noise suppression feature designed to reduce the adverse effects of an extraneous electromagnetic field or signal. Murata alleges that Bel Fuse: (1) is making, using, selling, importing and/or offering for sale infringing modular jacks in the United States in violation of 35 U.S.C. § 271(a); and (2) has induced and continues to induce infringement by others in violation of 35 U.S.C. § 271(b). (*Second Amended Complaint*, ¶¶ 10, 11). The parties have had a number of time-consuming and, one would assume, costly discovery squabbles, one of which precipitated the protective order Murata now seeks to have vacated. That order, which Magistrate Judge Brown entered on May 25, 2005, precludes Murata from contacting any of Bel Fuse's customers to discuss this lawsuit, seek information regarding this lawsuit, or take discovery. Murata now argues that circumstances have changed to an extent that warrants the protective order being vacated.

**A.**
**The May 25, 2005 Protective Order**

On January 9, 2004, Murata filed its "Second Motion to Compel: Financial Information" which sought, among other things, the names of Bel Fuse's customers. Murata argued that, because one of Bel Fuse's defenses was obviousness, evidence of commercial success was relevant. Bel Fuse's customers, Murata explained, might have information about the reasons for commercial success, such as the invention's advantages over the prior art. Bel Fuse opposed Murata's motion, and asked the court to issue a protective order to protect the identity of its customers and prevent Murata from contacting them.

On January 28, 2004, Magistrate Judge Brown granted in part, and denied in part, Murata's Second Motion to Compel. In so doing, she denied that portion of Murata's motion relating to customer identity. She also entered and continued Bel Fuse's motion for protective order and ordered briefing on that matter. She indicated that Murata was free to file a renewed motion with supporting authority for the right to obtain discovery from customers in order to show commercial success.

Murata filed its "Renewed Motion to Compel Bel Fuse Inc. to Produce Documents Identifying Customers" on February 11, 2004, and Bel Fuse filed its "Motion for Protective Order" on February 26, 2004. The parties briefed both matters, and appeared before Magistrate Judge Brown on March 24, 2004. She indicated that they had failed to address several concerns she had, and she ordered them to file supplemental memoranda on their dispute. When the parties complied and returned on April 29th, Magistrate Judge Brown granted Bel Fuse's motion for a protective order, and denied Murata's motion to compel. She explained that:

> while it is possible that, at a later stage of this litigation Murata may be able to show a
> reason for being permitted some inquiry among Bel Fuse's customer [sic], no need has

2

been shown on the present state of the record

\* \* \*

However, if at a later time in the litigation it becomes apparent that fairness dictates that Murata should be allowed to contact Bel Fuse's customer [sic], the issue can be revisited then.

(*Murata's Brief in Support of Motion to Vacate*, Ex. 10 (April 29, 2004 Transcript)).

Magistrate Judge Brown's May 25, 2004 Memorandum Opinion and Order stated that "the only remaining purpose for which Murata seeks the identity of Bel Fuse's customers is to respond to the obviousness defense." (*Murata's Brief in Support of Motion to Vacate*, Ex. 1, at 3 n.1). While acknowledging that Murata had cited cases in which commercial success was established by sales and market share information of an alleged infringer, and cases in which commercial success was established by customer testimony, Magistrate Judge Brown pointed out that Murata had not cited "any cases in which the *customers of the alleged infringer* provided the testimony, or where the alleged infringer, as opposed to the patent owner, was required to turn over the a names of its customers to assist the patent owner in proving commercial success." (Id., at 9). The court, itself, found no such authority and thus entered an order forbidding Murata to contact any customers of Bel Fuse "for the purpose of discussing this lawsuit, seeking information relating to the issues in this lawsuit or taking discovery in this lawsuit until further order of the court." (*Id.* at 12). According to the court, "it [was] conceivable that at a later stage of this litigation Murata may be able to show a valid reason for being permitted some limited discovery from Bel Fuse's customers . . . ." (Id., at 13). But, at that point, Murata had shown "no need" and the court felt that "the risk of injury to Bel Fuse [was] demonstrated and potentially irreparable." (*Id.* at 13).

Bel Fuse indicated that it had no objection to disclosing the identities of its customers under the terms of the "attorney's-eyes-only" confidentiality order that was entered in this case on August 25, 2003.

3

(*Id.,* at 5 n.3). Its real concern, then, is contact between Murata and its customers.

## B.
## Events Following The Entry Of The Protective Order

Now, Murata argues that later stage of the litigation has arrived, and it seeks to vacate the protective order, arguing that circumstances have changed and fairness does, in fact, dictate that it should be allowed to have discovery of Bel Fuse's customers. On October 19, 2004, Murata moved to file a Second Amended Complaint which would add a claim for inducement of infringement against Bel Fuse. Bel Fuse chose not to oppose the motion, and it was granted on November 4, 2004. The new claim alleged that:

> Bel Fuse Inc., Bel Fuse Ltd., Bel Stewart Ltd., and Bel Connector Inc. have infringed and continue to infringe the '641 Patent under 35 U.S.C. § 271 by inducing others to infringe the '641 Patent.

(*Second Amended Complaint,* ¶ 11).

Murata contends that the protective order prevents it from taking discovery on this new claim. In fact, during a 30(b)(6) deposition of Bel Fuse, Bel Fuse's counsel instructed the witness not to answer questions about its customer, Microsoft, citing the protective order. Bel Fuse also claimed not to know what percentage of its product sold outside the United States is ultimately incorporated into end-products sold imported and sold in the United States. And, Bel Fuse has served subpoenas on certain of Murata's licensees, which Murata argues is hardly fair given the protective order's prohibition against Murata doing the same. Finally, Murata claims that Bel Fuse has threatened it with a motion for summary judgment against its inducement claim, and argues that it cannot defend against such a motion without the discovery the protective order prevents. For all these reasons, Murata asks that the protective order be vacated.

4

There is a superficial allure to the presentation, but not for Bel Fuse, which argues that the mere addition of what it denominates a "boilerplate" inducement of infringement allegation does nothing to change the circumstances that gave rise to the protective order. It also argues that, as a result of the position Murata took in previous patent litigation, it is judicially estopped from maintaining that the information it seeks as relevant. In addition, Bel Fuse submits that the risk of injury to its business outweighs Murata's need to contact Bel Fuse's customers. It contends that the protective order should not be lifted because Murata cannot succeed on its inducement claim. Finally, Bel Fuse maintains that neither the fact that it has subpoenaed certain of Murata's licensees nor the possibility that it may bring a summary judgment motion are sufficient reason to vacate the protective order.

## II.
## ANALYSIS

### A.
### Prerequisites To Vacating A Protective Order

The starting point of analysis is the extant protective order. Under Federal Rule of Civil Procedure 26(c), the court can enter a protective orders "for good cause shown" to protect "a party or person from annoyance, embarrassment, oppression or undue burden or expense." That Magistrate Judge Brown entered the order presumes that Bel Fuse demonstrated that there was good cause to protect it from discovery. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). In fact, Bel Fuse showed that if Murata were allowed to contact its customers there was a significant risk that its business relationships would be disrupted. (*Murata's Brief in Support of Motion to Vacate*, Ex. 1, at 12). Bel Fuse cited several cases where courts – whether by denying a motion to compel or issuing a

5

protective order – precluded a party from contact with its opponent's customers.[1]  Murata, however, was unable to cite a single case in which the customers of an alleged infringer provided discovery, or where the alleged infringer – as opposed to the patent owner – was required to turn over the names of its customers to assist the patent owner in proving commercial success.  (*Murata's Brief in Support of Motion to Vacate*, Ex. 1, at 9).

While neither party addresses the question – the more regrettable failure being Murata's since it hopes to have the order lifted – the threshold question involves the prerequisites to modifying or vacating a protective order.[2]  It should be no surprise that, there having been good cause to enter the protective order in the first place, there must be good cause shown before it can be vacated.  *Bayer AG and Miles, Inc. v. Barr Laboratories, Inc.* 162 F.R.D. 456, 460 (S.D.N.Y.1995); *Lee Shuknecht & Sons, Inc. v. P. Vigneri & Sons, Inc.*, 927 F.Supp. 610, 614 (W.D.N.Y. 1996); *Alexander et al. v. Federal Bureau of Investigation*, 186 F.R.D. 99, 100 (D.D.C.1998).  And it is the burden of the party seeking to vacate

---

[1] *See Joy Technologies, Inc. v. Flakt, Inc.*, 772 F.Supp. 842, 849 (D.Del.1991)(court in patent infringement suit granted protective order precluding plaintiff from seeking discovery from defendant's customers where parties were "fierce competitors" and plaintiff had not demonstrated it could not obtain same information from defendant itself); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington*, 103 F.R.D. 52, 57 (D.D.C. 1984)(denying defendant's request for names of customers, but allowing discovery of sales information as relevant to commercial success); *Volkswagenwerk Aktiengesellsschaft v. Westburg*, 260 F.Supp. 636, 637 (E.D.Pa.1966)(granting a protective order precluding plaintiff from initiating contact with defendant's customers  regarding subject matter of litigation or dealings with defendant in trademark infringement case); *May Coating Tech., Inc. v. Illinois Tool Works*, 157 F.R.D. 55, 57 (D.Minn.1994) (ordering patent holder to refrain from directly contacting alleged infringer's customers for any purpose relating to litigation).

[2] Certain of Bel Fuse's contentions – that Murata's inducement claim consists of inadequately pled "boilerplate" allegations, that the claim cannot succeed, and that judicial estoppel precludes Murata from arguing that it must be allowed to take discovery from Bel Fuse's customers – were addressed at length and rejected in the ruling on Murata's Fifth Motion to Compel and need not be revisited here. (*Memorandum Opinion and Order*, March 14, 2006 at 17-22).

or modify the protective order – here, Murata – to demonstrate good cause. *Bayer*, 162 F.R.D. at 464; *Shuknecht & Sons*, 927 F.Supp. at 614; *Alexander*, 186 F.R.D. at 100; *Cordis Corp. v. SciMed Life Systems, Inc.*, 177 F.R.D. 651, 654 (D.Minn. 1997).

In *Bayer*, the court developed a standard – followed by several courts – under which four factors are considered: (1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification. *Id.* at 462-63. Murata has ignored these factors in its briefing.

## B.

### 1.
### Nature Of The Protective Order

In determining whether to vacate a protective order, courts consider the nature of the order – "that is, its scope and whether it was court imposed or stipulated to by the parties." *Bayer*, 162 F.R.D. at 465; *Shuknecht & Sons*, 927 F.Supp. at 615. Courts have identified three categories of orders in terms of scope. The broadest is the "umbrella" protective order, which generally designates that all discovery is protected, without any review or determination of good cause. It is also the most susceptible to modification, and presents an exception to the requirement that good cause for modification or vacation be shown. Instead, courts often require that the party resisting modification show good cause for the protection to be maintained. *Bayer*, 162 F.R.D. at 465.

Next in this hierarchy is the "blanket" protective order, which permits the parties to protect selected documents that they believe in good faith contain trade secrets and other confidential commercial

information. Such orders are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors. They are more difficult to modify or vacate when the parties have stipulated to them. *Bayer*, 162 F.R.D. at 465-66.

The final type of protective order is one that covers a specific kind of identified information. These orders are the most narrowly tailored, are generally the clear product of "good cause," and so are more difficult to modify or vacate. *Bayer*, 162 F.R.D. at 465. This is the type of order at issue here. It is narrowly defined to preclude only contact with Bel Fuse's customers, and was the product of a briefing and an oral argument that established good cause for its issuance. This factor, then, weighs against Murata's motion to vacate.

## 2.
## Foreseeability

The "foreseeability" factor is not particularly pertinent here. It has been defined as asking "whether the need for modification of the order was foreseeable at the time the parties negotiated the original stipulated protective order." *Bayer*, 162 F.R.D. at 466. "Not surprisingly, a party's oversight in not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for relief from the protective order." *Jochims v. Isuzu Motors Ltd.,* 145 F.R.D. 499, 502 (S.D.Iowa 1992). As the terms here were not negotiated, an inquiry into the foreseeability of Murata's desire to contact Bel Fuse's customers to support an additional claim is not informative, and this factor weighs neither for nor against vacating the protective order.

### 3.
### Reliance

Reliance in this context is defined as "the extent to which a party resisting modification relied on the protective order in affording access to discovered materials." *Bayer*, 162 F.R.D. at 467. This factor is not exactly a relevant consideration here, but is more applicable in situations where the protective order shrouds the discovery process from the public.[3] But it is worth noting that the protective order has been in effect for nearly two years. Certainly it can be said that Bel Fuse has come to rely on it; it is part of the landscape of this case. Even when Murata added its inducement claim – the main reason it cites for vacation of the order now – there was nothing to suggest that the order would be the target of a motion to vacate. Significantly, that was over a year before Murata filed this motion. If the very event Murata claims requires the lifting of the protective order did not trigger a motion to vacate with any alacrity whatsoever, the reliance factor can arguably be said to way against vacating the protective order now.

### 4.
### Good Cause

Murata's argument in support of good cause to vacate the protective order – although not couched in those terms – is threefold: (1) it has added an inducement of infringement claim; (2) Bel Fuse has served subpoenas on Murata's customers; and (3) Bel Fuse has threatened to move for summary judgment on Murata's inducement claim. "Good cause" in this context implies changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw a

---

[3] Such protective orders – confidentiality orders, really – fall into yet another category. They involve additional concerns, such as First Amendment issues and the public's legitimate interest in legal proceedings, which are not implicated here. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999).

protective order. *Bayer,* 162 F.R.D. at 464; *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America,* No. 99-3298, 2004 WL 2009414, *2 (D.D.C. May 17, 2004). In considering whether the party seeking to vacate the protective order has established good cause, the court must weigh that party's need for modification against the other party's need for protection, and ought to factor in the availability of alternatives to better achieve both sides' goals. *Bayer,* 162 F.R.D. at 464; *Viskase Corp. v. W.R.Grace & Co.,* 90-7515, 1992 WL 13679, *5 (N.D.Ill. Jan. 23, 1992).

Murata's contentions regarding Bel Fuse's subpoenas to its licensees and the threat of a summary judgment motion may be readily dismissed. The addition of the inducement of infringement claim requires more discussion.

**a.**
**The Threat Of Summary Judgment Is Not Good Cause For Vacating The Protective Order**

Murata contends that Bel Fuse is unfairly employing the protective order as a weapon by threatening to file a motion for summary judgment on Murata's inducement claim while Murata is precluded from taking discovery. The filing of a summary judgment motion, however, is not contingent on a party's ability or inability to take discovery. Under Fed.R.Civ.P. 56(b), a defending party may seek summary judgment at any time, even in the absence of discovery. *South Austin Coalition Community Council v. SBC Communications Inc.,* 274 F.3d 1168, 1171 (7th Cir. 2001); *Jacobs v. City of Chicago,* 215 F.3d 758, 775 (7th Cir. 2000)(Easterbrook, J, concurring)("District judges . . . believe that they must allow discovery before ruling on motions for summary judgment, but this is incorrect."). But that does mean that Murata is in fact at an actual disadvantage.

First, since it impossible to forecast events still in the womb of time, it is uncertain whether such a

motion will ever be filed. Questionable discovery ought not be allowed upon speculative guesses about events that are uncertain and contingent and that may not occur as anticipated, or indeed, may not occur at all. Viewed from a different perspective, Bel Fuse's concerns about a possible summary judgment motion are not sufficiently ripe that they should be the determinant of the decision in this case. *Compare Lincoln House Inc. v. Dupre*, 903 F.2d 845 (1st Cir. 1990). Second, if Bel Fuse files a motion for summary judgment, Judge Gottschall will have ample discretion to allow additional discovery to explore "facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f); *Crawford-El v. Britton*, 523 U.S. 574, 600 n.20 (1998).[4] Thus, a party opposing summary judgment can make "no serious claim . . . that [it] was in any sense "railroaded" by a premature motion for summary judgment. Any potential problem can be adequately dealt with under Rule 56(f). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144-45 (Fed. Cir. 1996).

Accordingly, the "threatened" motion for summary judgment is not a change in circumstances that constitutes good cause for vacating the protective order. Indeed it is not a change at all. However, if such a motion were actually filed, it could well tip the balance in favor of lifting the order. *See Corley v. Rosewood Care Center, Inc.*, 142 F.3d 1041, 1055 (7th Cir 1998)(district court's entry of summary judgment for defendant reversed, and court directed to vacate protective order that had restricted plaintiff's ability to gather discovery); Rule 56(f). But that is a circumstance that need not be considered now.

---

[4] Rule 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**b.**

**Bel Fuse's Subpoenas To Murata's Licensees And Potential Licensees Are Not
Good Cause For Vacating The Protective Order**

On September 28 and September 30, 2005, Bel Fuse issued subpoenas to two of Murata's

current licensees – Samtec and Foxconn – and three potential licensees – Molex, Pulse, and Kycon. Bel

Fuse explains that it was its understanding that Murata intended to use evidence of licensing negotiation

and license agreements to support its nonobviousness defense as well as its claim for damages, insofar as

negotiations and agreements might bear on the calculation of a reasonable royalty. The subpoenas sought

information relating to, among other things, discussions with Murata, the patent-in-suit, and any agreements

reached with Murata. Murata argues that it is patently unfair that Bel Fuse is allowed to contact Murata's

customers while Murata cannot do the same. But Murata offers no explanation of how the two

circumstances are similar in any way that is significant to the issues at hand.

Two distinctions between Bel Fuse's situation and that of Murata are immediately apparent. Murata

never objected to the subpoenas – until now – or moved for a protective order seeking to prevent Bel Fuse

from taking the discovery. But those distinctions are merely superficial. More importantly, Bel Fuse has

explained – at length – how Murata contacting its customers and seeking discovery on inducement of patent

infringement regarding the very device that Bel Fuse supplies those customers with might damage its

business relationships. There is a "legitimate concern" about Bel Fuse's customers being contacted by the

owner of a patent and told that the products it is purchasing from a supplier infringe the patent. (*Murata's

Brief in Support of Motion to Vacate*, Ex. 1, at 11). It is easy to see that customers might turn elsewhere

for their needs. Murata has not offered such an explanation of how Bel Fuse's subpoenas could cause

similar damage.

While it would appear that certain of the five companies that discussed licensing the patent-in-suit with Murata might also be Murata's customers as well as its licensees (*Murata's Brief in Support of Motion to Vacate*; at 11-12; Second Decl. of Satoshi Tahara, ¶ 11), the products they might purchase as "customers" do not include devices covered by the patent-in-suit. The five companies arguably *manufacture* such devices, but they do not purchase them from Murata. (Second Decl. of Satoshi Tahara, ¶ 11; Exs. A-J). Bel Fuse's inquiry into the licensing negotiations and/or agreements regarding the patent-in-suit then, would have nothing to do with whatever customer relationship Murata might have with those companies. There is nothing to suggest that these companies would abandon Murata as a source of whatever products they purchase from it. Bel Fuse's request from these five companies for discovery relating to licensing discussions with Murata is not tantamount to an accusation that these companies are infringing any patents. There is a significant distinction – for these purposes, at least – between a "customer relationship" and a "licensee relationship."

At bottom, a customer of Murata – the purchaser of its products – stands in a different relationship to Murata than a licensee. It is unlikely that a customer has been gained through hostility – however subtle – but the same cannot always be said of a patent licensee relationship. A patent license might be the product of a threat, however subtle, of a patent infringement suit. This is sufficiently common that an entire area of case law has developed around the question of whether the language in letters offering licenses to putative patent infringers evinces an "actual controversy" for the purposes of the Declaratory Judgment Act. *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 811 (Fed.Cir. 1996)("To put a putative infringer in reasonable apprehension of suit does not require an express charge of infringement and threat of suit; rather, such apprehension may be induced by subtler conduct if that conduct rises 'to a level sufficient to

13

indicate an intent [on the part of the patentee] to enforce its patent,' i.e., to initiate an infringement action.")

*Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885, 888 (Fed.Cir. 1992)("Whether an actual controversy exists depends on either an express charge of infringement or, if none, the totality of the circumstances. A reasonable apprehension of an intent to initiate an infringement suit may be found from statements made."). In this context, it is worth noting that Murata's letters offering licenses to Molex, Pulse, and Kycon, informed those companies of the '641 patent, indicated it was valuable intellectual property, noted that the companies were manufacturing items that appeared to be covered by the patent, and that the offer for a license would remain open only for a limited time. (Decl. of Satoshi Tahara, Exs. A-C). Such communications ordinarily do not precede *customer* relationships. And, while, as Murata argues, Samtec and Foxconn may have approached Murata for a license (*Murata's Brief in Support of Motion to Vacate*; at 10-11), the mere fact that the potential infringer approaches the patentee does not necessarily mean that an actual controversy cannot arise. *Shell Oil*, 970 F.2d at 889. It is a sufficiently significant distinction – and one ignored by Murata – that Bel Fuse's subpoenas do not constitute good cause for vacating the protective order.

### c.
### The Addition Of The Inducement Of Infringement Claim Is Not Good Cause To Vacate The Protective Order: Alternatives Are Available

The central question presented is whether the addition of a claim of inducement of infringement constitutes good cause to vacate the protective order. Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."[5] Murata's theory here is that Bel Fuse sells

---

[5] A defendant can be liable for inducement of infringement for foreign activities that result in infringement in the United States. For example, in *MEMC Electronic Materials, Inc. v. Mitsubishi*
(continued...)

its foreign customers modular jacks covered by the '641 patent outside the United States, and those customers then incorporate the jacks into assembled products and sell those products in the United States. As Murata argues, any number of activities have been considered to be evidence of inducing infringement, including providing technical support, adjusting manufacturing to address customer concerns, on providing instruction on the product. *MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1379 (Fed.Cir. 2005). According to Murata, Bel Fuse's customers would have knowledge of whether Bel Fuse has engaged in such activities. There is no dispute that such discovery would be relevant. In addition, Murata argues that only those customers can supply "one crucial piece of evidence": the percentage of assembled product the customers ultimately import into the United States.

i.
## Murata Has Not Demonstrated Changed Circumstances That Amount To Good Cause To Vacate The Protective Order

In the hopes of vacating the protective order, Murata trumpets the change in circumstances brought about by the addition of its inducement claim. But its argument rings hollow in at least two ways. First, certain significant circumstances have not changed. Bel Fuse's argument for protection is as valid as it was when it was found to constitute good cause for the protective order in the first place. And, Murata still has been unable to supply case law to support its position that it is entitled to take discovery from Bel Fuse's

---

[5](...continued)
*Materials Silicon Corp.*, 420 F.3d 1369 (Fed.Cir. 2005), there was a genuine issue of fact as to whether a Japanese manufacturer was liable for inducement where it sold accused product to its Japanese subsidiary which in turn sold it to its American subsidiary. There was evidence that the manufacturer provided technical support to its American subsidiary, addressed technical problems that arose, and sent personnel to make presentations on the product. The court found such conduct could constitute active steps taken to encourage direct infringement. 420 F.3d at 1379; *see also Crystal Semiconductor v. Tritech Microelectronics*, 246 F.3d 1336, 1344, 1351, 1361 (Fed.Cir. 2001)(manufacturer, which did not sell infringing goods in the United States, actively induced infringement by selling goods to a company that in turn sold them on the United States market).

customers. In its opening brief, it does not bother. (*Murata's Brief in Support of Motion to Vacate*, at

7-10). In its reply brief, it makes the startling claim – belied by its opening brief, the protective order, and

the briefs it filed in connection with that proceeding – that it has cited such case law all along. Of course,

it did no such thing, and saying it did does not change the reality of what occurred.

In fact, Murata's reply brief is its first attempt to cite relevant cases. *Insituform Technologies,*

*Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1379 (Fed.Cir. 2004) and *Rexnord, Inc. v. Laitrim*

*Corp.*, 6 U.S.P.Q.2d 1817 (E.D.Wis. 1988) are cases in which, according to Murata, the court allowed

discovery from a patent infringer's customers: a questionnaire in *Instituform*, and the testimony of a vice-

president of engineering in *Rexnord.* (Murata's Reply Brief at 12). But the issue was not joined in either

case, and so the cases have little value in this discussion, for prior cases have precedential value only when

there has been a deliberative consideration of the issue at hand; *sub-silentio* or assumptive resolution is not

enough. *See United States v. More*, 7 U.S. 159 (1805), *City of Kenosha v. Bruno*, 412 U.S. 507,

512-13 (1973); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 & n. 9 (1952); *Lopez*

*v. Monterey County*, 525 U.S. 266, 281 (1999); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085,

1090 (3d Cir. 1976)("The challenged raised in this appeal was not presented to the court in those cases.

Thus, it cannot be said that we have considered, adjudicated and set forth a holding regarding the duality

problem."); *United States v. Bohle*, 445 F.2d 54, 65 (7th Cir. 1971)("However, there was apparently

no challenge to the admission of this evidence...We think it clear that Becker was not intended to, and did

not, resolve the question of the admissibility of records of mental diagnoses. Thus, we must approach it

as an issue of first impression in this court."), *overruled on other grounds, United States v. Lawson*, 653

F.2d 299 (7th Cir. 1981).

In *Rexnord* – in which the accused infringer was the plaintiff (it brought a declaratory judgment action) – the vice-president of one of the plaintiff's customers testified at trial. There is no indication whose witness he was or whether discovery had even been opposed. 6 U.S.P.Q.2d at 1841. This is not surprising, as it would be a difficult argument to make: a company files suit, then resists discovery directed to its customers. *Insituform Technologies* is far less supportive of Murata's position. To be sure, questionnaires regarding inducement of infringement issues were sent to the accused infringer's licensees, but this discovery was pursuant to a stipulated agreement. 385 F.3d at 1379. Again, there was no protective order, and there was no opposition to discovery.

Second, Murata's own conduct undermines its position that the changes in circumstances are sufficiently significant to require vacating the protective order. In fact, Murata did not even find them consequential enough to merit prompt attention. Recall that Murata added its inducement claim November 5, 2004 – over a year before it filed this motion. The change in circumstances that Murata now deems so obviously necessitates lifting the protective order was not even sufficiently noticeable to precipitate a motion until *thirteen months* had passed. And Murata was aware that Bel Fuse would not be providing it with any of the so-called "crucial information" that it now seeks, as early as February of 2005. (*Murata's Brief in Support of Motion to Vacate*, at 5). That was *ten months* before Murata filed this motion. That is certainly not the manner in which one might be expected to pursue "crucial" information. Murata's conduct evinced no concern with the constraints of the protective order for about a year after these "significant changes" occurred. Such a period of inactivity indicates that the changes were simply not as significant as Murata now – belatedly – contends they were.

Murata submits that it has abided by the protective order and "relied on the fact that the Court

invited [it] to return when circumstances have changed such that discovery should be permitted." "That time," we are told, " has now come." (*Murata's Brief in Support of Motion to Vacate*, at 4). Actually, even if Murata's characterization of the importance of the changed circumstances were uncritically accepted, it would mean that the time has come and gone. "Good cause" implies changed circumstances or new situations; a continuing objection to the terms of an order does not constitute good cause to modify or withdraw the order. The purported changes in circumstances upon which it relies meant little to Murata. In fact, they are more akin to a mere continuing objection to the terms of an order – an insufficient reason to lift a protective order. *Bayer,* 162 F.R.D. at 464; *Pogue*, 2004 WL 2009414, *2. As such, Murata has failed to meet its burden of establishing that those changes are significant enough to constitute good cause to vacate the protective order.

**ii.**

### There Are Alternative Discovery Methods That Do Not Violate The Protective Order

Bel Fuse contends that discovery regarding nearly all of the acts Murata posits as evidence of inducement can be obtained as easily from Bel Fuse it as it can from Bel Fuse's customers. This is a valid point. Investigation into activities such as those discussed in *MEMC Electronics* as indicative of inducement of infringement can be conducted without contacting Bel Fuse's customers. Without admitting that it has engaged in any such activities, Bel Fuse indicates that it will cooperate as a source for discovery regarding whether it trained its customers in an infringing use, advertised an infringing use, provided detailed test data, provided substantial technical support, worked to coordinate shipping dates, made adjustments in the manufacturing process to address customer problems, made on-site visits, or provided instruction can certainly be conducted without contacting Bel Fuse's customers. (*Bel Fuse's Brief in Opposition to*

18

*Murata's Motion*, at 7). This represents the vast majority of discovery Murata claims the protective order is precluding. Because the protective order prohibits contact with Bel Fuse's customers, as opposed to inquiry into certain topics, there is no prohibition against Murata exploring the topics it deems necessary to its inducement claim from any source other than Bel Fuse's customers, including Bel Fuse itself.

Murata does not dispute that such a course is available, but submits that Bel Fuse has been obstructive in discovery thus far. It goes so far as to suggest that Bel Fuse has engaged in spoliation of certain evidence, but stops short, saying it will address this point at the appropriate time. (*Murata's Reply Brief in Support of Motion to Vacate*, at 13). So the case is at a point where civility is perhaps gone, but misconduct is not proven. Be that as it may, Bel Fuse will be taken – and held – to its word. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 361 (N.D.Ill. 2005)(discussing significance of attorney's promise to entertain certain discovery requests); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 341 (N.D.Ill. 2005)(representation that there would be prompt compliance with discovery if motion to dismiss were denied was an enforceable promise).

"[H]onesty and integrity are deemed important traits in the practice of law...." *Hirschberg v. CFTC*, 414 F.3d 679, 683 (7th Cir. 2005). Thus, Bell Fuse will be held to its promise that it is an available source for nearly all of the discovery Murata claims to require regarding inducement. If it turns out that Bel Fuse, as Murata fears, becomes recalcitrant or evasive, considerations of fairness and necessity may well shape the contours of the solution to the problem differently than they are presently configured. for the one consideration that now weighs against vacating the protective order will have vanished. *Bayer*, 162 F.R.D. at 464; *Viskase*, 1992 WL 13679, *5. Considerations of necessity may well shape the contours of the solution to the problem differently than they are presently configured. And recalcitrants or evasion of the

representations now being made by Bel Fuse could well have costly consequences. *See* Rule 37, Federal Rules of Civil Procedure.

Discovery regarding the percentage of product Bel Fuse sells outside the United States that is ultimately incorporated into products imported into and sold in the United States is another matter. Thus far, when prompted by Murata, Bel Fuse has indicated that it is unable to provide such information. (*Murata's Brief in Support of Motion to Vacate*, at 5; Ex. 14 (Ackerman Dep. at 138-39); Ex. 15 (Letter of Marvin Raskin, at 2)). Murata served Bel Fuse with a Rule 30(b)(6) deposition notice on February 10, 2005, that listed as a topic, "[t]he volume of ICM products, whether incorporated into finished products or not, imported by parties other than Bel Fuse into the United States." (*Murata's Brief in Support of Motion to Vacate*; Ex. 16). Bel Fuse responded by explaining that "the subject matter is not known to Bel Fuse and preparing a designated witness to testify on the subject matter would require Bel Fuse to gather information from multiple third parties and other sources which would constitute an undue burden." (*Murata's Brief in Support of Motion to Vacate*; Ex. 15, at 2). So the information is available to Bel Fuse, which means it is available to Murata short of contact with Bel Fuse's customers. As with the previously discussed categories of information, Bel Fuse will have to be the source of the percentages of product sold in the United States.

Again, the protective order does not protect certain information, it only forecloses certain avenues to obtaining that information. It was not grounded on undue burden to Bel Fuse, it was grounded on the acceptance of Bel Fuse's position that its customer relationships would be disrupted if Murata were allowed to contact those customers. In securing the protective order, Bel Fuse argued that Murata could not show that the information it sought was not available from alternate sources. (*Motion for Protective*

20

*Order*, at 11-12). Bel Fuse's providing Murata with the information at issue would not run afoul of the protective order – which Murata has failed to demonstrate good cause for vacating. This stands as the only alternative to achieve both sides' goals, which is a salient consideration when assessing a motion to vacate a protective order. *Bayer*, 162 F.R.D. at 464; *Viskase Corp.*1992 WL 13679, *5. The parties are directed to proceed accordingly.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to vacate the protective [# 201] order is DENIED. The parties are to proceed with the alternative methods of discovery as directed in this order.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 3|15|06

21