UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURATA MANUFACTURING CO., LTD.<br><br>               Plaintiff,<br>   v.<br>BEL FUSE INC.,<br>BEL FUSE LTD.,<br>BEL STEWART LTD., and<br>BEL CONNECTOR INC.<br>d/b/a STEWART CONNECTOR<br>and BEL STEWART<br><br>               Defendants. | No. 03 C 2934<br><br>Hon. Joan B. Gottschall<br><br>Hon. Jeffrey Cole, Mag.J. |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL MURATA TO PRODUCE YUKIO SAKAMOTO FOR DEPOSITION IN RESPONSE TO BEL FUSE'S RULE 30(b)(1) NOTICE**

David J. Sheikh
**NIRO, SCAVONE, HALLER & NIRO**
181 West Madison Street, Suite 4600
Chicago, IL 60602-4515
Phone: (312) 236-0733
Fax: (312) 236-3137

Martin G. Raskin
Joshua L. Raskin
**WOLF, BLOCK, SCHORR &
SOLIS-COHEN LLP**
250 Park Avenue
New York, NY 100177
Phone: (212) 986-1116
Fax: (212) 986-0604
**Attorneys for Defendants**

March 1, 2007

**Table of Contents**

**Page**

I. PRELIMINARY STATEMENT ..................................................................................1

II. FACTUAL BACKGROUND......................................................................................2

III. ARGUMENT................................................................................................................3

    A. Mr. Sakamoto is a Managing Agent of Murata and is
Therefore Subject to Notice Pursuant to Rule 30(b)(1)...........................................3

    B. Murata Has Contractual Control Over Mr. Sakamoto............................................6

IV. LOCAL RULE 37.2 STATEMENT..........................................................................10

V. CONCLUSION...........................................................................................................10

## Table of Authorities

**Cases**                                                                                       **Page**

Alcan Int'l Ltd. v. S.A. Day Mfg. Co.,
    176 F.R.D. 75 (W.D.N.Y. 1996) .......................................................................... 5

AM Int'l v. Graphic Management Assocs.,
    44 F.3d 572 (7th Cir. 1995) ............................................................................... 8

Dubai Islamic Bank v. Citibank,
    2002 U.S. Dist. LEXIS 9794 (S.D.N.Y. May 31, 2002) ................................... 4

In re Meta Systems,
    1997 U.S. App. LEXIS 7683 (Fed. Cir. March 20, 1997) ................................ 4

In re Nifedipine Capsule Patent Litig.,
    1989 U.S. Dist. LEXIS 11061 (S.D.N.Y. Sept. 20, 1989) ............................ 6, 7

Independent Prods. Corp. v. Loew's, Inc.,
    24 F.R.D. 19 (S.D.N.Y. 1959) ........................................................................... 5

Litetronics International, Inc. v. Technical Consumer Products, Inc.,
    2006 U.S. Dist. LEXIS 76224 (N.D. Ill. Sept. 28. 2006) ................................. 8

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
    2006 U.S. Dist. LEXIS 87096 (S.D.N.Y. Nov. 30, 2006) ................................ 4

Medpointe Healthcare, Inc. v. Apotex, Inc.,
    2007 WL 211202 (D. Del. Jan. 26, 2007) ......................................................... 9

Mineba Co., Ltd. v. Papst,
    70 F. Supp. 2d 302 (D. D.C. 2005) ............................................................... 7, 8

Yaskawa Electric Corp. v. Kollmorgen Corp.,
    201 F.R.D. 443 (N.D. Ill. 2001) ........................................................................ 9

**Statutes**

Federal Rule of Civil Procedure 30(b)(1) ............................................................. 1, 2, 3

Defendants Bel Fuse Inc., Bel Fuse Ltd., Bel Stewart Ltd. and Bel Connector Inc. (collectively, "Bel Fuse") submit this memorandum in support of their motion for an order compelling plaintiff Murata Manufacturing Co., Ltd. ("Murata") to produce Mr. Yukio Sakamoto for a deposition in response to Bel Fuse's notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(1).

## I. PRELIMINARY STATEMENT

Murata alleges that Bel Fuse infringes its U.S. Patent No. 5,069,641 (the "patent-in-suit") (Exh. 1) and Bel Fuse responds that the patent-in-suit is not infringed, is invalid and is unenforceable due to inequitable conduct during its prosecution. The basis for Bel Fuse's inequitable conduct claim is that, in violation of their duty of disclosure, the inventors of the patent-in-suit, their attorneys and/or other individuals at Murata substantively involved in the prosecution of the patent-in-suit intentionally withheld a prior art patent, *viz.*, U.S. Patent No. 4,789,847 ("the '847 patent") (Exh. 2), which was material to the examination of the patent-in-suit, from the PTO during the prosecution of the patent-in-suit with an intent to deceive.

Mr. Sakamoto is listed as an inventor on both the patent-in-suit and the '847 patent (see Exhs. 1 and 2), is a former Murata employee,[1] and was identified by Murata on its Rule 26(a) Initial Disclosures (and on its Supplemental Initial Disclosures) as an individual who "may have relevant information regarding the invention described and claimed in the [patent-in-suit]" (Exhs. 3 and 4). In addition, when he assigned the patent-in-suit to Murata, Mr. Sakamoto agreed to "take all lawful oaths" in "any proceeding" involving the patent-in-suit in "any

---

[1] Mr. Sakamoto was employed by Murata at the time the lawsuit was filed (see Exh. 3).

country" and "do all acts necessary … for the procurement, maintenance, enforcement and defense of [the patent-in-suit]" (Exh. 5).

During discovery, Bel Fuse noticed Mr. Sakamoto's deposition pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure. In response, Murata objected to producing Mr. Sakamoto on the grounds that he is no longer a Murata employee.

Bel Fuse's position is two-fold. First, notwithstanding that he is no longer employed by Murata, Mr. Sakamoto is a "managing agent" of Murata and is therefore subject to a notice of deposition under Rule 30(b)(1). As an inventor of both the patent-in-suit and the '847 patent and a former Murata employee, Mr. Sakamoto has unique knowledge of relevant matters relating to this litigation so that his testimony is logically relevant to its determination. In fact, Murata admitted this in its Rule 26(a)(1) Initial Disclosures (and its Supplemental Rule 26(a)(1) Initial Disclosures). In addition, Mr. Sakamoto's interests in the outcome of Bel Fuse's inequitable conduct claim are similar to those of Murata since Mr. Sakamoto himself is accused of violating his duty of candor before the PTO.

Second, the assignment agreement requires Mr. Sakamoto to, among other things, appear at a deposition in any proceeding involving the patent-in-suit in any country. Mr. Sakamoto is therefore required to give a deposition in this case in the United States. At the very least, the assignment confers on Murata the power to compel Mr. Sakamoto to appear for a deposition in this case in the United States.

## II. FACTUAL BACKGROUND

As discussed above, Mr. Sakamoto is an inventor of both the patent-in-suit and the '847 patent and was employed by Murata during the relevant time period and when this suit was filed. Further, Murata stated in its Rule 26(a)(1) Initial Disclosures (and its Supplemental Rule 26(a)(1)

2

Initial Disclosures) that Mr. Sakamoto "may have relevant information regarding the invention described and claimed in the patent-in-suit" (Exhs. 3 and 4).

On, January 23, 1991, Messrs. Sakamoto, Hori and Fukutani assigned the patent-in-suit to Murata. In doing so, Mr. Sakamoto agreed that he will, "whenever counsel of [Murata]…shall advise that <u>any proceeding</u> in connection with said invention [of the patent-in-suit]…or <u>any proceeding</u> in connection with [the patent-in-suit] for said invention <u>in any country</u> … is lawful and desirable, … sign all papers and documents, <u>take all lawful oaths</u>, and do <u>all acts necessary</u> or required to be done for the … maintenance, enforcement and defense of [the patent-in-suit] for said inventions, without charge to [Murata]" (Exh. 5) (emphasis added).

Three years ago, on January 23, 2004, and again on January 24, 2007, Bel Fuse noticed Mr. Sakamoto's deposition under Rule 30(b)(1) (Exhs. 6 and 7). In an email dated January 30, 2007, counsel for Murata stated that "[Mr. Sakamoto] retired . . . several years ago and does not have a continuing relationship with Murata or any related company. For at least that reason, he is not subject to deposition by a Rule(30)(b)(1) notice" (Exh. 8).

After Murata's initial objection to Bel Fuse's deposition notice, Bel Fuse attempted to contact Mr. Sakamoto and sought his voluntary appearance at a deposition in Japan or elsewhere. However, Mr. Sakamoto declined.

**III. ARGUMENT**

    **A. Mr. Sakamoto is a Managing Agent of Murata and is Therefore Subject to Notice Pursuant to Rule 30(b)(1)**

Murata is required to produce Mr. Sakamoto for a deposition pursuant to Bel Fuse's deposition notice because he is Murata's managing agent. Under Rule 30(b)(1) of the Federal Rules of Civil Procedure, an "officer, director or managing agent of a corporate party may be compelled to give testimony pursuant to a notice of deposition." <u>Dubai Islamic Bank v.</u>

3

Citibank, 2002 U.S. Dist. LEXIS 9794, **5-6 (S.D.N.Y. May 31, 2002). Determining "whether a person is a managing agent, and therefore subject to a notice of deposition, is answered pragmatically and on a fact-specific basis." Id. at *7 (internal citations omitted). "Close questions regarding the status of a proposed deponent as a managing agent are resolved in favor of the examining party." In re Meta Systems, 1997 U.S. App. LEXIS 7683, *8 (Fed. Cir. March 20, 1997) (citing Sugarhill Records, Ltd. v. Motown Record Corp., 105 F.RD. 166, 171 (S.D.N.Y. 1985)). See also Louis Vuitton Malletier v. Dooney & Bourke, Inc., 2006 U.S. Dist. LEXIS 87096, *53 (S.D.N.Y. Nov. 30, 2006) (compelling company to produce for deposition Italian resident whose status as managing agent was "a close call"). "As in all matters appertaining to discovery, it is the ends of justice that are to be served." Dubai, 2002 U.S. Dist. LEXIS at *7 (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Webster, 802 F.2d 1448, 1453 (D.C. Cir. 1986)).

The general rule that "a corporation cannot be required to produce a former officer or agent for a deposition … is not woodenly applied." Dubai Islamic Bank 2002 U.S. Dist. LEXIS at *9. Instead, courts "have adopted a 'practical' approach 'that focuses not only on the formal connection between the witness and the party at the time of the deposition, but also on their functional relationships.'" Id. (internal citations omitted).

> Courts have accorded managing agent status to individuals who no longer exercised authority over the actions in question (and even to individuals who no longer held any position of authority in a corporation), so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests.

Dubai, 2002 U.S. Dist. LEXIS at *11 (quoting Church of Scientology, 802 F.2d at 1456). See also In re Meta Systems, 1997 U.S. App. LEXIS at *8 (upholding order for defendant to produce for deposition former employee whose "interests were identical to the interests" of defendant).

4

In <u>Independent Prods. Corp. v. Loew's, Inc.</u>, 24 F.R.D. 19, 20-21 (S.D.N.Y. 1959), the Court determined that two former employees were subject to deposition notices. In reaching that determination, the Court explained that "[i]t cannot be denied that they stand ready to serve the plaintiff should the plaintiff require their talents…. It is inconceivable on the evidence presented that if a situation arose requiring action by [the former employees] in furtherance of plaintiff's interests, they would not gladly take such action." <u>Id</u>.

Further, courts have compelled a company to produce for a deposition a former employee with "unique knowledge of relevant matters." <u>Independent Prods.</u>, 24 F.R.D. at 26 (conferring managing agent status on former employees); <u>Alcan Int'l Ltd. v. S.A. Day Mfg. Co.</u>, 176 F.R.D. 75, 79 (W.D.N.Y. 1996) (granting defendant's motion to compel plaintiff to produce a retired employee, noting that "[the retired employee] ha[d] been specifically identified as [someone] with direct knowledge about . . . information relevant to the claims and counterclaims in [the] case and unavailable from any other source."). In <u>Alcan</u>, the court concluded that the defendant had "demonstrated that [the former employee], even though he is now retired … [could] be relied upon to give deposition testimony '*respecting the matters involved in the litigation.*'" <u>Id</u>. (quoting <u>Kolb v. A.H. Bull Steamship Co.</u>, 31 F.R.D. 252, 254 (E.D.N.Y. 1962)) (emphasis in original) (additional citations omitted).[2]

In the present case, Mr. Sakamoto, as an inventor of both the patent-in-suit and the '847 patent, has unique knowledge of information regarding the subject of the litigation. Mr. Sakamoto has unique knowledge about the development of the purported invention of the patent-in-suit, the

---

[2] The Court also found in <u>Alcan</u> that a former employee who was then currently employed by another company was "beyond [plaintiff's] control," and therefore could not be produced by plaintiff. 179 F.R.D. at 79. However, the Court's apparent reason was that he was employed by another company. In contrast, the former employee who the Court did require to appear for a deposition was, like Mr. Sakamoto, retired.

5

validity of the patent-in-suit and the decision not to disclose the '847 patent to the PTO during the prosecution of the patent-in-suit.[3] Further, although Mr. Sakamoto is no longer directly employed by Murata, his interests, as the inventor and assignor of the patent-in-suit, comport with Murata's interests as the patent holder. In fact, it is Mr. Sakamoto himself who is accused by Bel Fuse of violating his duty of disclosure by withholding the '847 patent with an intent to deceive. Moreover, as discussed more fully below, Mr. Sakamoto is contractually bound to "do all acts necessary or required to be done for the … maintenance, enforcement and defense of [the patent-in-suit]," including to "take all lawful oaths" in "any proceeding" in "any country."

### B. Murata Has Contractual Control Over Mr. Sakamoto

Murata claims that it does not have "the power to reach out and compel" Mr. Sakamoto to appear for a deposition (Exh. 9). That is not true.

The clear and unambiguous language of the Assignment Agreement discussed above requires Mr. Sakamoto to testify in any proceeding in any country in which the patent-in-suit is being enforced or defended. At the very least, the assignment confers on Murata the power to compel Mr. Sakamoto to testify at a deposition in this case in the United States.

The In re Nifedipine Capsule Patent Litig. case is instructive. In that case, the court in a patent infringement litigation ordered plaintiff, a German corporation, to make available for depositions the inventors of the patent at issue who were German citizens and former employees. 1989 U.S. Dist. LEXIS 11061, **2-4 (S.D.N.Y. Sept. 20, 1989). The court first noted that the testimony of the four inventors was "logically relevant to the determination" of the action." Id. at *2. Further, even though the four inventors were no longer employees, plaintiff retained control

---

[3] In addition, Mr. Sakamoto is an inventor of U.S. Patent 5,014,204 which forms part of the basis for Bel Fuse's invalidity counterclaim.

over them, and therefore could make them available for depositions, because the inventors entered an assignment agreement stating, "we hereby agree, whenever requested, to … testify in any legal proceedings." Id. at *3. Noting that plaintiff came to "a U.S. court, as a U.S. plaintiff, asserting a U.S. patent," the court found the contract required the inventors to testify in the American-style depositions. Id. ("in the interests of justice, [plaintiff] must proceed according to the Federal Rules of Civil Procedure"). See also Mineba Co., Ltd. v. Papst 70 F. Supp. 2d 302, 309 (D. D.C. 2005) (finding assignment clause "obligated [inventors] to provide testimony at the request of [defendant]").

In the present case, the assignment agreement entered into between Mr. Sakamoto and Murata requires Mr. Sakamoto to "do all acts necessary or required to be done for the … maintenance, enforcement and defense of [the patent-in-suit]," in "any proceeding" in "any country," including "take all lawful oaths." This unambiguous language requires Mr. Sakamoto, upon Murata's request or otherwise, to testify in any proceeding involving the patent-in-suit, including an American-style deposition.

Mr. Sakamoto's ability to testify about both the patent-in-suit and the '847 patent is "logically relevant to the determination" of this action. As discussed above, Mr. Sakamoto has first-hand knowledge about the purported inventions disclosed and claimed in each patent and the decision not to disclose the '847 patent to the PTO. Further, as in Nifedipine, Murata, a Japanese company, has come to a U.S. court as a U.S. plaintiff to assert its rights over its U.S. patent, and therefore must comply with the Federal Rules of Civil Procedure.

Murata attempts to avoid the plain meaning of the assignment agreement by arguing that (1) it is limited to proceedings before the patent office and does not cover litigation; and (2) it does not require Mr. Sakamoto to "testify."

7

With respect to Murata's first argument, the assignment is clear and unambiguous and therefore must be interpreted in accordance with its plain meaning -- which is not as narrow as Murata suggests. See AM Int'l v. Graphic Management Assocs., 44 F.3d 572, 578 (7th Cir. 1995) (Posner, J.) (applying plain meaning of unambiguous contract language when "interpreting the contract in accordance with its actual language does not produce absurd results"). The assignment expressly requires Mr. Sakamoto to "do all acts necessary," including "take all lawful oaths," in "any proceeding … in any country" (Exh 5) (emphasis added). That language clearly covers testimony in a U.S. litigation, especially one brought by Murata itself. As stated by the Court in Mineba: "the language of the assignment agreement is dispositive." 370 F. Supp. 2d at 309, n. 6.

Murata relies on Litetronics International, Inc. v. Technical Consumer Products, Inc., 2006 U.S. Dist. LEXIS 76224 (N.D. Ill. Sept. 28. 2006), to support its second argument. In Litetronics, the Court determined that an assignment agreement where the inventors agreed "generally to do everything possible to aide [plaintiff], their successors, assigns and nominees, at their request and expense, in obtaining and enforcing patents for said invention in all countries" did not give the plaintiff any "meaningful contractual control over the inventors." Id. at *4, 6. The court found that the inventors merely agreed to help plaintiff enforce its patent rights, and accordingly, declined to order a deposition of the inventors. Id. at *6.

Litetronics, however, is distinguishable from the facts of the present case for at least two reasons. First, unlike Mr. Sakamoto, who was a Murata employee when it filed this lawsuit, the inventors in Litetronics were never employed by plaintiff. Id. at *4. Second, unlike the very general assignment clause in Litetronics, here, the assignment agreement

8

unequivocally gives Murata contractual control to direct Mr. Sakamoto to do "all acts necessary or required to be done for the … maintenance, enforcement and defense of [the patent-in-suit]," and specifically to "<u>take all lawful oaths</u>" in "any proceeding in connection with [the patent-in-suit]" (Exh. 5) (emphasis added). The specific reference to taking "all lawful oaths" unequivocally requires Mr. Sakamoto to give testimony and distinguishes the assignment agreement in this case from more general agreements. The assignment agreement in this case contemplates much more than general assistance in obtaining and enforcing the patent-in-suit.

Murata relies on <u>Yaskawa Electric Corp. v. Kollmorgen Corp.</u>, 201 F.R.D. 443 (N.D. Ill. 2001). Such reliance is misplaced, however, since, unlike in the present case where Mr. Sakamoto has not agreed to appear for a deposition at all (and Murata has not agreed to produce him at all), the inventors in that case agreed to be deposed pursuant to their agreement to "testify in all legal proceedings." <u>Id</u>. at 444. The only issue in that case was "where and not whether [the inventors would] be deposed." <u>Id</u>.

Murata also relies on <u>Medpointe Healthcare, Inc. v. Apotex, Inc.</u>, 2007 WL 211202 (D. Del. Jan. 26, 2007). However, that case supports Bel Fuse's position since the Court found that the assignment agreement required the inventor to give testimony, only not in the United States. <u>Id</u>. at 2. What was lacking in that assignment was a requirement that the testimony or other acts in furtherance of the enforcement or defense of the patent take place in "any country," a requirement of the assignment agreed to by Mr. Sakamoto.

Accordingly, by virtue of the Assignment Agreement, Mr. Sakamoto is required to appear in the United States to give a deposition in this case. At the very least, Murata should be compelled to exercise its power to request, and if necessary force, Mr. Sakamoto to do so.

**IV. LOCAL RULE 37.2 STATEMENT**

Counsel for the parties have made a good faith attempt to resolve the instant dispute but were unable to reach an accord. Letters were exchanged between counsel on February 1, 2007 (Exh. 10) and February 15, 2007 (Exh. 9), and counsel conducted a telephonic conference on February 20, 2007. In addition, in an email dated February 23, 2007, counsel for Bel Fuse suggested, in order to avoid motion practice, that Murata will agree to produce Mr. Sakamoto for a deposition in the United States in exchange for an agreement by Bel Fuse to pay his travel costs (i.e., reasonable air fare and hotels) (Exh. 11). However, in an email dated February 28, 2007, counsel for Murata declined.

**V. CONCLUSION**

For the foregoing reasons, it is respectfully submitted that the Court should grant Bel Fuse's motion to compel and require Murata to produce Mr. Sakamoto for a deposition in the United States.

Date: March 1, 2007

Respectfully submitted,

By:    /s/ Joshua L. Raskin
    Martin G. Raskin
    Joshua L. Raskin
    WOLF, BLOCK, SCHORR &
      SOLIS-COHEN LLP
    250 Park Avenue
    New York, NY 100177
    Phone: (212) 986-1116
    Fax:   (212) 986-0604