IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURATA MANUFACTURING CO., LTD., ) | |
| ) | |
| Plaintiff, ) | No. 03 C 2934 |
| ) | |
| vs. ) | Judge Joan B. Gottschall |
| ) | |
| BEL FUSE, INC., *et al.*, ) | |
| ) | Magistrate Judge Jeffrey Cole |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Murata Manufacturing Co., Ltd. ("Murata") sued Bel Fuse Inc., Bel Fuse Ltd., Bel Stewart Ltd., and Bell Connector Inc. (collectively "Bel Fuse") for infringement of United States Patent No. 5,069, 641 ("the '641 Patent"). Bel Fuse has asserted the defenses of non-infringement, invalidity, and inequitable conduct before the patent office. The basis for this last defense is Bel Fuse's contention that the inventors of the patent-in-suit, their attorneys and/or other individuals at Murata substantively involved in the prosecution of the patent-in-suit intentionally withheld a material prior art patent – specifically, U.S. Patent No. 4,789,847 ("the '847 patent") – from the patent office during the prosecution of the patent-in-suit with an intent to deceive.

In response to Bel Fuse's inequitable conduct defense, Murata has claimed in depositions and answers to interrogatories that the '847 patent was not "material" prior art. In fact, according to Murata, it was so immaterial to the patentability of the patent-in-suit that the inventors and Murata's attorneys never even considered disclosing it. Bel Fuse now seeks the production of certain documents related to this issue that Murata has withheld from discovery under a claim of attorney-client privilege. Bel Fuse contends that Murata has waived the privilege as to documents that are

relevant to Bel Fuse's inequitable conduct claim. For the following reasons, I find that no waiver has occurred and deny Bel Fuse's motion to compel.

Bel Fuse's argument goes this way. The documents being withheld by Murata are communications between Murata employees and Murata's Japanese attorneys or between Murata's Japanese attorneys and Murata's attorneys in the United States, and relate to the duty of disclosure to the patent office as well as to an Information Disclosure Statement ("IDS") the Murata inventors submitted to the patent office during the prosecution of the patent-in-suit. Bel Fuse submits that any privilege covering the withheld documents was *expressly* waived by Murata during two Rule 30(b)(6) depositions in March and October of 2006 when Murata's witness referred to the communications and their relation to: (1) the decision to disclose certain prior art to the PTO during prosecution of the patent-in-suit; (2) the preparation and submission of the IDS in a purported attempt to comply with the duty of disclosure; (3) the inventors' purported knowledge and understanding of the duty of disclosure; and (4) the inventors' purported compliance with the duty of disclosure. As Bel Fuse would have it, when Murata's witness testified as to the existence of such privileged communications, Murata *expressly* waived the attorney-client privilege as to these discussions and to all other privileged communications relating to the same subject matter.

In addition to the express waiver argument, Bel Fuse also argues that Murata *impliedly* waived any privilege covering the withheld documents by placing its state of mind as to key elements of Bel Fuse's inequitable conduct claim at issue in this case by contending that Murata inventors, its in-house attorneys, and its outside Japanese counsel were fully aware of their duty of disclosure under U.S. law, that these individuals knew what "material to the patentability of the invention" meant, and that these individuals believed that the '847 patent was so immaterial to the patent-in-suit

2

that it never even occurred to any of them to bring the '847 patent to the attention of the patent examiner. According to Bel Fuse, Murata should not be permitted to inject into the case these issues concerning its state of mind regarding key elements of Bel Fuse's claim and, at the same time, shield alleged privileged communications relating to those same topics.

## I.

### The 30(b)(6) Deposition Testimony Mr. Keating Did Not Effect A Waiver Of The Attorney-Client Privilege

On March 5, 2004, Murata designated Joseph Keating to testify at a Rule 30(b)(6) deposition regarding "all steps taken by Murata's attorneys to comply with their duty of candor to the United States Patent and Trademark Office with respect to the prosecution of the '641 patent application." During that deposition, Mr. Keating testified that there were various communications on that subject among Murata, Murata's American counsel – Burns Doane, Swecker & Mathis, L.L.P. ("Burns Doane") – and Murata's Japanese attorney, the Morishita law firm. Mr. Keating testified that Murata's attorneys informed him that, in order to comply with the duty of candor, they took the steps reflected in the written record of the prosecution of the '641 patent application. (*Bel Fuse's Ex. 5*, Keating Dep. at 26). When Burns Doane asked what prior art to identify, "Murata instructed Burns Doane to submit in an IDS the '204 patent[1] and all prior art references which were cited in the '204 patent." (*Id.* at 27). Mr. Keating said he did not believe Murata identified any other prior art. (*Id.* at 28). In addition, he testified that Murata's Japanese patent application corresponding to the '641 patent included the '204 patent prior art references, and the "Japanese patent attorney instructed U.S. counsel that prosecuted the '641 to cite the '204 patent and all prior art references that were cited in

---

[1] The '204 patent refers to U.S. Patent No. 5,015,204 which is owned by Murata and which is mentioned in the Background of the Invention section of the patent-in-suit.

3

the '204 patent." (*Id.* at 29).[2]

On October 11, 2006, Murata again produced Mr. Keating to testify on its behalf, this time regarding discussions concerning the duty of disclosure with each of the inventors of the patent-in-suit including, but not limited to, any discussions and explanations as to what constitutes "material information" as that term is used in the declaration accompanying the application for the patent-in-suit. Mr. Keating testified that, based on conversations with a Mr. Kimura, he believed that all the inventors knew and understood the duty of disclosure; Mr. Kimura assured him of this. (*Bel Fuse Ex. 5*, 2nd Keating Dep. at 95). Mr. Kimura explained to Mr. Keating that he was sure of this based on their experience as inventors having to comply with the duty of disclosure in the past, and as a result of their periodic communications with U.S. patent attorneys. (*Id.* at 96). These communications came to the inventors by way of Murata's Japanese law firm and Mr. Kimura. (*Id.* at 106-107). The inventors were also familiar with the applicable forms -- which were printed in both English and Japanese -- that explained the duty of disclosure and what "material information" meant. (*Id.* at 96). Based on his discussions with Mr. Kimura, Mr. Keating was confident that the inventors believed the '847 patent was not material to the '641 patent application. (*Id.* at 108).

For Bel Fuse, these snippets of deposition testimony constitute disclosure of confidential attorney-client communications resulting in an *express* waiver of the privilege as to those communications. But the attorney-client privilege is not waived unless portions of communications that are private between attorney and client are revealed. *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). Such a revelation

---

[2] This purported "waiver" of the attorney-client privilege occurred nearly three years ago. The fact that Bel Fuse chose not to raise the issue until now, rather than during the ongoing, protracted discovery disputes during that period, calls into question the seriousness of Bel Fuse's contentions.

4

waives the privilege as to the residue of the confidential communication. *Buljubasic*, 808 F.2d at 1268; *Lawless*, 709 F.2d at 487. No such revelation occurred here.

All that Mr. Keating's testimony revealed is that Murata and its attorneys determined that the '204 patent would be disclosed in the '641 patent application, and that the inventors knew about the duty of disclosure and what constituted material information. The disclosures made in the course of prosecuting the '641 patent are not confidential, and consequently Mr. Keating's testimony regarding them does not waive the privilege. *Buljubasic*, 808 F.2d at 1268("A client does not waive the privilege by stating facts that outsiders already know or could deduce."); *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000)(communications made with the knowledge that the information would be transmitted to a third party are no longer confidential and, therefore, not protected by the privilege). Phrased differently, testimony about non-privileged communications cannot waive a privilege as to other communications that are protected by the attorney client privilege.

Similarly, Mr. Keating's testimony that he understood that the inventors knew about their duty of disclosure and understood what would constitute "material information" did not reveal any confidences. At most, Mr. Keating stated that the inventors had communications with Murata's attorneys. There is a significant difference between indicating the fact or topic of a confidential with an attorney and revealing its content. The latter effects a waiver of the attorney-client privilege, while the former does not. *See United States v. Smith*, 454 F.3d 707, 713 (7th Cir. 2006)(client who revealed what his lawyer told him indicated a willingness to waive the privilege); *see Sarkes Tarzian, Inc. v. U.S. Trust Co. of Florida Sav. Bank*, 397 F.3d 577, 584 (7th Cir.2005), *cert. denied,* --- U.S. ---, 126 S.Ct. 398 (2005) (responding fully to questions covered by the attorney-client privilege is an implicit waiver of that privilege).

5

If Bel Fuse's argument were accepted, it would mean that privilege logs, and compliance with Fed.R.Civ.P. 26(b)(5), would operate as a waiver of the attorney client privilege. Rule 26(b)(5) demands that a party asserting the privilege as to a document "shall describe the nature of the . . . communications . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the applicability of the privilege or protection." *See also Hobley v. Burge*, 433 F.3d 946, 947 (7th Cir. 2006)("An attorney asserting privilege must timely support that claim with a "privilege log" which describes the nature of each document being withheld."). One can readily imagine Mr. Keating's testimony transcribed into the "Subject" column of a privilege log: "communication with inventors re: duty or disclosure;" "communication with inventors re: 'material information';" or "communication from counsel re: '204 patent disclosure." None of these topical descriptions in a privilege log would be held to waive the privilege, and the result cannot be different here simply because the topics were enunciated in deposition testimony in response to Bel Fuse's questioning. As such, merely adverting to the nature of a communication, as Mr. Keating did here, cannot be held to amount to a revelation of the protected information that waives the attorney-client privilege. There was no waiver of the privilege as a result of the testimony on which Bel Fuse relies.[3]

---

[3] The two cases upon which Bel Fuse relies do not suggest a different result; both involved revelations of the substance of a confidential communication. *Vardon Golf Co., Inc. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 532 (N.D.Ill. 2003)(privilege can be waived when a party shares the confidential information with third parties); *In re Consolidated Litigation Concerning Intern. Harvester's Disposition of Wisconsin Steel*, 666 F.Supp. 1148, 1153 (N.D.Ill. 1987)(privilege waived where substance of the communication is revealed to third parties). The communications Bel Fuse pints to here were either not confidential or their substance was not divulged.

6

## II.

### Murata's Opposition to Bel Fuse's Charge Of Inequitable Conduct Before The Patent Offense Does Not Result In A Waiver Of Murata's Attorney-Client Privilege

Next, Bel Fuse argues that because it has raised the issue of inequitable conduct before the patent office as an affirmative defense to Murata's charges of infringement, and Murata has denied it, Murata's attorney-client privilege is waived. Although the argument as advanced is phrased more obliquely, at bottom this is what Bel Fuse is contending. If accepted, a defendant charged with inequitable conduct would find itself between Scylla and Charybdis: it would either have to waive its attorney client privilege in order to defend itself or concede liability in order to preserve the privilege, which would become valueless. In a constitutional context, the Supreme Court has said that a defendant in a criminal case cannot be forced to choose between asserting his Fifth Amendment privilege at the price of relinquishing his rights under the Fourth Amendment. *See Simmons v. United States*, 390 U.S. 377, 393-394 (1968). The Court found it intolerable that one constitutional right should have to be surrendered in order to assert another. While the "benefit" to be given up -- the attorney client privilege -- is not a constitutional right, it is one that lies at the heart of our adversary system.

The attorney-client privilege is the oldest of the recognized privileges for confidential communications known to the common law. *Jaffee v. Redmond*, 518 U.S. 1, 11 (1996); *Upjohn Co. v. United States* 449 U.S. 383, 389 (1981). Deeply rooted in public policy, *In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir.1997), and playing a "vital role" in the administration of justice, *American Nat. Bank and Trust Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 878, (7th Cir.2005), it remains one of the most carefully guarded privileges and is not readily to be whittled

7

down. *See Swidler & Berlin v. United States*, 524 U.S. 399, 403(1998). The privilege's central concern-and its ultimate justification-is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Without that frankness, sound legal advice is impossible, and without informed advice, the ultimate goal of the attorney-client privilege is unattainable. *Upjohn v. United States*, 449 U.S. 383, 389 (1981). In light of the importance of the attorney client privilege, the tension the Court found intolerable in *Simmons*, is no more tolerable here.

A brief discussion about the question of inequitable conduct before the patent office will provide a useful background for disposition of the present issue. The Federal Circuit has recently reiterated the issues attendant such a charge in *Cargill, Inc. v. Canbra Foods, Ltd.*, – F.3d –, 2007 WL 466248, *3 (Fed. Cir. 2007): To hold a patent unenforceable due to inequitable conduct, there must be clear and convincing evidence that the applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office ("PTO").

\* \* \*

[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

> (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim, or
>
> (2) It refutes, or is inconsistent with, a position the applicant takes in:
>
> (I) Opposing an argument of unpatentability relied on by the Office, or
>
> (ii) Asserting an argument of patentability.

A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence,

8

burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

The intent element of inequitable conduct requires that "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." Intent rarely can be, and need not be, proven by direct evidence. Instead, an intent to deceive is usually inferred from the facts and circumstances surrounding the conduct at issue.

If a district court finds that the requirements of materiality and intent have been established by clear and convincing evidence, it must then "balance the equities to determine whether the patentee has committed inequitable conduct that warrants holding the patent unenforceable." Under the balancing test, "[t]he more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct, and vice versa."

2007 WL 466248, *3.

Bel Fuse grounds its contention that Murata has waived its attorney-client privilege on Murata's interrogatory responses in this case, which set forth the bases for its denial of Bel Fuse's charge of inequitable conduct. In those responses, Murata stated that, notwithstanding the fact that two of the inventors of the patent-in-suit also were inventors of the '847 patent, it did not occur to them that the '847 patent should be cited in the prosecution of the patent-in-suit, and the possibility was not even suggested to them. (*Bel Fuse's Ex. 6* at 44-45). Murata also stated that none of the attorneys or other individuals at Murata involved in the prosecution of the patent-in-suit had any knowledge of the '847 patent. (*Id.* at 45-46). This, Murata later explained, could be distinguished from a situation where a deliberate decision not to cite a piece of prior art was made. (*Id.* at 52). And, as did Mr. Keating in his deposition testimony, Murata stated that the inventors were well aware of their duty of disclosure through past experience, and a review of their disclosures in the prosecution of the '641 patent reveals references that were likely unnecessary. In other words, the

9

inventor's citations to prior art demonstrate that they were erring on the side of caution and disclosing more than their duty required. (*Id.* at 53).

Perhaps more importantly, Murata set forth its position on why the '847 patent was not material to the prosecution of the '641 patent:

> The '847 patent would not have been important to a reasonable examiner in determining whether to allow the claims of the '641 patent to issue. Stated in more recent terms, the '847 patent, either alone or in combination, does not establish a *prima facie* case of unpatentability of any claim of the '641 patent. Nor is it inconsistent with any position taken by the applicants during prosecution.

(*Id.* at 46).

Murata then went on to elucidate its positions with comparisons between the two devices, and a history of prior art references made in prosecutions of patents for related types of devices. (*Id.* at 46-51). Based on these interrogatory responses, Bel Fuse argues that Murata has waived the attorney-client privilege by "placing the states of mind of the inventors, Murata's attorneys, and any other individuals involved in the prosecution of the patent-in-suit . . . ." (*Bel Fuse's Motion to Compel*, at 12). But the mere fact that one's "state of mind" becomes an issue in a case does not necessarily mean that the attorney-client privilege has been waived. It is the manner of proof involved that determines whether there has been a waiver.

There is, of course, the familiar waiver that occurs when advice of counsel is put at issue. *See Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). In patent cases, this most often arises when a defense of advice of counsel is lodged against a charge of willful infringement. *See In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). The defendant must reveal that advice to refute the charge and so the privilege is waived. But Bel Fuse does not assert an "advice-of-counsel" waiver here; it asserts an "at-issue" waiver, relying on

*Pyramid Controls, Inc. v. Seimens Industrial Automations, Inc.*, 176 F.R.D. 269, 271 (N.D.Ill. 1997). The "at issue" waiver of the attorney-client privilege is implied when a party voluntarily injects a new factual or legal issue into a case, the truthful resolution of which will require examining confidential communications. *Lorenz v. Valley Forge Insurance. Co.*, 815 F.2d 1095, 1097 (7th Cir.1987); *Pyramid Controls, Inc. v. Seimens Industrial Automations, Inc.*, 176 F.R.D. 269, 271 (N.D.Ill.1997); *see also In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005)(waiver where "the pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail."); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir.1994) (cited with approval in *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir.1995)) (waiver when the privilege holder "asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." ). Here, however, there is nothing to suggest that resolution of this issue will require examination of confidential communications.

As detailed above, the interrogatory responses that Bel Fuse seems to characterize as "smoking guns" do not rely on the substance of confidential communications. Murata's assertions in those responses can be tested without necessary resort to examination of any such material. Instead, the interrogatory responses at issue rely heavily on the public record of the patent prosecution, a comparison of the claims of the prior art at issue, and the inventors' past experience. Clearly, a decision regarding materiality rests on no confidential information but a comparison of the prior art at issue, *Cargill, Inc.*, 2007 WL 466248, *3, which is exactly what Murata suggests in its interrogatory responses. (*Bel Fuse's Ex. 6*, at 46-52). That the inventors understood their duty of disclosure is demonstrated, according to Murata, not through examination of attorney-client

11

communications but through the inventors' filing of the IDS, their signing of sworn statements in both English and Japanese, and their prolific experience with the patent office – they had received more than 40 patents among them. (*Id.* at 52-54). Similarly, Murata contends that good faith is demonstrated through these same types of evidence, in addition to the scope of prior art the inventors did cite in connection with the prosecution of the patent-in-suit. (*Id.*). If there is a reference to the content of a confidential attorney-client communication in these responses, let alone a communication on which the resolution of this issue hinges, Bel Fuse has not pointed it out.

The two cases upon which Bel Fuse relies, *General Elec. Co. v. Hoechst Celanese Corp.*, 1990 WL 154218, *9 (D.Del. 1990) and *Starsight Telecast, Inc. v. Gemstar Development Corp.*, 158 F.R.D. 650, 654 (N.D.Cal. 1994) do not compel a different result. In *General Elec.*, the court was dealing with a different issue than inequitable conduct before the patent office, at least in degree: the crime-fraud exception to the attorney-client privilege. 1990 WL 154218, *5-6, 8. The plaintiff hoped to prove it was innocent of fraud on the patent office by relying on the claims of two inventors that they did not recall a certain experiment that was relevant to the patent-in-issue. *Id.* at *8-9. In so testifying, the inventors referred to a letter that was described as a confidential attorney-client communication. The court stated that the plaintiff "points to no evidence, other than the allegedly privileged communications themselves, which would substantiate these claims." *Id.* at *9. The court found a waiver of the attorney-client privilege because "[t]he only way for defendants to refute these assertions is to examine the privileged communications themselves." *Id.* Here, the interrogatory responses upon which Bel Fuse relies demonstrate that Murata can, and does, point to evidence other than privileged communications to substantiate its position.

Similarly, in *Starsight Telecast*, the defendant hoped to refute a claim of inequitable conduct

by reliance on deposition testimony and declarations about knowledge of the purported prior art, and the relevancy or materiality of such art. 158 F.R.D. at 654. That testimony, however, relied completely on references to privileged attorney-client communications. *Id.* As such, the court, following *General Elec.*, found a waiver of the attorney-client privilege. Again, the interrogatory responses at issue here make reference to non-privileged materials.

To make clearer the distinctions between the cases Bel Fuse cites and the situation at hand, one need only compare the testimony of the inventors in the three cases. In *General Elec.*, the inventors testified that they had no recollection of the experiment at issue, and that could be substantiated only by reference to privileged materials. In *Starsight Telecast*, the inventor testified that his decisions to disclose prior art were part and parcel to attorney-client communications. Here, the cited inventor testimony – that of Mr. Hori – indicates that the inventor simply did not consider the '847 patent as relevant prior art that needed to be disclosed. (*Bel Fuse's Ex. 6*, at 45). Why? Because it "belonged to a completely unrelated category." (*Id.* at 52). There is no reference to a confidential communication and Mr. Hori's assertion can be assessed without resort to examining one. It is an assessment that can be made by comparison of the prior art at issue, and no resort to attorney-client confidences need be made.[4]

In sum, the flaws inherent in Bel Fuse's position can – as with its previous argument --

---

[4] The testimony cited here is not far removed from a mere denial of inequitable conduct which, under *Lorenz*, 815 F.2d at 1097, does not warrant a finding of waiver. As such, this case is similar to *Schofield v. U.S. Steel Corp.* There, the party asserting waiver relied on the testimony of the patentee's attorney, who said he "certainly never intentionally prepared an application with a claim which read on some prior art which [he] was aware of." The court found that the patentee, through his attorney, had merely denied allegations of inequitable conduct leveled at him by the defendant. It held that the denial of an allegation does not constitute waiver of the attorney-client privilege. *Schofield v. U.S. Steel Corp.*, 2005 WL 3159165, *5 (N.D.Ind. 2005)(citing Lorenz,* 815 F.2d at 1098).

readily be highlighted by what would obtain were it accepted. See Posner, Cardozo: A Study in Reputation, 118 (1990)( "'[t]he soundness of a conclusion may not infrequently be tested by its consequences.'" ). Any defendant in any patent infringement case could destroy its opponent's attorney-client privilege by leveling the rather common charge of inequitable conduct before the patent office. The plaintiff denies the charge, thereby placing its state of mind at issue and *voila*, the defendant has access to the plaintiff's privileged communications with its counsel. It would happen in every case. That it has not is persuasive evidence that the argument is unsound and should be rejected.

## CONCLUSION

For the foregoing reasons, the defendant's Motion to Compel [#260] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/8/07