UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MURATA MANUFACTURING CO., LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 03 C 2934 |
| v. | ) ) | Judge Joan B. Gottschall |
| BEL FUSE, INC., BEL FUSE, LTD., BEL STEWART, LTD., and BEL CONNECTOR, INC. d/b/a STEWART CONNECTOR and BEL STEWART, | ) ) ) ) ) | Magistrate Judge Jeffrey Cole |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Murata Manufacturing Co., Ltd. ("Murata") has filed a motion to strike and bar portions of defendants Bel Fuse, Inc. et al.'s (collectively "Bel") brief in opposition to Murata's motion for summary judgment of literal infringement of Murata's U.S. Patent No. 5,069,641 ("the '641 patent"). Specifically, Murata seeks to strike five allegedly new theories of noninfringement that it claims Bel raises for the first time in its brief in opposition, and to further bar Bel from raising those theories at trial. Murata additionally seeks to strike the declarations of Bel's expert witnesses R. Lee Hill ("Hill") and Peter G. Bittner III ("Bittner") which were submitted as exhibits accompanying Bel's brief in opposition. For the reasons set forth below, Murata's motion is granted in part and denied in part.

# I. ANALYSIS

**1. First Alleged Theory of Noninfringement:**

In response to Murata's motion to strike, Bel has withdrawn any argument, in its brief or at trial, based upon the first allegedly novel theory of noninfringement; the reverse doctrine of equivalents. *See, e.g., Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002). The court therefore strikes that theory of noninfringement from both Bel's opposition to Murata's motion for summary judgment of literal infringement and at trial.

**2. Second Alleged Theory of Noninfringement:**

Murata argues that Bel also presents a new theory of noninfringement with respect to the Family 1 modular jacks, *viz.,* that the contactors are not "electrically connected" to the noise suppressing elements because the contactors engage pins in a toroid base which, in turn, fit into holes in the printed circuit board, engaging the traces on the board. Murata's Mot. to Strike § II ¶ 2. Bel retorts that its statement in opposition to Murata's motion to dismiss claims that "the Family 1 connectors still do not infringe because they lack a contactor being electrically connected with the electronic element 'by a wire on the printed board' as required by the claims." Bel's Opp. at 13. Bel cites the expert report submitted by Hill during discovery, which claims that "the capacitor is not 'electrically connected' to any contactor by a 'wire on the printed board.' Rather, the contactors are connected to the resistors or to other components. Bel's Brief in Opp. Ex. 2 ¶ 55. Hill's report thus clearly indicates that the connection between the contactor and the capacitor is not a direct contact mediated only via a "wire on the board," but that "other components" intervene. *Id.* Even a cursory glance at the illustrations of the

Family 1 components at issue provided in both parties' briefs renders this argument apparent.

Murata replies, cryptically, that Bel's explanation of its argument is not more precise, but rather more abstract. Murata's Reply Brief 7-8. Furthermore, it claims that because the phrase "other components" appears, Bel can then continue to plug any component it wants into its defense theory. *Id.* at 8. Murata claims that Bel's factual submissions and arguments therefore violate Federal Rule of Civil Procedure 26(a)(2)(B), which requires disclosure in expert reports of "a complete statement of all opinions to be expressed and the basis and reasons therefore." *Id.* at 8. Murata complains that the Hill report says nothing about "intermediate pins" or "toroid bases" despite its alleged requirement to do so. *Id.*

Murata's argument, however, is a canard; Hill's report states that there is not a direct connection from contactor to "wire on the board" to capacitor, but rather that another component intervenes and thus the accused device lies outside the scope of the claims. Bel is not required to list every possible permutation of potential components; rather, its argument is that the connection is not direct, but indirect. That much is clear from Hill's report, and a straightforward reading of the report should have put Murata on notice of Bel's argument in this respect. Moreover, Murata's invocation of *Salgado v. General Motors Corp.* avails it little. 150 F.3d 735 (7th Cir. 1998). *Salgado* describes the requirement that an expert's report must be sufficiently "detailed and complete" so that opposing counsel will not be ambushed at trial. 150 F.3d at 741 n.6. Hill plainly asserts that there is no connection between the contact and the capacitor via a "wire on the board", but rather a connection between the contacts and resistors and other

3

components.  Bel's Brief in Opp. Ex. 2 ¶ 55.  The court finds that Hill's argument is sufficiently detailed and complete, and supported by facts, so as to adequately satisfy the requirements of Rule 26(a)(2)(B).

Nor is Murata's argument that Hill's prior report is contradicted by the new report convincing.  The court's understanding of electronics is not so unsophisticated as to fail to comprehend the difference between "connected" (implying a physical contact connection) and "electrically connected" (which implies existence of a conductive pathway through which current may flow from one component to another[1]).  The court therefore finds that Bel adequately disclosed the facts underlying this particular argument and denies Murata's motion to strike this particular theory of noninfringement.

**3. Third Alleged Theory of Noninfringement:**

Next, Murata argues, also with respect to Family 1, that the contactors are not connected via a "wire on a printed board" to noise suppressing elements because "the terminals are connected to wires wound around toroids and only part of this path is a trace."  Murata's Mot. to Strike § II ¶ 3.

Bel counters with the argument that "the Family 1 connectors do not infringe because they lack a terminal that is 'electrically connected' to the electronic element 'by a wire on the printed board' as required by the claims."  Bel Opp. at 16.  Bel's expert report by Hill states explicitly that none of the contactors "are 'electrically connected' to any of the terminals … because of the presence of the isolation transformers."  Brief in Opp. Ex. 2 ¶ 60.  Bel contends that the presence of the isolation transformers precludes

---

[1] Although to remain within the scope of the claims, the connection through which the current flows must include a "wire on the board."

any electrical connection by a wire on the board due to the electrical isolation created by the wire wrapped toroids in the base. Bel Opp. at 17.

Murata argues in reply that Bel's expert report comprises a novel theory of noninfringement that is related to an entirely different claim limitation ("electrically connected") in addition to prior theories that were related to the limitation "by a wire on the board." Murata Reply Brief 10.

The court finds that the plain language of Hill's report corresponds sufficiently to Bel's argument in its opposition to Murata's motion for summary judgment to satisfy the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). Murata's motion with respect to this argument is consequently denied.

**4. Fourth Alleged Theory of Noninfringement:**

Next, Murata argues that, with respect to Family 3, Bel's contention that the '641 patent "indicates" that the substrate in a chip is not a printed board is a new and impermissible noninfringement theory. Murata's Mot. to Strike § II ¶ 4.

Bel counters by arguing that the distinction between a printed board and a chip has been explicitly presented in Hill's report. Brief in Opp. Ex. 2 ¶ 114 ("I have never to my recollection ever read, heard, or even conceived of the notion that the substrate of a chip resistor could be considered by anyone in the electronics industry as constituting a printed board"). Bel argues that Murata's new argument, raised in its motion for summary judgment, is that the chip resistor includes a printed board, and that their argument in opposition constitutes a proper rebuttal. Brief in Opp. 10 (citing *Aircraft Gear Corp. v. Marsh*, No. 02 C 50338, 2004 WL 1899982, at *5 (N.D. Ill. Aug. 12, 2004).

Murata retorts that Bel's argument in opposition to Murata's motion for summary judgment is the very first time that Bel has argued that there is a "clear line of demarcation" between printed boards and substrates in chip resistors, and argues that Bel has never before made that argument. Murata Reply Brief 10. Murata argues that Bel has moved for summary judgment based on this differentiation between printed boards and chip resistors.

Hill's statement, however, explicitly states that, as an expert, he believes that there is a cognizable dichotomy between chip resistors and printed boards. Murata argues that "determination of what a patent teaches is fact finding, not interpretation." *Id.* at 11 (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)). Nevertheless, it is precisely such a factual inquiry that is the function of this court, and Hill's opinion, explicitly stated in his report, stakes out a dispute over that factual inquiry that is fairly included in Bel's opposition. Murata's motion to strike this portion of Bel's opposition is denied.

**5. Fifth Alleged Theory of Noninfringement:**

Finally, Murata has submitted a final argument in its supplement to its motion to strike. Murata contends that Bel's claim that the alumina substrate layer of the chip resistor does not constitute a printed board (and therefore does not infringe the '641 patent) is a new theory of noninfringement. Murata argues that this argument was not supported by expert testimony, and that it was only raised in Bel's response in opposition to Murata's motion for summary judgment. Supp. to Murata's Mot. to Strike 2. Murata claims that Bel's theory relies solely on dictionary definitions that were supplied by Bel only at the last minute.

In response, Bel cites explicit testimony from Hill's report that the alumina substrate layer does not contain a plurality of the electrically interconnected components that this court construed to be elements of a printed board in its *Markman* hearing.[2] Brief in Opp. Ex. 2 ¶ 114; *Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*, 445 F. Supp. 2d 938, 947 (N.D. Ill. 2006). As such, it is evident that Murata could have deposed Bel's expert on that explicit statement during discovery. Moreover, Bel advanced this theory of infringement in its response brief (and not a reply brief, as alleged by Murata), to Murata's motion for summary judgment of literal infringement. Murata has consequently had the opportunity to rebut Bel's argument in its reply brief and will again have that opportunity at trial. Murata's motion to strike the argument and bar it from further proceedings is consequently denied.

**6. The Declarations of Bittner and Hill**

Murata also opposes the submission of two affidavits, by Hill and Bittner respectively, submitted by Bel with its brief in opposition to Murata's motion for summary judgment. According to Murata, Bel is attempting to use these declarations to support the allegedly new theories of noninfringement submitted in its opposition to Murata's motion for summary judgment. Murata's Mot. to Strike § III. Murata complains that because the affidavits were submitted after the close of discovery, it had no opportunity to depose Hill or Bittner on the facts alleged in their affidavits concerning their contentions of noninfringement. Murata cites no legal support for their motion to strike the affidavits and their argument has little merit.

---

[2] In its *Markman* hearing, the court construed "printed board" as "a generally flat piece of material typically fabricated from insulating material that provides support and structural integrity for a plurality of electrically interconnected components comprising a circuit, with some or all of the conducting interconnection pattern formed on the board." *Murata*, 445 F.Supp.2d at 947.

7

Rule 56(e) of the Federal Rules of Civil Procedure explicitly permits the submission of affidavits in conjunction with, or in opposition to, a motion for summary judgment. Fed. R. Civ. P. 56(e). Moreover, the Rule requires that an "opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." *Id.* These requirements are mandatory. *Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 162 n.3 (7th Cir. 1987).

An affidavit submitted in conjunction with a brief in opposition to a motion for summary judgment must be limited to facts, and the facts must be alleged on personal knowledge. Fed. R. Civ. P. 56(e); *In re Morris Paint and Varnish Co.*, 773 F.2d 130, 135-36 (7th Cir. 1985) (citing *Ashwell & Co. v. Transamerica Ins. Co.*, 407 F.2d 762, 766 (7th Cir. 1969)). Thus, ultimate or conclusory facts and conclusions of law, as well as statements made on belief, may not be employed in a summary judgment motion. *See Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927 (7th Cir. 1998); *Resolution Trust Corp. v. Juergens*, 965 F.2d 149, 152-53 (7th Cir. 1992). However, expert witnesses, who are not strictly "fact witnesses," may opine in their affidavits, provided they do more than offer mere naked conclusions; they must also provide a process of reasoning underlying those conclusions, beginning with a firm foundation. *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir. 1989) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."); *See also Zarecki v. National R.R. Passenger Corp.*, 914 F. Supp. 1566, 1575 (N.D. Ill. 1996).

Finally, the facts contained within the affidavits must be admissible as evidence at trial. *Reeves v. Commonwealth Edison Co.*, No. 06 C 5540 2008 WL 239030 (N.D. Ill. Jan. 28, 2008). The admissibility of expert testimony is governed by Federal Rule of Civil Procedure 702 and the U.S. Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993).

Under *Daubert,* this Court must conduct a two-step analysis to determine whether an expert's opinion is admissible. First the court must determine whether the expert's testimony pertains to scientific, technical, or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). The district court must consider whether the testimony has a reliable basis in the in the knowledge and experience of the discipline; it must rule out subjective belief or unsupported speculation. *Kumho*, 526 U.S. at 149 (citing *Daubert,* 509 U.S. at 590). Second, the district court must "determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. That is, the suggested expert testimony must 'fit' the issue to which the expert is testifying." *Porter v. Whitehall Lab.*, 9 F.3d 607, 616 7th Cir. 1993). Essentially, purpose of the rule in *Daubert* is "to make sure that when [scientists/engineers/technical experts] testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

The court finds that there is sufficient factual foundation, presented on firm and accepted technical footing, to support the opinions and conclusions set forth in Hill's and Bittner's affidavits. Both Hill and Bittner appear from their resumes and affidavits to be competent to provide expert testimony, and the scientific (engineering, to be precise)

9

bases forming the underpinnings of their opinions and conclusions appear to meet the standards required by *Daubert* and *Kumho*[3] for admissibility as expert testimony. Moreover, the subject matter that both affiants opine upon is material to the case and likely to assist the court in understanding the evidence or in determining the factual issues before it at trial. Thus, both prongs of the *Daubert* analysis are satisfied and Hill's and Bittner's testimony are admissible as evidence. Murata's motion to strike and bar the affidavits of Hill and Bittner is consequently denied.

## II. CONCLUSION

For the reasons set forth above, Murata's motion to strike and bar Bel's noninfringement theories and expert affidavits is granted with respect to Bel's theory based upon the reverse doctrine of equivalents, and denied with respect to the rest of its motion.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 5, 2008

---

[3] In *Daubert,* the Court identified several factors that should be considered when determining whether testimony has been subjected to the scientific method: (1) whether the theory can be and has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique; and (4) whether the theory has been generally accepted by the relevant scientific community. *Daubert,* 509 U.S. at 593-94. The Court's conclusion must be based solely on the principles and methodology underlying the expert's conclusion, not the conclusion itself. *Id.* at 593-93. Of these four factors, the first-whether the proffered theory has been tested-has been deemed the most important. *See, e.g., Zarecki*, 914 F. Supp. at 1574; *Schmaltz v. Norfolk & W. Ry. Co.,* 878 F.Supp. 1119, 1121 (N.D. Ill. 1995). The methodology and analysis performed by both Hill and Bittner reflect general and widely accepted principles of electrical engineering sufficient to ensure admissibility under these *Daubert* criteria. *See Kumho*, 526 U.S. at 141.