UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURATA MANUFACTURING CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> BEL FUSE, INC., BEL FUSE, LTD., BEL STEWART, LTD., and BEL CONNECTOR, INC. d/b/a STEWART CONNECTOR and BEL STEWART, <br><br> Defendants. | Case No. 03 C 2934 <br><br> Judge Joan B. Gottschall <br><br> Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

Defendants Bel Fuse, Inc. et al. (collectively "Bel") have filed a motion seeking summary judgment of invalidity against plaintiff Murata Manufacturing Co., Ltd.'s ("Murata") U.S. Patent No. 5,069,641 ("the '641 patent-in-suit") based on grounds of obviousness. Murata has cross-moved for summary judgment of nonobviousness of the '641 patent-in-suit. For the reasons set forth below, both Bel's motion and Murata's cross-motion for summary judgment are denied.

### I. BACKGROUND

Jacks and plugs are the familiar connectors by which telephones, computers and other such information processing and transfer devices are connected with wires or cables in order to receive and transmit information from and to external sources. A constant problem for such connectors, however, is electromagnetic interference ("EMI") generated by electrical sources both intrinsic and extrinsic to the device in question. Such EMI can

1

degrade and interfere with the electrical signals passing into and out of the machine via the connectors. To address this problem, filters, or "noise suppression" devices have been devised that "screen out" the undesirable EMI and improve the signal-to-noise ratio of information passing through the connectors.

Traditionally, such filters have been mounted on the device's circuit board as part of the rest of the device's circuitry. Unfortunately, these filters occupy space on the circuit board, and as the exponential trend towards miniaturization of electrical devices has proceeded apace, internal space for components has come at an ever increasing premium. One solution to this problem has been to integrate the noise filter directly into the connector itself, and it is this approach that brings the court to the subject matter of the instant case.

Murata's '641 patent-in-suit discloses "a compact and economical modular jack[1] which also functions as a noise suppressor." '641 patent-in-suit. The modular jack "has a printed board containing a noise suppressing electronic element in an insulating housing." *Id.* "A contactor for contacting with a plug and a terminal for connecting with a circuit board are electrically connected with the electronic element by wires on the printed board." *Id.* Thus, "it is possible to obtain a compact modular jack containing a noise suppressing electronic element, which modular jack hardly receives external noise." *Id.* The '641 patent-in-suit issued on December 3, 1991; the inventors of record are listed as Yukio Sakamato, Toshio Hori, and Iwao Fukutani, and the sole assignee of the patent is Murata.

---

[1] In its *Markman* opinion, issued on July 26, 2006, the court construed "modular jack" as "the female portion of a modular connector in which wires of a circuit are connected at one end and into which a plug is inserted at the other end." *Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*, 445 F. Supp. 2d 938, 954 (N.D. Ill. 2006).

The prior art, as disclosed in the '641 patent-in-suit, consisted of U.S. Patent No. 5,015,204 (and German Patent No. DE-AS-202342) (the "'204 patent"), which also disclosed a modular jack with a noise suppressing element. However, the '204 patent, which was patented by the same inventors and also assigned to Murata, disclosed a different type of noise suppressing element. The noise suppressing element of the '204 patent comprised a "common mode choke coil" which consists of a "ring shaped core and two coils coiled thereon" rather than having the noise suppressing elements mounted on a circuit board within the jack. '204 patent. The pairs of coils are wrapped in opposite turnings around the ring-shaped core, so any common mode interference (externally generated noise that is present in both coiled wires) induces opposing electromagnetic fields which subtract from, and thus cancel, each other (this is known as common mode rejection).

Importantly, one end of the coil wire is made to be a contactor in the jack for a plug from a cable or wire, and the other end is used as a terminal for connecting the jack to the rest of the circuit board. *Id.* Thus, electrical current entering from the plug flows continuously through the wire, which is coiled around the ring-shaped core, and directly to the internal circuitry of the device, without any intervening elements (unlike the '641 patent-in-suit, which teaches wires connecting to and from the integral circuit board, as well as wires on the board contacting the noise suppressing elements).

Not disclosed in the '641 patent-in-suit, but cited by Bel in its motion for summary judgment, is another U.S. Patent, No. 4,789,847 (the "'847 patent"), also issued to Messrs. Sakamato, Hori, and Fukutani, and assigned to Murata. The '847 patent discloses a "filter connector," rather than the modular jack disclosed in both the '204 and

3

'641 patents. Both parties have acknowledged that the filter connector disclosed in the '847 patent is of a type generally known as a D-subminiature connector ("D-sub connector"). Sub-D connectors are familiar to anyone who has examined the back of a computer; the plug and jack are typically roughly "D-shaped" when viewed from the connector surface. The '847 patent discloses a female type filter connector with an integral noise suppression element on a "printed circuit board" upon which are mounted the "filter elements." '847 patent. The circuit board is connected to a first terminal pin that connects to the pin of the incoming wire, and also to a second terminal pin, which in turn connects to the circuitry of the device in which the connector is mounted. *Id.*

Thus, there are three principal patents that concern the court in this case: (1) the '204 patent, which teaches a modular jack with an integral noise suppression element consisting of an uninterrupted wire connecting the jack's input and output (the common mode choke coil); (2) the '847 patent, which teaches a D-sub connector with an integral noise suppression element mounted on a circuit board and connected by conducting pins to the connector's inputs and outputs; and (3) '641 patent-in-suit, the patent at issue in this case, which teaches a modular jack with an integral noise suppression (as in the '204 patent); which element is mounted on a circuit board and connected to the inputs and outputs of the jack via conducting elements, as well as at least one wire on the circuit board (as in the '847 patent).

In 1999, Stewart Connector Systems, Inc. ("Stewart") (Bel's predecessor in interest) became aware of Murata's '641 patent-in-suit. Bel's Mot. for Summ. Judg. 2. Stewart had been developing its own modular jack with an integral noise suppression

element (known as the MagJack®) and on August 20, 1999 Stewart contacted Murata by letter initiating negotiations for a licensing agreement. *Id.*

Negotiations had almost borne fruit, when, Bel alleges, Stewart initiated its own study of the validity of the '641 patent-in-suit, and discovered the '847 patent, which was not disclosed in the '641 patent-in-suit. *Id.* On January 29, 2001, Stewart's counsel furnished Stewart with a detailed opinion letter stating, *inter alia*, that Murata's '641 patent-in-suit would likely be found invalid as obvious in view of the two prior art references owned by Murata (the '847 and '204 patents), all three of which shared the same inventors. *Id.* at 3; Bel's Compendium of Decl. and Ex. is Support of Mot. for Summ. Judg. Ex. 5.

On February 7, 2001, Stewart informed Murata of its counsel's conclusion that the '641 patent-in-suit was invalid and withdrew from the licensing negotiations. Bel's Mot. for Summ. Judg. 3. Murata rejected Stewart's conclusion that the '641 patent-in-suit was invalid and, in January 2002, initiated a lawsuit alleging Stewart was infringing the '641 patent-in-suit. *Murata Manuf. Co., Ltd. v. Stewart Connector Sys., Inc.*, No. 02 C 0222 (N.D. Ill. 2002). But when Stewart filed for bankruptcy in December 2002, the suit was stayed and eventually dismissed. Bel's Mot. for Summ. Judg. 3.

In early 2003, Bel, which was producing its own line of connectors with integrated filters (marketed under the name BelMag®), purchased Stewart's assets from bankruptcy, including its MagJack® business. *Id.* Murata subsequently filed the instant suit against Bel, alleging that Bel's marketing of the MagJack® and BelMag® product lines infringed Murata's '641 patent-in-suit. *Id.* Currently before the court are Bel's

5

motion for summary judgment of invalidity of the '641 patent-in-suit on grounds of obviousness and Murata's cross-motion for summary judgment of nonobviousness.

## II. ANALYSIS

A. Standard of Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Each claim of a patent is presumed to be valid. 35 U.S.C. § 282; *see also Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1371 (Fed. Cir. 2007). However, a patent is invalid under 35 U.S.C. § 103 "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. The burden of proving that a

patent is valid on § 103 grounds "is on the party asserting invalidity to prove it with facts supported by clear and convincing evidence." *Adenta*, 501 F.3d at 1371 (quoting *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n,* 718 F.2d 365, 375 (Fed. Cir. 1983)).

When determining whether a patent is invalid on grounds of obviousness (which is a legal conclusion), summary judgment is appropriate when "the content of the prior art, the scope of the patent claims, and the level of ordinary skill in the art are not in material dispute and the obviousness of the claims is apparent in light of these factors." *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727, 1745-46 (C.C.P.A. 2007). In determining obviousness, the court must consider the following factors: (1) the scope and extent of the prior art; (2) the differences between the prior art devices and the claimed invention; (3) the level of ordinary skill in the art; and (4) other objective considerations, such as commercial success, long felt but unmet need, and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966); *see also KSR*, 127 S. Ct. at 1734. Moreover, in considering summary judgment, the court can and should take into account expert testimony, which may resolve or keep open certain questions of fact. *KSR*, 127 S. Ct. at 1734.

Many patentable inventions incorporate elements previously present as prior art. However such a combination patent is not invalid merely because each of those elements was known independently in the prior art. *KSR*, 127 S. Ct. at 1742. Rather, such a patent is invalid as obvious only if such a combination of the elements would have been obvious to an artisan of ordinary skill. 35 U.S.C. § 103. Until the U.S. Supreme Court's recent ruling in *KSR*, the Court of Custom and Patent Appeals had imposed an additional requirement on district courts conducting an analysis of combination patent validity

under § 103. Under this requirement, a party seeking to prove invalidity on grounds of obviousness was required to demonstrate a teaching, suggestion or motivation to combine the known elements. *See Application of Bergel*, 292 F.2d 055, 956-57 (1961). However, the Supreme Court acknowledged that although this requirement captured a helpful insight, it was not mandatory. *KSR*, 127 S. Ct. at 1742. The Court emphasized that the obviousness analysis "cannot be confined by a formalistic conception of the words teaching, suggestion, suggestion, and motivation, or by overemphasis on the importance of published articles and the explicit contents of published patents. *Id.* ("[H]elpful insights, however, need not become rigid and mandatory formulas …."). Therefore, although the demonstration by the party alleging invalidity of a teaching, suggestion or motivation to combine the known elements may be probative, it is not an absolute requirement for finding a patent invalid.

B. There Exists a Dispute Over a Genuine Issue of Material Fact Concerning the Scope of the Pertinent Prior Art.

The parties initially disagree over the scope and content of the pertinent prior art. Under § 103, a patent is not valid if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103. Therefore, the court must make a factual determination of the scope and content of the prior art. Bel contends that the scope of the pertinent art includes the modular jack connectors claimed in both the '641 patent-in-suit and the '204 patent, as well as the D-sub connectors claimed in the '847 patent. Bel cites the expert declaration of Charles Blichasz ("Blichasz") that modular jack and D-sub connectors have both been employed as input/output connectors for the transmission of serial data to and from computers since the mid-1980s. Decl. of Blichasz

¶¶ 6-7. According to Blichasz, both types of connectors have been present since that time on the same personal computers, with the same signal functions assigned to each type of connector. *Id.* at ¶ 12.

Furthermore, Bel contends, both D-sub and modular jack connectors incorporated integral noise suppression elements prior to the issuance of the '641 patent-in-suit. Bel points to an article co-authored by Iwao Fukuni (co-inventor of the '204, '847, and '641 patents) entitled "Adding Filters to Connectors Improves Equipment Performance, Noise Resistance" published in the *Journal of Electrical Engineering* in September 1994 (almost three years after the '641 patent-in-suit issued). Bel's Compendium of Decl. and Ex. is Support of Mot. for Summ. Judg. Ex. 38. Modular jacks and D-sub connectors incorporating integral noise suppression filters are featured in both the illustrations and text of this article.

Bel also points to alleged facts that it contends demonstrate that Murata itself believed that both D-sub and modular jack components were included in the scope of the pertinent art. Bel alleges that during the application process for the '641 patent-in-suit, Murata, in compliance with its duty of disclosure, filed an Information Disclosure Statement ("IDS") with the U.S. Patent and Trademark Office ("USPTO") identifying four U.S. patents and one German patent[2] as material to the examination of the '641 patent-in-suit. Bel's Compendium of Decl. and Ex. in Support of Mot. for Summ. Judg. Ex. 38. Of these, Bel alleges, only one patent is directed to a modular jack; another is directed to a sub-D connector, and the German patent is directed to a pin-type connector.

---

[2] The four U.S. patents disclosed by the IDS are U.S. Patent Nos. 4,845,393, 4,329,665, 4,772,224, and 4,602,122. The German patent is DE-AS-2042342.

Therefore, Bel concludes, all of these connectors were implicitly acknowledged by Murata as constituting examples of the pertinent art.

Finally, Bel proffers the annual corporate reports of AMP, Inc., a manufacturer of "over 80,000 types and sizes" of "electrical/electronic connection devices" for the years 1983, 1987, 1998, 1990, and 1991. Bel's Compendium of Decl. and Ex. is Support of Mot. for Summ. Judg. Exs. 53-57. These reports, published prior to, or just after, the date of issuance of the '641 patent-in-suit, all purportedly show both modular jack and sub-D connectors, which Bel asserts supports the contention that both are included within the scope of the pertinent art.

Murata vigorously disputes Bel's contention that both modular jacks and D-sub connectors are both embraced within the scope of pertinent prior art. Murata argues that D-sub connectors are not within the scope of the prior art any more than are headphone plugs and electrical ports, both of which are present on the backs of computers together with modular jacks and D-sub connectors, and which may serve as input or output connectors. Murata emphasizes the fact that modular jacks and D-sub ports are not interchangeable, cannot be mated with each other, and are fundamentally different interfaces. Murata's Reply in Supp. of its Mot. for Summ. Judg. 13 ("One cannot connect a D-subminiature connector directly to a modular jack connector.") *See PC Connector Solutions v. SmartDisk Corp.*, 406 F.3d 1359, 1364 n.4 (Fed. Cir. 2005) (no literal infringement possible in cases of computer connector incompatibility); *Murata*, 445 F. Supp. 2d at 945 ("[m]odifier 'modular' restricts the construction of the claim 'modular jack' to certain configurations").

Murata further argues that Stewart's artisans, when attempting to design and manufacture the MagJack®, did not investigate D-sub art for ideas on how to overcome their design problems despite repeated failures. Murata's Reply in Supp. of its Mot. for Summ Judg.14. Murata cites the deposition of Bel's MagJack® project team leader John Hess in support of this contention. *Id.*

Murata next points to the Patent Examiner, who, with experience in both modular jack and D-sub art, allegedly searched both subclasses of connector but cited only to references of modular jack technology as being within the prior art. *Id.* Murata argues that because the Examiner reviewed both modular jack references and D-sub references and found only the modular jack references pertinent enough to cite, then D-sub connectors cannot be reasonably considered to be within the scope of the same pertinent art as modular jacks. *Id.*

Construing the facts and drawing all reasonable inferences in the light most favorable to Murata, there thus exists a genuine material dispute between the parties concerning a factual issue: the scope of the pertinent art or, more specifically, whether the pertinent art embraces both modular jack and D-sub connectors. Murata's '641 patent-in-suit is presumed valid and Murata alleges facts disputing Bel's assertion that the patent is invalid under as obvious because, initially, modular jacks are within the same scope of the pertinent art as D-sub connectors. Although the ultimate determination of whether a patent is invalid under § 103 for obviousness is a question of law, discerning the scope of the pertinent prior art is a question of fact[3] which may likely require the testimony of

---

[3] Or, as the Supreme Court in *John Deere* put it:
> While the ultimate question of patent validity is one of law, the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined;

11

expert witnesses for either or both sides. *John Deere*, 383 U.S. at 17; *KSR*, 127 S. Ct. at 1745. Accordingly, the court need go no further in its analysis. A motion for summary judgment is defeated when there exists a genuine issue of material fact disputed between the parties. Fed. R. Civ. P. 56(c); *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008).

In this case, a reasonable finder of fact could find that the scope of the pertinent prior art of the '641 patent-in-suit encompasses modular jacks, but not D-sub connectors. If so, the D-sub connectors disclosed in the '847 patent would not be within the contemplation of an artisan of ordinary skill in the art, and Bel's challenge to the patent's validity for obviousness under § 103 fails. Therefore, Bel's motion for summary judgment of invalidity must be denied.

However, a reasonable trier of fact, after reviewing the evidence at trial, including expert testimony, could find otherwise that the scope of the pertinent prior art embraces both modular jacks and D-sub connectors. Such a finding would be an initial step towards finding that the '641 patent-in-suit is invalid for obviousness under § 103. Consequently, Murata's cross-motion for summary judgment of nonobviousness is also denied.

Finally, the Federal Circuit has recognized that summary judgment may be as appropriate in patent cases as in any other. *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed. Cir. 1984). However, the instant suit, as in many patent cases, gives rise to numerous and complex issues of technological fact and opposing expert testimony, rendering it unsuitable for summary judgment. *Id.*

---

differences between the prior art and the claims at issue are to be ascertained; and the
level of ordinary skill in the pertinent art resolved.
*John Deere*, 383 U.S. at 17 (internal citation omitted).

### III. CONCLUSION

For the reasons set forth above, both of Bel's motions for summary judgment of invalidity of the '641 patent-in-suit and Murata's cross-motion for summary judgment of nonobviousness are denied.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 12, 2008