UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MURATA MANUFACTURING CO., LTD., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 03 C 2934<br>)<br>) Judge Joan B. Gottschall |
| BEL FUSE, INC., BEL FUSE, LTD., BEL STEWART, LTD., and BEL CONNECTOR, INC. d/b/a STEWART CONNECTOR and BEL STEWART, | )<br>) Magistrate Judge Jeffrey Cole<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants Bel Fuse, Inc. et al. (collectively "Bel") have filed a motion seeking summary judgment of noninfringement (both literal and under the doctrine of equivalents) against plaintiff Murata Manufacturing Co., Ltd.'s ("Murata") U.S. Patent No. 5,069,641 ("the '641 patent-in-suit"). For the reasons set forth below, Bel's motion for summary judgment of literal noninfringement of the '641 patent-in-suit by its Family 3 MagJacks® is denied. Bel's motion for summary judgment of infringement under the doctrine of equivalents is also denied. Bel's motion for summary judgment of literal noninfringement of the '641 patent-in-suit by the Family 4 MagJacks® is granted, and its motion for summary judgment of noninfringement by the Family 4 MagJacks® under the doctrine of equivalents is denied.

1

**I. BACKGROUND**

Murata's '641 patent-in-suit discloses "a compact and economical modular jack[1] which also functions as a noise suppressor." '641 patent-in-suit. Modular jacks are familiar to most individuals as the female component half of the connectors by which information-carrying lines are plugged into telephones and computers, connecting them to other devices as part of a network. However, connecting devices such as modular jacks and plugs are plagued by electromagnetic interference ("EMI") or "noise" which can be generated by current-generating sources located in the vicinity of the connection. Excessive noise degrades the signal-to-noise ratio of incoming or outgoing electrical signals and thereby decreases the utility of the device in question. It need hardly be said, therefore, that the suppression of noise is an important function of electronic circuits in information-transmitting or receiving devices. Murata's '641 patent-in-suit claims a modular jack with an integral noise suppressing element. Such a jack saves space on the main circuit board of the device in which it is located; space that would otherwise be used for noise suppression elements.

Specifically, the modular jack claimed in the '641 patent-in-suit "has a printed board containing a noise suppressing electronic element in an insulating housing." *Id.* Additionally, "a contactor for contacting with a plug and a terminal for connecting with a circuit board are electrically connected with the electronic element by wires on the

---

[1] In its *Markman* opinion, issued on July 26, 2006, the court construed "modular jack" as "the female portion of a modular connector in which wires of a circuit are connected at one end and into which a plug is inserted at the other end." *Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*, 445 F. Supp. 2d 938, 954 (N.D. Ill. 2006).

printed board." *Id.* Thus, "it is possible to obtain a compact modular jack containing a noise suppressing electronic element, which modular jack hardly receives [sic] external noise." *Id.*

Murata has filed suit against Bel, which also manufactures modular jacks featuring integral noise suppression filters, alleging infringement of the '641 patent-in-suit. Presently before the court is Bel's motion seeking summary judgment of noninfringement. Specifically, Bel argues that its Family 3 and Family 4 MagJack® modular jacks (which have integral noise suppressing elements) do not infringe upon the '641 patent-in-suit, either literally or under the doctrine of equivalents.

**I. ANALYSIS**

A. Standard of Analysis

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The determination of whether an accused product or process infringes a patent claim is a two step analysis. *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332-33 (Fed. Cir. 1998). Initially, the court construes the asserted claim to determine its meaning and scope. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995). Next, the court compares the accused product or process to the properly construed claim. *Id.* Whether a product or process infringes the properly construed claims of a patent, either literally or under the doctrine of equivalents, is a question of fact. *Tanabe Seiyaku Co. v. United States Int'l Trade Comm'n,* 109 F.3d 726, 731 (Fed. Cir. 1997).

B.  A Genuine Question of Material fact Exists Concerning Whether the Family 3 MagJacks® Infringe the '641 Patent-in-Suit.

Literal Infringement

Bel argues that its Family 3 MagJacks®[2] do not infringe the '641 patent-in-suit, either literally or under the doctrine of equivalents. Bel argues that the Family 3 MagJacks® lack, *inter alia,* a "printed board" as disclosed by the sole independent claim, Claim 1, and by dependent claims 5 and 6, of the '641 patent-in-suit.[3]

---

[2] The Family 3 MagJack® connectors identified by Murata include SI-50152, SI-50168, and SI-53012.
[3] Claim 1 discloses:
    [A] modular jack to be mounted on a circuit board, said modular jack comprising:
    a printed board containing an electronic element for suppressing noise;
    a contactor for contacting with a plug, said contactor being electrically connected with
        the electronic element by a wire on the printed board;
    a terminal for contacting with the circuit board, said terminal being electrically connected
        with the electronic element by a wire on the printed board; and
    an insulating housing for encasing the printed board.
  Claim 5 discloses:
    A modular jack as claimed in claim **1**, wherein the pitch among a plurality of terminals
    on the printed board is about 1.02 mm and smaller than the pitch among contactors on the
    printed board.

"To establish infringement of a patent, every limitation set forth in a claim must be found in an accused product or process exactly or by a substantial equivalent." *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990); *see also Hardwood Line Mfg. Co. v. Whyco Technologies, Inc.*, No. 99 C 2467, 2000 WL 294832, at *3 (N.D. Ill. Mar. 21, 2000). Literal infringement requires that the accused device embody every element of the patent claim. *Mannesmann Demag Corp. v. Engineered Metal Products Co., Inc.*, 793 F.2d 1279, 1282 (Fed. Cir. 1986). Thus, if there is no "printed board" in the Family 3 MagJacks®, the accused devices do not literally infringe the '641 patent-in-suit.

The court conducted a *Markman* hearing in this case and, on July 28, 2006, filed its memorandum opinion and order detailing its findings with respect to the construction of the claims disclosed by the '641 patent-in-suit. *Murata Mfg. Co., Ltd. v. Bel Fuse Inc.*, 445 F. Supp. 2d 938 (N.D. Ill. 2006). The court construed "printed board" as meaning "a generally flat piece of material typically fabricated from insulating material that provides support and structural integrity for a plurality of electrically interconnected components comprising a circuit, with some or all of conducting interconnection pattern formed on the board." *Id.* at 954.

The integral noise suppression elements of the Family 3 MagJacks® comprise a number of components located within a "well" adjacent to that portion of the jack which receives the male modular plug. Bel's Brief in Supp. of Mot. for Summ. Judg. 8. Within

---

Claim 6 discloses:
> A modular jack as claimed in claim **1**, wherein the interior of the housing is divided into a first chamber in which the printed board is set and a second chamber to which the contactor is extended , and the terminal is protruded outside the housing from the first chamber.

'641 Patent-in-Suit (bold in original).

the well of the modular jack is an array of J-pin connectors (analogous to the connectors of the '641 patent-in-suit); an array of terminals (which connect with the circuitry of the device in which the jack is located), two common-mode choke coil elements, two 75 Ω "chip resistors," and a large 1000 pF capacitor. *Id.* at 9. The elements listed above are directly connected to each other and are not apparently mounted on any board-like supporting structure in the well. Bel argues that since these constitute all of the elements comprising the integral noise suppressing element of the Family 3 MagJacks®, and since none of them are mounted on any generally flat, insulating structure providing "support and structural integrity for a plurality of electrically interconnected components comprising a circuit," there is nothing present in the Family 3 MagJacks® that can be reasonably construed as constituting a "printed board" as construed by the court from the claims of the '641 patent-in-suit.

Murata heatedly disputes Bel's contention that there is no printed board in the Family 3 MagJack® integral noise suppressing element. According to Murata, the "printed board" recited in the claims of the '641 patent-in-suit is embedded within the structure of the individual chip resistors and is thus present as an element in the accused MagJack®. Consequently, contends Murata, the accused Family 3 MagJacks® read directly and literally onto the claims of the '641 patent-in-suit, and therefore literally infringe.

To illustrate its argument, Murata points to the anatomy of the chip resistors. Murata's Brief in Supp. of Mot. for Summ. Judg. of Infringement 34.[4] The substrate of the chip resistor is a dielectric (nonconducting) ceramic material (alumina). *Id.* at 35. In

---

[4] Murata incorporates by reference its argument from its cross-motion for summary judgment of literal infringement.

chip resistors, the alumina substrate is generally flat and provides a supporting surface for a combination of conductive and resistive elements. *Id.* Six conducting layers are connected, in pairs, via three resistive elements on the chip resistor and thus, Murata contends, the elements of a printed board are satisfied. *Id.* at 36-37.

There thus exists a dispute between Bel and Murata concerning a genuine issue of material fact, *viz.*, whether the structure of the chip resistors in the Family 3 MagJacks® embodies all of the elements (in light of the court's construction of a "printed board" in its *Markman* opinion) recited in the relevant claims of the '641 patent-in-suit.[5] Therefore, Bel's motion for summary judgment of literal noninfringement of the Family3 MagJacks® is denied.[6]

C. A Genuine Question of Material fact Exists Concerning Whether the Family 4 MagJacks® Infringe the '641 Patent-in-Suit.

Literal Infringement

Bel's Family 4 MagJacks®[7] are also modular jacks with integral noise suppressing elements. In the Family 4 MagJacks®, the noise suppressing elements are mounted on a "mounting board" that is, according to Bel, "manifestly devoid of any printed electrical connection pattern." Bel's Brief in Supp. of Mot. for Summ. Judg. 22. Rather, the electronic elements of the noise suppressing circuitry are mounted onto holes

---

[5] The court notes in passing, however, that Murata's contention that the nonconducting substrate layer of a chip resistor (an "electronic element" as construed by the court in its *Markman* opinion) constitutes a printed board as disclosed in the '641 patent-in-suit, although sufficient to survive a motion to dismiss, stretches that claim to the limit of credibility and is very nearly specious. Were the court to address the merits of the case on this argument, it is unlikely that Murata would prevail.

[6] Bel also asserts that its Family 3 MagJacks do not infringe the '641 patent-in-suit under the doctrine of equivalents. Bel's Brief in Supp. of Mot. for Summ. Judg. 11. Murata refuses to substantially address Bel's arguments, citing Bel's alleged failure to adequately address the law of the doctrine of equivalents and arguing that, because its own motion for summary judgment suffices to establish literal infringement, the court need not address Bel's doctrine of equivalents argument. Murata's Brief in Opp. 2-3. The court finds that neither party has adequately briefed the issue, and therefore denies summary judgment.

[7] The Family 4 MagJack® connectors include SI-10021, SI-30041, SI-40023, SI-40138, SI-46001, SI-50050, and SI-50057.

on the board and "hard" or "discrete" wires or leads are soldered to the connecting terminals of each element. *Id.* at 23. Because the board plays only a supportive structural role, and has no "[electrically conducting] interconnection pattern formed on the board," as construed by the court in its *Markman* opinion, Bel argues that the board in the Family 4 MagJacks® does not read literally upon the claimed element of a "printed board" and the Family 4 MagJacks® consequently do not literally infringe upon the '641 patent-in-suit. *Id.* at 21.

In response, Murata concedes that a single claim element is missing from the Family 4 MagJacks®[8] and, therefore, the accused Family 4 MagJacks® do not literally infringe upon the '641 patent-in-suit. Murata's Brief in Opp. 4. Literal infringement requires that every element of the invention as claimed is present in the accused device. *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1080 (Fed. Cir. 2003). Given Murata's concession that the accused MagJacks® do not read literally onto the claims of the '641 patent-in-suit, Bel's motion for summary judgment of noninfringement based on a theory of literal infringement is granted.

Doctrine of Equivalents

Additionally, Bel contends that the Family 4 MagJacks® do not infringe the '641 patent-in-suit under the doctrine of equivalents. Bel's Brief in Supp. of Mot. for Summ. Judg. 24. According to Bel, Murata's doctrine of equivalents theory of infringement is based upon its contention that the supporting board in the Family 4 MagJacks®, upon which the noise suppression elements are mounted, is equivalent to the "printed board" taught by the '641 patent-in-suit. *Id.* at 24-25. Bel, however, argues that Murata's

---

[8] Namely, that there are no interconnection patterns formed on the board at issue in the Family 4 MagJacks®.

8

argument under the doctrine of equivalents "erase[s] meaningful structural and functional limitations on which the public is entitled to rely in avoiding infringement," and is therefore barred by the "doctrine of vitiation." *Id.* at 25. Bel claims that by limiting the scope of its claim to a "printed board," Murata limited the claims "in a way that plainly and necessarily excludes a connector with an "unprinted board" such as that which Bel asserts is present in the Family 4 MagJacks®. *Id.* at 26.

Murata contends, however, that the Family 4 MagJacks® infringe under the doctrine of equivalents, and that its claim of infringement under that theory is not blocked by what Bel refers to as the "doctrine of vitiation." Murata points out (correctly) that analysis of infringement under the doctrine of equivalents is an intensely factual inquiry and (somewhat less correctly) that it is ill-suited to summary judgment. Murata's Brief in Opp. 7; *See also, e.g., Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002); *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.,* 212 F.3d 1377, 1381 (Fed. Cir. 2000). Murata vehemently and voluminously disputes Bel's assertion that Murata's theory of infringement under the doctrine of equivalents is blocked by the "doctrine of vitiation." By way of example, Murata points to the declaration of their expert, Dr. David W. Hughes ("Hughes"), who opines that the Bel mounting board is "insubstantially different" from a printed board. Murata's Brief in Opp. 8.

Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process, and the claimed elements of the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997). The "all-elements rule" (Bel's "doctrine of vitiation")

restricts the doctrine of equivalents by preventing its application when doing so would vitiate a claim limitation. *Id.* at 29 (stating that the doctrine of equivalents cannot be applied broadly so as to "effectively eliminate that [claim] element in its entirety"); *see also Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003) ("[I]f a court determines that a finding of infringement under the doctrine of equivalents 'would entirely vitiate a particular claim element,' then the court should rule that there is no infringement under the doctrine of equivalents." (citation omitted)).

Compliance with the all-elements rule is a question of law to be decided by the court. Or, as the Federal Circuit has held, compliance is:

> [D]etermined at the threshold of the equivalency analysis, based on whether each claim element has a counterpart in the accused device or process, as informed by precedent. Compliance with the all-elements rule is a distinct inquiry from that of equivalency in fact; it is a determination of the relationship between the combination claimed and the components of the accused device or process, element by element. The Court in *Warner-Jenkinson* described this rule as a "legal limitation[ ] on the application of the doctrine of equivalents [and] to be determined by the court." 520 U.S. at 39 n.8.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 172 F.3d 1361, 1370 (Fed. Cir. 1999). The court now turns, therefore, to the question of whether the all-elements rule bars Murata's claim of infringement under the doctrine of equivalents, and therefore sustains Bel's claim of noninfringement.

The all-elements rule forecloses resort to the doctrine of equivalents when, based on the facts or theories presented in the case, a limitation would be read completely out of a claim, i.e., the limitation would be completely removed or "vitiated." *Depuy Spine, Inc.*

*v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1017 (Fed Cir. 2006). The Federal Circuit has recognized that, when performing analysis under the all-elements rule:

> [t]here is no set formula for determining whether a finding of equivalence would vitiate a claim limitation and thereby violate the all limitations rule. Rather, courts must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless."

*Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1359 (Fed. Cir. 2005) (citations omitted). However, the test that has evolved as the standard approach under the all-elements rule is that when the evidence proffered is such that "no reasonable jury could determine a proffered equivalent to be insubstantially different from the claimed limitation" then employment of the doctrine of equivalents is barred. *Depuy*, 469 F.3d at 1017 (quoting *Freedman Seating*, 420 F.3d at 1361); *see also Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1319 (Fed. Cir. 1998).

The question immediately before the court, then, is whether a reasonable jury could determine that the board supporting the noise suppressing elements in Bel's Family 4 MagJacks®, which lacks conductive and interconnecting elements printed directly onto the board, is insubstantially different from the printed board disclosed in the claims of the '641 patent-in-suit. If no reasonable jury could find that the MagJack's® board was insubstantially different from the disclosed printed board, then Murata's claim of infringement of the '641 patent-in-suit by the Family 4 MagJacks® under the doctrine of equivalents is barred by the all-elements rule.

In its *Markman* opinion, the court construed the limitation "printed board" to mean: " a generally flat piece of material typically fabricated from insulating material that provides support and structural integrity for a plurality of electrically interconnected

11

connected components comprising a circuit, with some or all of the of the conducting interconnection pattern formed on the board." *Murata*, 445 F. Supp. 2d at 954. The Family 4 MagJacks® are likewise generally flat pieces of material fabricated from insulating material that provide support and structural integrity for a plurality of electrically interconnected components comprising a circuit. The electrically interconnected components are mounted on the board either via holes through which their connecting terminal pins project or are taped or fixed in place with epoxy resin. Therefore, the only limitation that is read out of the claim by the accused MagJacks® is "all or some of the conducting interconnection pattern formed on the board." On the supporting board of the Family 4 MagJacks®, the components are interconnected via non-integral wires or leads that interconnect the various circuit components via soldered joints.

> However, the specification of the '641 patent-in-suit states that:
>
> Although the present invention has been described in conjunction with the embodiments above, it is to be noted that various changes and modifications are apparent to those who are skilled in the art. Such changes and modification are to be understood as included within the scope of the present invention defined by the appended claims.

'641 patent-in-suit. In its *Markman* opinion, the court specifically found that although the preferred embodiments in the specification teach only printed wires on the printed board, the specification does not expressly exclude discrete wires, such as "jumper" wires. *Murata*, 445 F. Supp. 2d at 946. The court also found that because the use of jumper wires is well-known in the art, and because the patent does not specifically exclude them, adopting a construction that excludes discrete wires would improperly import a limitation from the specification into the claims. *Murata*, 445 F. Supp. 2d at 947 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (courts should avoid

"reading limitations from the specification into the claim")). Therefore, the court construed "wire on the printed board" as not restricting the interconnections solely to printed connections, but rather as conductive metallic elements interconnecting various regions, contributing to the interconnecting of various regions, on the printed board." *Id.* The court thus finds that interconnections not printed onto the surface of the printed board (as on the board of the accused Family 4 MagJacks®), but rather comprising non-integral wires and leads, were within the contemplation of the claims. Bel's invocation of the all-elements rule, as a bar to Murata's theory of infringement under the doctrine of equivalents, therefore fails.

The court finds, therefore, that a reasonable jury could find that the MagJack's® unprinted board was insubstantially different from the printed board disclosed by the '641 patent-in-suit. Such a finding could plausibly sustain Murata's argument that the MagJacks® infringe the '641 patent-in-suit under the doctrine of equivalents, which the court finds is not barred by the all elements rule. Therefore, there exists a genuine issue of material fact, and Bel's motion for summary judgment of noninfringement under that theory is denied.

### III. CONCLUSION

For the reasons set forth above, Bel's motion for summary judgment of literal noninfringement and infringement under the doctrine of equivalents of the Family 3 MagJacks® is denied. Bel's motion for summary judgment of literal noninfringement of the '641 patent-in-suit by the Family 4 MagJacks® is granted, and its motion for summary judgment of noninfringement under the doctrine of equivalents is denied.

ENTER:

      /s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 18, 2008